# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WABTEC CORPORATION, a Pennsylvania corporation; MARK MARTIN, an individual; and DOES 1 through 100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN BUSKER, on behalf of himself and all others similarly situated and the general public

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 11 2015

Sherri R. Carter, Executive Officer/Clerk
By Judi Lara, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of Los Angeles, Central District<br>111 North Hill Street, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>BC 594327 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Richard E. Donahoo, Donahoo & Associates, 440 W. First Street, Suite 101, Tustin, CA 92780, 714-953-1010

| DATE:<br>*(Fecha)* | SHERRI R. CARTER | Clerk, by<br>*(Secretario)* | Judi Lara | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

SEP 11 2015

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [X] on behalf of *(specify)*: WABTEC CORPORATION, a Pennsylvania Corporation

under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
      [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
      [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
      [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Richard E. Donahoo, SBN 186957
Donahoo & Associates
440 W. First Street, Suite 101
Tustin, CA 92780
TELEPHONE NO.: 714-953-1010    FAX NO.: 714-953-1777
ATTORNEY FOR (Name): Plaintiffs JOHN BUSKER, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
BUSKER, et al. v. WABTEC CORPORATION, et al.

FOR COURT USE ONLY
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 1 1 2015

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 5 9 4 3 2 7 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary    b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action (specify): 6
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 10, 2015
Richard E. Donahoo
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
   Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment (*non-domestic relations*)
   Sister State Judgment
   Administrative Agency Award (*not unpaid taxes*)
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
   Declaratory Relief Only
   Injunctive Relief Only (*non-harassment*)
   Mechanics Lien
   Other Commercial Complaint Case (*non-tort/non-complex*)
   Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

Exhibit A
10



| SHORT TITLE: BUSKER, et al. v. WABTEC CORPORATION, et al. | CASE NUMBER BC 5 9 4 3 2 7 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☑ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 15-20 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Auto Tort** — Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** — Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

Exhibit A
11

| SHORT TITLE: BUSKER, et al. v. WABTEC CORPORATION, et al. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☑ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)               **CIVIL CASE COVER SHEET ADDENDUM**               Local Rule 2.0
LASC Approved 03-04                     **AND STATEMENT OF LOCATION**                   Page 2 of 4

| SHORT TITLE: BUSKER, et al. v. WABTEC CORPORATION, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| **Miscellaneous Civil Petitions** | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

Exhibit A

13

| SHORT TITLE: BUSKER, et al. v. WABTEC CORPORATION, et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>Class actions must be filed in the Stanley Mosk Courthouse, central district. |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: ___September 10, 2015___

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | Local Rule 2.0<br>Page 4 of 4 |
|---|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES**
Case Number _____

**BC 594327**

<u>THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT</u>
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge William F. Highberger | 322 | 1702 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| Judge Kenneth Freeman | 310 | 1412 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Amy D. Hogue | 307 | 1402 |
| OTHER | | |

**Instructions for handling Class Action Civil Cases**

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on SEP 1 1 2015      SHERRI R. CARTER, Executive Officer/Clerk

LACIV CCW 190 (Rev09/13)
LASC Approved 05-06                                                    By _____, Deputy Clerk
For Optical Use

Exhibit A
15

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

Exhibit A
17

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

  h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

  i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR PLAINTIFF)

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR DEFENDANT)

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR _____)

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR _____)

Date: _____

_____  ► _____
(TYPE OR PRINT NAME)                 (ATTORNEY FOR _____)

Exhibit A
18

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:                STATE BAR NUMBER                    Reserved for Clerk's File Stamp

TELEPHONE NO.:                        FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

  It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

Exhibit A
20

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR_____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR_____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR_____)

LACIV 036 (new)
LASC Approved 04/11          **STIPULATION – DISCOVERY RESOLUTION**          Page 3 of 3

Exhibit A
21

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Exhibit A
22

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

Exhibit A
23

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 1 1 2015

Sherri H. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

1  Richard E. Donahoo, State Bar No. 186957
   Sarah L. Kokonas, State Bar No. 262875
2  Judith L. Camilleri, State Bar No. 282503
   **DONAHOO & ASSOCIATES**
3  440 West First Street, Suite 101
   Tustin, CA 92780
4  Telephone: (714) 953-1010
   Facsimile: (714) 953-1777
5  Email: rdonahoo@donahoo.com
        skokonas@donahoo.com
6        jcamilleri@donahoo.com

7  Attorneys for Plaintiff John Busker

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

10

| | |
|---|---|
| 11  JOHN BUSKER, on behalf of himself and all others similarly situated and the general public, | Case No. |
| 12                           Plaintiffs, | Judge:   **BC 5 9 4 3 2 7** |
| 13          v. | Dept.: |
| 14  WABTEC CORPORATION, a Pennsylvania corporation; MARK MARTIN, an individual; and | **CLASS ACTION COMPLAINT**:  1. Failure to Pay Minimum and Overtime Wages (Cal. Lab. Code §§1194); |
| 15  DOES 1 through 100, | 2. Failure To Pay Prevailing Wages on A Public Work (Cal. Lab. Code §§ 1194,1771,1174); |
| 16 | 3. Failure to Provide Accurate Itemized Wage Statements (Cal. Labor Code §226(a)); |
| 17          Defendants. | 4. Penalties Pursuant to Labor Code §203; |
| 18 | 5. Violation of Business & Professions Code §17200; |
| 19 | 6. Declaratory Relief |
| 20 | |
| 21 | **JURY TRIAL DEMANDED** |

22     COME NOW Plaintiff JOHN BUSKER ("Plaintiff" or "Busker"), on behalf of himself and all

23  others similarly situated, who complain of Defendants, and each of them, as set forth below.

24           **I. INTRODUCTION AND BACKGROUND**

25     1.  This employment class action is brought pursuant to Code of Civil Procedure §382 on behalf

26  of Plaintiff and all non-exempt field workers currently or formerly  engaged in executing the scope of

27  work of Wabtec Corporation ("WABTEC") a subcontractor of Parsons Transportation Group, Inc, on a

28  public work contract identified as Contract No. H1636-10 ("AGREEMENT").  The work under the

---

1

CLASS ACTION COMPLAINT





1  AGREEMENT, including the work of subcontractor WABTEC, was a public work and required

2  payment of prevailing wages pursuant to the AGREEMENT, which was a public works contract

3  between Parsons Transportation Group, Inc. ("PARSONS") and the Southern California Regional Rail

4  Authority ("SCRRA"). The covered work included the scope of work of WABTEC. Plaintiff and the

5  class of worker they seek to represent were not paid the minimum required hourly wage rate required by

6  California's Prevailing Wage Law (Labor Code §1770 et seq., "the PWL"). .

7       2.     Plaintiff seeks to represent a class defined as follows:

8       All workers engaged in the execution of the scope of work of WABTEC, a subcontractor of

9       PARSONS, under Contract No. H1636-10). ("the Class")

10       3.     Venue as to each defendant is proper in this judicial district, pursuant to Code of Civil

11  Procedure §395. The unlawful acts alleged herein occurred within this jurisdiction and were the result

12  of common policies and procedures affecting those in this jurisdiction and similarly situated within the

13  State of California.

## II. THE PARTIES

14  

15  **A.**     **Plaintiff**

16       4.  Plaintiff JOHN BUSKER ("Plaintiff" or "Busker") is, and at all relevant times alleged herein

17  was, over the age of eighteen and a resident of California. Within the last four years BUSKER

18  performed work that most closely resembles a Transportation Systems Electrician in execution of the

19  scope of work of WABTEC who performed work in execution of the AGREEMENT. Plaintiff

20  BUSKER separated from his employment within 1 year of the filing of this complaint.

21      **B. Defendants**

22       5.  Defendant WABTEC CORPORATION ("WABTEC") is, and at all times mentioned herein

23  was a Pennsylvania Corporation. Plaintiff is informed and believes that Defendant WABTEC was a

24  subcontractor performing field labor related to the AGREEMENT.

25       6.  Plaintiff is informed and believes that Defendant MARK MARTIN ("MARTIN") is, and at

26  all relevant times hereto was an individual citizen of California and is and was an employee, agent

27  and/or representative of Defendant WABTEC. Plaintiff is informed and believes that MARTIN was

28  WABTEC's project manager of the work performed on the project pursuant to the AGREEMENT and

2

CLASS ACTION COMPLAINT

on behalf of his employer violated, or caused to be violated certain provisions of the Labor Code including but not limited to minimum wage requirements under Labor Code §§ 510, 1194, 1771 and 1774.)

1. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 to 100, inclusive, are currently unknown to Plaintiff, who therefore sue Defendants by such fictitious names under Code of Civil Procedure §474. Plaintiff are informed and believe, and based thereon allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

2. Plaintiff are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. All acts and omissions herein complained of were performed within the course and scope of said service and/or agency and with the consent of each of the Defendants mentioned herein. All actions of each Defendant herein alleged were ratified and approved by the directors, officers and managing directors of Defendants.

**III. JURISDICTION AND VENUE**

3. This action is properly brought in the Superior Court of the State of California. Each cause of action enumerated below arises from California state law and the events giving rise to this lawsuit, which took place in Los Angeles, California.

4. In addition, under 28 U.S.C. §1332(d)(4), no federal district court may exercise jurisdiction in this case because (1) greater than two-thirds of the members of the proposed Class and each subclass are citizens of California, the state in which this action is hereby originally filed; (2) the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in California; and (3) no class action has been filed in the prior three years asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

///

## IV. FACTUAL BACKGROUND

5. The Southern California Regional Rail Authority ("SCRRA" also known as "METROLINK") is an independent joint powers authority organized under Sections 6500 et seq. of the California Government Code and Section 130255 of the California Public Utilities Code. Founded in 1991 it comprises five county agencies that were tasked with reducing highway congestion and improving mobility throughout Southern California: Los Angeles County Metropolitan Transportation Authority (Metro), Orange County Transportation Authority, Riverside County Transportation Commission, San Bernardino Associated Governments and Ventura County Transportation Commission. It engages in public works projects located among the more than 55 stations over a 512 route-mile network.

6. In 2010 SCRRA entered into a contract with PARSONS to provide a Positive Train Control (PTC) system on the METROLINK system inclusive of a dispatching system that meets the requirements of the Rail Safety Improvement Act of 2008 ahead of the federal mandate for completion by December 31, 2015.

7. The contract NO. H1636-10 ("AGREEMENT") was signed on or about October 13, 2010 between METROLINK and PARSONS. A true and correct copy of the AGREEMENT, is attached hereto as **Exhibit A**. The project is a public work as defined under the California Labor Code and requires the payment of prevailing wages. (See generally, Labor Code §§1720, 1771, 1774 et seq. and AGREEMENT pg. 36 section 34.10.2)

8. The AGREEMENT included a list of subcontractors that would perform work in accordance with the standards and obligations established by the AGREEMENT. Included in the list of approved subcontractors is WABTEC.

9. At all relevant times WABTEC acted as a subcontractor and was responsible for a number of components of the METROLINK PTC system, including but not limited to the On-Board System, the Back Office System (BOS), the Employee-In-Charge (EIC) Equipment and the Computer-Aided Dispatching (CAD) System.

10. The scope of work of WABTEC subcontract is part of the AGREEMENT and is a public work requiring payment of prevailing wages. Specifically, the work to be performed was field

4

CLASS ACTION COMPLAINT



1 installation electrical work covered under the general prevailing wage rate published by the Department

2 of Industrial Relations as that of "Transportation Electrician."

3     11. For their work under the AGREEMENT, Plaintiff were required to be paid the minimum

4 prevailing wage rate assigned to the Transportation Electrician classification as set forth in semi-annual

5 and annual bulletins published by the Director of Industrial Relations ("DIR"). The proper prevailing

6 wage rate for the work performed in the State of California is considered the minimum wage. It is the

7 only legal wage that may be paid for work in execution of a public work contract. In addition to the

8 required straight-time hourly rate of pay, the term "prevailing wage" includes a designated rate for

9 overtime and holiday work, travel time and subsistence pay. (Cal. Code of Regulations § 16000). All

10 such rates are published semi-annually by the California Department of Industrial Relations ("DIR")

11 pursuant to pertinent California regulations.

12     12. Neither PARSONS nor WABTEC complied with California public works requirements to

13 pay prevailing wages on public works. (Labor Code §1720, 1771, 1774 et seq.)

14     13. METROLINK and its contractors have been on notice since at least October 13, 2010 that the

15 work performed and awarded to PARSONS is a public work. Plaintiff are informed and believe that

16 despite the requirements that were made clear under the AGREEEMENT, Wabtec did not comply with

17 public works requirements, including but not limited to, requirements to pay prevailing wages (Labor

18 Code §1771, 1774 et seq.), hire and train apprentices (Labor Code §1777.5), and to maintain and submit

19 certified payroll records. (Labor Code §1776).

20     14. Plaintiff, on behalf of himself and all others similarly situated, seeks recovery of all wages

21 owed to workers performing WABTEC'S scope work in execution of the AGREEMENT.

22     15.    Plaintiff and the Class are and were "workers" as defined by Labor Code §1723.

23     16.    Defendants have failed to pay, at the termination of Plaintiff's employment, all wages

24 then owed and have failed to pay all wages due and owing.

25           **VI.**    **CLASS ACTION ALLEGATIONS**

26     17.    Plaintiff brings this action on behalf of himself and all others similarly situated as a Class

27 Action pursuant to §382 of the Code of Civil Procedure. Plaintiff seeks to represent a class defined in

28 paragraph No. 2.



18.     Plaintiff reserve the right under Rule 3.765, California Rules of Court, to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

19.     This action has been brought and may properly be maintained as a class action under the provisions of §382 of the Code of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**A.     NUMEROSITY**

20.     The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable.  Plaintiff are informed and believe that at least 50 hourly paid workers were employed in execution of the PARSONS Contract(s) performing WABTEC's scope of work and that many of them have since separated from their employment.

21.     Plaintiff alleges that class members employment records, as well as the records of WABTEC and PARSONS, would provide information as to the number and location of all Class Members.  Joinder of all members of the proposed Class is not practicable.

**B. COMMONALITY**

22.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

(a)     Whether the AGREEMENT is a public works contract;

(b)     Whether the field work under the AGREEMENT is a public work under Labor Code §1720 et seq.;

(c)     Whether the scope of work of WABTEC in execution of the AGREEMENT, or any part thereof, is a public work requiring payment of prevailing wages;

(d)     Whether the AGREEMENT required that workers performing field work under the AGREEMENT be paid prevailing wages;

(e)     Whether the AGREEMENT required that workers performing field work for WABTEC's scope of work under the AGREEMENT be paid prevailing wages;

(f)     Whether SCRRA enforced public works requirements for PARSONS and its

6
CLASS ACTION COMPLAINT

1  subcontractor WABTEC's work on the AGREEMENT;

2      (g)    Whether PARSONS required that work in execution of WABTEC's work under

3  AGREEMENT be paid prevailing wages;

4      (h)    Whether PARSONS and its subcontractor complied with Labor Code requirements to

5  keep records of the work performed on public works (Labor Code s1776)

6      (i)    Whether PARSONS and/or WABTEC engaged in a policy to pay Plaintiff the minimum

7  required wage for the type of work performed according to California's Prevailing Wage Law ("PWL")

8  (Labor Code §1770, et seq.) on public works projects;

9      (j)    Whether the failure of WABTEC to pay the minimum required wage under the PWL for

10  work on public projects at the required wage rate has resulted in Plaintiff and the Class not being paid

11  all wages due at the applicable rates;

12      (k)    Whether WABTEC and or Defendant willfully violated §§201-203 of the Labor Code by

13  failing to pay compensation due and owing at the time that any Class member's employment performing

14  work under the AGREEMENT terminated;

15      (l)    Whether Plaintiff and the class are entitled to penalties under Labor Code 203 and / or

16  203.5.

17  **C. TYPICALITY**

18      23.    The claims of the named Plaintiff are typical of the claims of the class.  Plaintiff and all

19  members of the class sustained injuries and damages arising out of and caused by Defendants' common

20  course of conduct in violation of laws, regulations that have the force and effect of law and statutes as

21  alleged herein.  Plaintiff's claims are based on the same legal theories as the claims of the unnamed

22  members of the class.  The legal issues as to which state and hours laws are violated by such conduct

23  apply equally to Plaintiff and all class members.

24  **D.    ADEQUACY OF REPRESENTATION**

25      24.    Plaintiff will fairly and adequately represent and protect the interests of the members of

26  the class.    Counsel who represents Plaintiff are competent and experienced in litigating large

27  employment class actions.

28      ///

7

CLASS ACTION COMPLAINT

**E.  SUPERIORITY OF CLASS ACTION**

25.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each member of the class has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of denying class members proper compensation.

26.     Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Plaintiff are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**

**FAILURE TO PAY MINIMUM WAGES AND OVERTIME**

**California Labor Code §§ 204, 510, 558, 1194, 1197.1, 1194.2, 1197, 1189, 1811 and 1815**

**By Plaintiff For Himself and the Class**

**Against Defendant WABTEC, MARTIN and DOES 1 through 100**

34.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

35.     California Labor Code §204 states in pertinent part:

> All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.
> ***
> Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

Section §510 provides in relevant part:

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an

8

CLASS ACTION COMPLAINT

employee. In addition, any work in excess of eight hours on a seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee . . .

36. California Labor Code §1194 provides in relevant part that: "any employee receiving less than the minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

37. California Labor Code §1197 makes it unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked.

38. Labor Code §1198 provides in relevant part, "the employment for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." ICW Order No. 16-2001(3)(A)(1) provides in relevant part:

> Employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:
> (a) One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to an including 12 hours in any workday, and for the first (8) hours worked on the seventh (7[th]) consecutive day of work in a workweek; and
> (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7[th]) consecutive day of work in a workweek.

39. Labor Code §1811 provides, "The time of service of any workman employed upon public work is limited and restricted to 8 hours during any one calendar day, and 40 hours during any one calendar week, except as hereinafter provided for under Section 1815." Section 1815 provides in relevant part that "work performed by employees of contractors in excess of 8 hours per day, and 40 hours during any one week, shall be permitted upon public work upon compensation for all hours worked in excess of 8 hours per day at not less than 1 and 1/2 times the basic rate of pay."

40. Labor Code section 1194.2 entitles an employee receiving less than the minimum wage to

9
CLASS ACTION COMPLAINT

Exhibit A
33

1  recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

2      41.    Throughout the class period for the Class, Plaintiff BUSKER and other Class members

3  worked on public works projects for Defendant WABTEC, for which they were not paid overtime based

4  on applicable prevailing wage rates due to WABTEC's systematic classification of all workers to non-

5  existent or lower wage classifications.

6      42.    Throughout the class period for the Unpaid Hours Worked Class, Plaintiff and other

7  Unpaid Hours Worked Class members performed work for Defendants, for which they were not

8  compensated in undergoing mandatory testing and/or training.  Defendants common corporate-wide

9  policy and practice of failing to pay Plaintiff and other Unpaid Hours Worked Class members for all

10  hours worked resulted in Plaintiff and others members of the Unpaid Hours Worked Class not receiving

11  minimum and/or overtime wages for each hour worked.

12      43.    Throughout the class period for the Regular Rate Class, Plaintiff and other Regular Rate

13  Class members were not paid overtime based on their regular rate of pay due to WABTEC's policy and

14  practice of not including all wages earned, including bonuses, in the calculation of overtime.

15      44.    Plaintiff seek to recover the unpaid minimum and overtime wages owing to them and

16  other members of the Class, Unpaid Hours Worked Class, and Regular Rate Class, along with interest

17  thereon, liquidated damages, reasonable attorneys' fees, and costs, in an amount to be proven at trial.

18                          **SECOND CAUSE OF ACTION**

19              **FAILURE TO PAY PREVAILING WAGES ON A PUBLIC WORK**

20                  **California Labor Code §§ 1194, 1771, 1774 et seq,**

21                    **By Plaintiff BUSKER  For Himself and the Class**

22              **Against Defendant WABTEC, MARTIN and DOES 1 through 100**

23      45.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in

24  the preceding paragraphs.

25      46.    At all times mentioned herein, Defendants were subject to the minimum wage

26  requirements pursuant to Labor Code §1194 and to California's Prevailing Wage Law pursuant to Labor

27  Code §1771 et seq., regarding work undertaken in execution of public contracts.  Pursuant to Labor

28  Code §1194 and pursuant to the AGREEMENT, Defendants had a duty to pay Plaintiff and the Class not

10
CLASS ACTION COMPLAINT

1  less than the minimum required hourly rate of pay and legal overtime wage for their work on the Project.

2  Pursuant to Labor Code §§1771 and 1774, Defendants had a duty to pay Plaintiff not less than the

3  general prevailing rate of per diem wages, and not less than the general prevailing rate of per diem

4  wages for holiday and overtime work.

5       47.     The per diem wages and prevailing wages required to be paid pursuant to Labor Code

6  §§1194, 1771 and 1774 are set forth in annual and semi-annual bulletins published by the California

7  Department of Industrial Relations.

8       48.     Plaintiff and the Class were paid less than the minimum required general prevailing rate

9  of per diem wages for their work as required by Labor Code §§1194, 1771 and 1774.  Plaintiff was paid

10  a fraction of the required pay rate.

11      49.     As alleged herein as a result of Defendants' violation of statutory duties, , Plaintiff and

12  the Class were damaged in an amount above the jurisdictional limits of this court.  Plaintiff seeks the

13  difference between the required prevailing wage rate for each hour worked and the amount actually paid.

14  Pursuant to Labor Code section 1194.2, Plaintiff seek liquidated damages for failure to pay minimum

15  wage. Plaintiff's audits and investigations are continuing, however, the amounts claimed are above the

16  jurisdictional minimum requirements of this court.  Plaintiff will seek leave of court to amend this

17  Complaint according to proof at the time of trial.

18      50.     As a result of the unlawful acts of Defendants, Plaintiff and the Class have been deprived

19  of compensation in amounts to be determined at trial, and are entitled to injunctive relief and recovery of

20  such amounts, including interest thereon, attorney's fees, costs, and penalties.

21                    **THIRD CAUSE OF ACTION**

22           **VIOLATION OF LABOR CODE SECTION 226(a)**

23               **By Plaintiff For Himself and the Class**

24       **Against Defendant WABTEC, MARTIN and DOES 1 through 100**

25      63.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in

26  the preceding paragraphs.

27      64.     Section 226(a) of the California Labor Code requires an employer to furnish its

28  employees with wage statements accurately reflecting all hourly rates in effect during the pay period, the

---

11

CLASS ACTION COMPLAINT

1  total hours worked, and all hours worked at each applicable hourly rate.

2       65.   Throughout the class period for the Wage Statement Class, Plaintiff and other Wage

3  Statement Class members were not furnished with wage statements accurately reflecting all hourly rates

4  in effect during the pay period, total hours worked, and the hours worked at each applicable hourly rate.

5       66.   Defendants WABTEC and Does 1 through 50 have knowingly and intentionally failed to

6  comply with Labor Code section 226(a) by failing to report all hours worked and failing to list all

7  applicable hourly rates in effect during the pay period.

8       67.   By failing to keep accurate records as required by Labor Code section 226, Defendants

9  WABTEC and Does 1 through 50 have injured Plaintiff and other Wage Statement Class members by

10  making it more difficult to determine with exact precision the total hours worked and applicable pay

11  rates and by requiring mathematical computations to determine what hourly rates were actually in effect

12  during the pay period.

13       68.   Plaintiff seek to recover, on behalf of Himself and other Wage Statement Class members,

14  the penalty provided by Labor Code section 226(e).

15               **FOURTH CAUSE OF ACTION**

16      **WAITING TIME PENALTIES UNDER LABOR CODE §203**

17           **By Plaintiff for Himself and the Class**

18     **Against Defendant WABTEC, MARTIN and DOES 1 through 100**

19       69.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in

20  the preceding paragraphs.

21       70.   Labor Code section 201 and 202 require an employer to promptly pay all wages owing to

22  an employee at the conclusion of employment.

23       71.   Plaintiff and other members of the Class are no longer employed by the Defendants.

24  They were either fired or quit.

25       72.   Throughout the class period for the Class, Plaintiff and other Class members were not

26  timely paid all wages owing at the time of termination of employment.

27       73.   Defendants failure to pay Plaintiff and other  separated Class members all wages owing,

28  as alleged above, was willful, as Defendants were aware of an specifically required that Plaintiff and

12

CLASS ACTION COMPLAINT

1    other Class Members perform work and miss breaks without proper compensation.

2        74.    Plaintiff and other Class members are therefore entitled to penalties, in an amount to be

3    determined at trial, pursuant to Labor Code section 203, which provides that an employee's wages shall

4    continue as a penalty until paid for a period of up to thirty (30) days from the time they were due.

5                            **FIFTH CAUSE OF ACTION**

6                    **UNFAIR COMPETITION PURSUANT TO**

7                    **BUSINESS & PROFESSIONS CODE §17200**

8                    **By Plaintiff For Himself and the Class**

9                **Against Defendant WABTEC and DOES 1 through 100**

10       75.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in

11   the preceding paragraphs.

12       76.    This is a Representative Private Attorney General Action and Class Action for Unfair

13   Business Practices. Plaintiff on behalf of himself, the general public, and on behalf of others similarly

14   situated, bring this claim pursuant to Business & Professions Code §17200, et seq. The conduct of all

15   Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to

16   Plaintiffs, the general public, and the classes.  Plaintiff seek to enforce important rights affecting the

17   public interest within the meaning of C.C.P. §1021.5.

18       77.    Plaintiff are "persons" within the meaning of Business & Professions Code §17204, and

19   therefore have standing to bring this cause of action for injunctive relief, restitution, and other

20   appropriate equitable relief.

21       78.    Business & Profession Code §17200, et seq. prohibits unlawful and unfair business

22   practices.

23       79.    Wage and hour laws express fundamental public policies.  Providing employees with

24   compensation and breaks are fundamental public policies of this State and of the United States.  Labor

25   Code §90.5(a) articulates the public policies of this State to enforce vigorously minimum labor

26   standards, to ensure that employees are not required or permitted to work under substandard and

27   unlawful conditions, and to protect law-abiding employers and their employees from competitors who

28   lower their costs by failing to comply with minimum labor standards.

---
                                            13
                            CLASS ACTION COMPLAINT

80. Defendants have violated statutes and public policies. Through the conduct alleged in this Complaint, Defendants, and each of them, have acted contrary to these public policies, have violated specific provisions of the Labor Code, and have engaged in other unlawful and unfair business practices in violation of Business & Profession Code §17200, et seq., depriving Plaintiffs, and all persons similarly situated, and all interested persons of rights, benefits, and privileges guarantees to all employees under law.

81. Defendants' conduct, as alleged hereinabove, constitutes unfair competition in violation of §17200 et. seq. of the Business & Professions Code.

82. Pursuant to California Business & Professions Code section 17200, *et seq.*, Plaintiff and the members of the classes defined above are entitled to preliminary and permanent injunctive relief, including accounting for an restitution of the wages unlawfully withheld and retained by Defendants during a period that commences four (4) years prior to the filing of this lawsuit, an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws, and an award of costs.

**SIXTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**By Plaintiff For Himself and the Class**

**Against Defendant WABTEC and DOES 1 through 100**

83. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

84. An actual controversy has arisen and now exists between Plaintiff, the Class members and Defendants concerning their respective rights and duties in that Plaintiffs contend the work in execution of the AGREEMENT, is a public work under the Labor Code requiring payment of prevailing wages, whereas Defendants, and each of them, dispute these contentions and contend that neither all nor any part of the work is not a public work and therefore there is no requirement to pay wages required by the PWL.

85. Plaintiff and the Class desire a judicial determination of the rights and duties, and a declaration as to the public works coverage of work performed in execution of the AGREEMENT.

14

CLASS ACTION COMPLAINT

86.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain the rights and duties under California law with respect to the substantial work now ongoing under the AGREEMENT, including work that is an integral part of A major public works project now ongoing.

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them, as follows:

1.   That the case be certified as a class action pursuant to CCP §382 with Plaintiff named as class representatives and Plaintiff's counsel named as Class Counsel;

2.   That the Court issue a judicial determination that the work performed in execution of the AGREEMENT is a public work under the applicable provisions of Labor Code requiring payment of prevailing wages and compliance with public works requirements found in the Labor Code;

3.   For compensatory damages in the amount of Plaintiff's and each class members' unpaid wages, including overtime, measured as the difference between accrued wages at the proper wage and the actual wages paid to Plaintiff and the Class, as may be proven at trial;

4.   For liquidated damages pursuant to Labor Code §1194.2 for failure to pay minimum wage;

5.   For penalties and/or actual damages pursuant to Labor Code §226(e) for violation of Labor Code §226(a);

6.   For penalties pursuant to Labor Code §§203 for all employees who were terminated or resigned within one year of the filing of the complaint equal to their daily wage times thirty (30) days;

7.   For restitution of wages for unfair competition pursuant to Business & Professions Code §17200, including disgorgement or profits, in an amount as may be proven;

8.   For an equitable accounting;

9.   An award of prejudgment and post judgment interest;

10. An award providing for payment of costs of suit;

11. An award of attorneys' fees under Labor Code §§ 226, 1194 and Civil Code §1021.5 and/or other applicable state laws; and,

12. Such other and further relief as this Court may deem proper and just.

///

///

15
CLASS ACTION COMPLAINT

Exhibit A
39

**DEMAND FOR JURY TRIAL**

Plaintiff, on his behalf and on behalf of the Class hereby demands a jury trial.

Dated:  September 10, 2015

DONAHOO & ASSOCIATES


By:
Richard E. Donahoo
Sarah L. Kokonas
Attorneys for Plaintiff JOHN BUSKER

16
CLASS ACTION COMPLAINT

# EXHIBIT A

# EXHIBIT A



**METROLINK.**

Southern California Regional Rail Authority



# CONFORMED CONTRACT

## NO. H1636-10

## POSITIVE TRAIN CONTROL SYSTEM



# AGREEMENT

between

Vendor/Integrator: )            Contract Number: H1636-10
PARSONS TRANSPORTATION GROUP INC. )
100 M Street SE, Suite 1200 )
Washington, District of Columbia 20003-3515 )

)            **POSITIVE TRAIN CONTROL SYSTEM**
)
Attn:   Thomas E Barron )
Email:  Thomas.barron@parsons.com )
Phone:202-775-3420 )
Fax: 202-775-3469 (fax). )

)
)
)

And )
)
)
Southern California Regional Rail Authority )     Authority Contract Manager:
700 South Flower Street, 26th Floor )             Name:   Darrell J. Maxey
Los Angeles, California  90017-4101 )             Telephone: 213-452-0250
)                                                 Email: maxeyd@scrra.net
)
)                                                 Contract Administrator:
)                                                 Name:     Lia McNeil-Kakaris
)                                                 Title:    Principal Contract Admin.
)                                                 Telephone: 213-452-0237
)                                                 Fax:      213-452-0425
)

**This contract Agreement may be funded in part by grants issued by the U.S. Department of Transportation, Federal Transit Administration and Federal Railroad Administration, including American Relief Recovery Act funds as well as funding from the State of California.**

Contract No. H1636-10                     -i-                        2884174.6

| | | |
|---|---|---|
| 1. | DEFINITIONS | 1 |
| 2. | VENDOR/INTEGRATOR REPRESENTATIONS AND WARRANTIES | 4 |
| 3. | PRECEDENCE | 5 |
| 4. | SCOPE OF SERVICES | 5 |
| 5. | PERIOD OF PERFORMANCE | 6 |
| 6. | PAYMENT AND INVOICING | 6 |
| 7. | ERRORS, INCONSISTENCIES, OMISSIONS | 8 |
| 8. | RISK OF LOSS | 9 |
| 9. | LIQUIDATED DAMAGES | 9 |
| 10. | FORCE MAJEURE | 11 |
| 11. | INDEMNITY | 11 |
| 12. | INSURANCE | 13 |
| 13. | CONTRACT BONDS | 15 |
| 14. | WARRANTY | 16 |
| 15. | CHANGES | 18 |
| 16. | CLAIMS | 19 |
| 17. | DISPUTE RESOLUTION | 20 |
| 18. | TEMPORARY SUSPENSION OF WORK | 21 |
| 19. | TERMINATION | 22 |
| 20. | OWNERSHIP OF WORK | 24 |
| 21. | IP PROVISIONS | 24 |
| 22. | CONFLICT OF INTEREST | 26 |
| 23. | CONFIDENTIALITY | 28 |
| 24. | ASSIGNMENT | 28 |
| 25. | SUBCONTRACTING | 28 |
| 26. | VENDOR/INTEGRATOR'S INTERACTION WITH THE MEDIA, THE PUBLIC AND EXTERNAL REGULATORY AGENCIES | 30 |
| 27. | COMPLIANCE WITH LAW | 30 |
| 28. | OCCUPATIONAL SAFETY AND HEALTH | 30 |
| 29. | COMPLIANCE WITH LOBBYING POLICIES | 31 |
| 30. | LIMITATIONS ON COVENANTS NOT TO COMPETE | 31 |
| 31. | TRACK AND SITEWORK COORDINATION AND ACCESS | 31 |
| 32. | HAZARDOUS AND NON-HAZARDOUS CHEMICALS AND WASTES | 32 |
| 33. | POLICIES, PRACTICES, AND PROCEDURES OF AUTHORITY | 32 |

Exhibit A
44

**TABLE OF CONTENTS**

Page

34. ADDITIONAL REQUIREMENTS CONCERNING SPECIFIED FIELD INSTALLATION WORK .............................................................................33
35. FEDERAL REQUIREMENTS ..............................................................................46
36. NOTIFICATION ...................................................................................................63
37. EQUAL OPPORTUNITY .....................................................................................63
38. WAIVER/INVALIDITY ..........................................................................................63
39. INDEPENDENT CONTRACTOR ........................................................................63
40. APPROVALS BY AUTHORITY CONTRACT MANAGER: NO LIABILITY ...................64
41. SUGGESTIONS TO VENDOR/INTEGRATOR ...................................................64
42. EFFECT OF FAILURE TO COMMENT OR APPROVE .......................................64
43. LABOR RELATIONS ...........................................................................................64
44. PERSONAL NON-LIABILITY ..............................................................................65
45. NO ESTOPPEL ..................................................................................................65
46. AUTHORITY AND VENDOR/INTEGRATOR'S REPRESENTATIVES, KEY PERSONNEL ......................................................................................................65
47. RIGHTS AND REMEDIES OF THE AUTHORITY ..............................................66
48. BINDING ON SUCCESSORS ............................................................................66
49. GOVERNING LAW ..............................................................................................66
50. SURVIVAL ...........................................................................................................66
51. LIMITATIONS ON LIABILITY ..............................................................................66
52. AUTHORITY WARRANTIES ...............................................................................67
53. ENTIRE AGREEMENT ........................................................................................67
54. MODIFICATIONS TO AGREEMENT ...................................................................67

EXHIBIT A -- SCOPE OF SERVICES/TECHNICAL SPECIFICATIONS

EXHIBIT B -- PRICE/COST FORMS

EXHIBIT C -- PAYMENT SCHEDULE

ATTACHMENTS 1-4 -- DBE Forms

This Agreement is made and entered into as of this 15th day of October, 2010 by and between the SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY, an independent joint powers authority organized under Sections 6500 et seq. of the California Government Code and Section 130255 of the California Public Utilities Code ("Authority"), and PARSONS TRANSPORTATION GROUP INC., an Illinois Corporation ("Vendor/Integrator").  Authority and Vendor/Integrator are sometimes referred to collectively herein as the "Parties."

## RECITALS

WHEREAS, Authority is an independent joint powers authority organized under Sections 6500 et seq. of the California Government Code and Section 130255 of the California Public Utilities Code, with power to contract for the Services described in Section 4, Scope of Services, herein below;

WHEREAS, Authority desires to hire a Vendor/Integrator to provide a Positive Train Control (PTC) system inclusive of a dispatching system that meets the requirements of the Rail Safety Improvement Act of 2008; and

WHEREAS, Authority has issued a Request for Proposals dated March 22, 2010, along with various addenda, the provisions of which in whole or in part are incorporated herein; and

WHEREAS, Vendor/Integrator desires to supply a PTC system and submitted a written proposal dated June 18, 2010, the provisions of which in whole or in part are incorporated herein; and

WHEREAS, as a result of negotiations between the Parties, the Parties have agreed to (a) a final Scope of Work/Technical Specifications, a copy of which is attached hereto and incorporated herein as Exhibit A, (b) Price/Cost Forms, a copy of which is attached hereto and incorporated herein as Exhibit B and (c) a Payment Schedule, a copy of which is attached hereto and incorporated herein as Exhibit C

NOW, THEREFORE, for the consideration hereinafter stated, the Parties hereto agree as follows:

## DEFINITIONS

Claim – Any claim, action, cause of action, lawsuit, arbitration, administrative proceeding or demand, whether based in contract or tort, made by or against a Party.

Contract, or Contract Documents – This Agreement, including all incorporated attachments and exhibits referenced in Section 3.1.

Contract Manager – The Authority representative with oversight of the Services and of the Vendor/Integrator, including the power to enforce compliance with the Agreement, including giving orders to do work determined necessary for Vendor/Integrator to fulfill the requirements of the Agreement.  The Contract Manager shall have the authority to resolve disputes informally, and to issue change orders or amendments to the Contract, provided that such change orders or amendments do not exceed the authority delegated to the Contract Manager by    the

Authority's Board of Directors.  The exercise of or failure to exercise such power shall not relieve Vendor/Integrator of any of its obligations under the Agreement.

Contract Price – The amount listed in Section 6, representing the total amount to be paid the Vendor Integrator under this Agreement.

Effective Date – The date entered above indicating that both Parties have agreed to, and have executed, this Agreement.

Exemplary Damages – Those damages for which a Party has been, or are alleged to have been, guilty of oppression, fraud, or malice.  For the purposes of this Section, "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact with the intention of thereby depriving a person of property or legal rights or otherwise causing injury; and "Malice" means conduct which is intended to cause injury to others or despicable conduct which is carried on with a willful and conscious disregard of the rights or safety of others.

Final Acceptance – Satisfactory completion, as determined by the Authority, of all the criteria set forth in Section 19.15 of the Exhibit A.  When referring to Final Acceptance with regard to the NCTD Option described in Section 4, Final Acceptance specifically means satisfactory completion, as determined by the Authority, of all the criteria set forth in Section 19.16 of Exhibit A.

Goods – Any goods, including hardware, that is or are delivered or specified to be delivered under the Agreement.

Indemnity – The undertaking of  a Party to save another Party, person or entity from a legal consequence of the action or failure to act of one of the Parties, or of some other person or entity, which undertaking shall include conducting and bearing the cost of the defense of the Party, person or entity being indemnified.  This term shall include all variations of "indemnity", such as "indemnify" and "indemnification".

Losses – All liabilities, losses, costs, expenses (including but not limited to defense costs and attorney's fees), and damages of any kind or nature (including but not limited to liquidated damages, but excluding Exemplary Damages and damages arising as a result of the gross negligence, willful misconduct or fraudulent action of the Party, person or entity seeking Indemnity) arising from a Claim including but not limited to those liabilities, losses, costs, expenses and damages arising as the result of bodily injury, death, personal injury or property damage and irrespective of the active or passive negligence of the person or entity being indemnified.

Materials – Any recorded information and works of authorship (whether in physical, electronic, or other form and whether or not copyrighted) that is or are delivered or specified to be delivered under the Agreement—with examples including without limitation: designs; drawings; computer software documentation; change logs; engineering drawings; plans; specifications; standards; schedules; process sheets; manuals; training materials; usage guides; technical reports; catalog item identifications; related information; and drafts thereof—and for clarity, excluding software, financial, administrative, and cost and pricing information incidental to the work.

Member Agencies – Member Agencies are the agencies that make up the Southern California Regional Rail Authority at time of Contract execution or during the pendency of this Agreement. Currently, the Member Agencies are: Los Angeles County Metropolitan Transportation Authority; Orange County Transportation Authority; Riverside County Transportation Commission; San Bernardino Associated Governments; and Ventura County Transportation Commission. Should the membership of Authority change during the pendency of this Agreement, the then-current list of members shall be considered Member Agencies.

NCTD -- The North County Transit District.

Overall Liability Cap – The limit of Vendor/Integrator's total aggregate liability for all Losses directly incurred by Vendor/Integrator, Losses borne by Vendor/Integrator as a result of its indemnity obligations, and Losses resulting from any Claim arising out of or in connection with Vendor/Integrator' performance of this Agreement, provided, however, that Losses (i) incurred by Vendor/Integrator in addressing Claims arising under the warranties provided in Section 14.1, (ii) arising as a result of the indemnity regarding intellectual property set forth in Section 11.1.2 and the associated obligations set forth in Section 2.3.2, and (iii) comprised of possible fines and liabilities imposed by virtue of a failure to comply with regulations of the Federal Railroad Authority described in Section 11.1.3, shall not be included among the Losses aggregated for purposes of calculating when the Overall Liability Cap has been reached. For purposes of this Agreement, the Overall Liability Cap is $70 million.

Positive Train Control (PTC) – A term used for a system designed to prevent: collisions between trains, over speed derailments (derailments caused when a train exceeds speed limits), incursions into established work zone limits (i.e., for roadway workers maintaining track), and the movement of a train through an improperly positioned switch.

RFP – The Request for Proposals, including all addenda, issued on March 22, 2010.

Services or Scope of Services -- All services, including the provision of all Goods and Materials, provided by Vendor/Integrator under this Agreement (whether directly, through permitted Subcontractors, or otherwise).

Subcontractor – Any firm or person under contract to Vendor/Integrator, authorized by Authority to provide Services.

System – The positive train control system (inclusive of a dispatch system) to be designed, furnished, and installed by Vendor/Integrator under this Agreement, as described in Exhibit A to this Agreement, including without limitation each, every, and all systems, subsystems, components, constituent parts (whether hardware, software, or anything else)—including without limitation Third Party Software and Vendor/Integrator Software.

Technical Specifications or Scope of Work/Technical Specifications – The technical requirements for the System specified in Exhibit A.

Third Party Software – Any software, firmware, or program reasonably necessary to operate or maintain any part of the System that does not constitute Vendor/Integrator Software.

Vendor/Integrator – The entity to which the Authority has awarded this Agreement and which is a party to this Agreement.

Vendor/Integrator Software – Any software, firmware, or program reasonably necessary to operate or maintain the System (or any part of the System) that is a product or application of Vendor/Integrator (or one of its permitted Subcontractors).

2.    VENDOR/INTEGRATOR REPRESENTATIONS AND WARRANTIES

2.1    In the performance of its work, the Vendor/Integrator represents that it  (1) will perform the Services, and will require its Subcontractors to perform all Services, in a good and workmanlike manner, in conformance with the requirements set forth herein and consonant with the degree of professional care, skill, efficiency, and judgment of those with special expertise in railroad technology and safety systems; (2) carries all applicable licenses, certificates, and registrations in current and good standing that may be required to perform the work; and (3) will retain all such licenses, certificates, and registrations in active status throughout the duration of this engagement.

2.2    Vendor/Integrator warrants and represents that it has the professional capabilities, qualifications, licenses, skilled personnel, experience, expertise and financial resources, and will provide the necessary Goods and Materials not provided by Authority, to perform the Services in the manner and to the standard described in Section 2.1.  All Vendor/Integrator's personnel shall have sufficient skill and experience to perform the work assigned to them.

2.3    Vendor/Integrator represents and warrants that the System (and each and every part of the System) in the form delivered and installed by Vendor/Integrator—and any use of the System (and each and every part of the System) if used in accordance with the terms and conditions of this Agreement and in accordance with the instructions and operating requirements provided by the Vendor/Integrator, licensed or otherwise allowed under or arising directly or indirectly from this Agreement by Authority (or its officers, directors, agents, or employees):

2.3.1    does not and will not infringe or violate the patent, copyright, trade-secret, or other intellectual-property or proprietary rights of any third party.  Vendor/Integrator further represents and warrants that it has or will have all appropriate licenses, agreements, or ownership rights pertaining to all patent, copyright, trade-secret, or other intellectual-property or proprietary rights needed for the performance of its obligations under this Agreement, including without limitation that it will have all necessary rights to use patentable or copyrightable materials, equipment, devices, or processes not furnished by Authority used in or incorporated in the Services or the System; and

2.3.2    in case any software, materials, equipment, devices, processes, or other materials are held to constitute an infringement and their use enjoined, then, unless the Authority has a direct license agreement with a third party imposing on the third party the obligations set forth in (a), (b), and/or (c) below, which obligations Authority has exhausted all reasonable efforts to enforce against such a third party, Vendor/Integrator, at Vendor/Integrator's sole cost and expense, shall: (a) secure for Authority the right to continue using the materials, equipment, devices or processes by suspension of the injunction or by

Contract No. H1636-10                                4                          Authorized by Board 10/1/10
                                                                                                                    2664174.6

procuring a royalty-free license, or licenses,  (b) replace such materials, equipment, devices, or processes with non-infringing materials, equipment, devices, or processes, or (c) modify them so that they become non-infringing or remove the enjoined materials, equipment, devices or processes and refund the sums paid for them without prejudice to any other rights of Authority. The option of (a), (b), or (c) or any combination of (a), (b) or (c)  In the preceding sentence must be selected in consultation with Authority and with Authority's consent, which shall not be unreasonably withheld.  The option may not entail an unreasonable or excessive amount of time or cause undue disruption to Authority's operations.

Vendor/Integrator's obligations set forth in this Section 2.3.2 shall not exceed the obligations of Vendor/Integrator's subcontractor set forth in any license agreement between Authority and such subcontractor applicable to software, Materials, equipment, devices or processes provided by the subcontractor.

The remedy set forth in this Section 2.3.2 shall be the sole remedy of Authority for any failure of Vendor/Integrator to meet the terms of this warranty.

### 3.    PRECEDENCE

3.1    This Agreement shall consist of the following documents, all of which are incorporated herein by this reference.  In the event of any conflict or inconsistency between the provisions of this Agreement, the following incorporated documents are listed in order of precedence:

(a)    Amendments or Change Orders to this Agreement

(b)    This Agreement

(c)    Exhibit A - Scope of Services/Technical Specifications

(d)    Exhibit B - The final Price/Cost Forms

(e)    Exhibit C -  Payment Schedule

(f)    Vendor/Integrator's Proposal, dated June 18, 2010, including all forms, attachments, and exhibits

(g)    The Authority's RFP dated March 22, 2010, as amended by Addenda

### 4.    SCOPE OF SERVICES

4.1    The Scope of Services requires the Vendor/Integrator to design, furnish, and install the System, including all warranties provided for under this Agreement, in conformance with Exhibit A.  Exhibit A includes both base and optional items ("Authority Options").  Authority Option Items are identified as such in Exhibit B.  SCRRA may exercise the right to procure any optional items at its sole discretion for the price listed on Exhibit B and within the number of days after Notice to Proceed set forth in Exhibit B.

4.2     The Authority shall have, at its sole discretion, the right to exercise an option to expand the scope of Vendor/Integrator's Services to include (a) Vendor/Integrator's Services related to the production and submission of NCTD's PTC Development Plan as described in Exhibit A: Section 10.3; (b) the provision of a dispatch system for the Authority that will allow it to provide dispatch services to NCTD;  and (c) the provision to NCTD of a PTC System, substantially the same as that provided to the Authority as described in Exhibit A.  (Collectively items (a), (b) and (c) are referred to as the "NCTD Option.")  The Authority may at any time within 120 days after Notice to Proceed exercise any or all of the three parts of the NCTD Option.  The Authority may exercise all or part of the NCTD Option at the same time, or may exercise any of the three parts separately and sequentially.  The Scope of Services to be provided under the NCTD Option is fully described in Exhibit A: Section 4.3 with additional, NCTD-Option specific descriptions of services contained within the appropriate sections of Exhibit A.  The schedule of performance of the NCTD Option is described in Exhibit A: Section 10.1

## 5.     PERIOD OF PERFORMANCE

The period of performance under this Agreement will commence upon the Authority's issuance of a written Notice to Proceed and will continue until the Vendor/Integrator has completed all the Services required for provision of the System including a two year warranty period as described in this Agreement.  In the event that the Authority exercises the NCTD Option, the term of this Agreement shall also continue until all Services required pursuant to the NCTD Option are completed.  In addition, the Parties may enter into an additional agreement for continued support, operation and maintenance of the System.  The detailed schedule for Vendor/Integrator's Services will conform with the requirements set forth in Section 8.3 of Exhibit A.

## 6.     PAYMENT AND INVOICING

6.1     Compensation

6.1.1     The Vendor/Integrator agrees to provide the System, and perform all of the Services included in Section 4, for a total Contract Price of One Hundred and Sixteen Million, Seventy Thousand, Seven Hundred and Seventy Nine Dollars ($116,070,779), in accordance with Exhibit B.  This total Contract Price includes the cost of any Authority Options described in Section 4.1  In addition, sales tax shall be paid by Authority as set forth in section 6.1.4. Such sales tax is estimated as of the Effective Date at $4,100,000.

6.1.2     In the event that the Authority exercises the NCTD Option, the Vendor/Integrator agrees to provide the Services required for the NCTD Option for a total price of Thirty Three Million, Ninety Two Thousand, Three Hundred and Thirty Seven Dollars ($33,092,337) (the "NCTD Option Price").   Specifics as to the pricing of the different components of the NCTD Option Price are set forth in Exhibit B.  In addition, sales tax shall be paid by Authority as set forth in section 6.1.4.  Such sales tax is estimated as of the Effective Date at $750,000.

6.1.3     The Vendor/Integrator agrees to complete the Services within the time specified in the Contract Documents and to accept as full payment the amounts provided in Exhibit B. The Contract Price is inclusive of all expenses such as travel, meals, and telephone,

and any and all labor, software, materials, profit, overhead, insurance, warranty, and Subcontractor costs incurred by the Vendor/Integrator. This Contract Price also includes all payment for the software licenses included in the Services and provided pursuant to the separate License Agreement(s) between Vendor/Integrator and/or its Subcontractors and Authority.

6.1.4    California State Sales/Use Tax is not included in the Contract Price, or in the NCTD Option Price, but shall be included as applicable to invoices.

6.1.5    Payment shall be made as set forth in the Payment Schedule attached to this Agreement as Exhibit C. Vendor/Integrator's unit pricing, as well as all supporting information contained in Exhibit B shall remain firm for the entire term of this Agreement, subject to the following. The Authority reserves the right to direct a change in the number of items to be included in the System. Any change in quantities will result in an adjustment of the Contract Price. In the event that Authority changes the quantities described in Exhibit A and contained in Exhibit B, by an amount of greater than 20% from that stated for unit price, the Parties will mutually agree on the unit pricing that will apply. In the event that Authority changes the quantities described in Exhibit A and contained in the Price/Cost Forms, Exhibit B, by an amount less than 20% after one year of issuance of the Notice to Proceed, the Vendor/Integrator's pricing shall be subject to an automatic increase or decrease in an amount equal to the increase or decrease in the All Items Consumer Price Index in the Los Angeles-Riverside-Orange County, CA area between the date of the Notice to Proceed and the date on which the change in quantities is requested. Adjustments in the Contract Price set forth in this sub-section shall be the sole method of determining any adjustments in the Contract Price that result from the Authority's change in the number of items included in the System.

6.2    Invoicing

6.2.1    The Vendor/Integrator shall submit invoices/billing statements in accordance with Exhibit C. Only one invoice per month may be submitted.

6.2.2    In the event that the Authority exercises the NCTD Option described in section 4.2, the Parties shall mutually agree upon a milestone payment schedule for the work covered by the NCTD Option.

6.2.3    Final Payment — Release

Within 90 days of receiving payment for achieving the Final Acceptance Milestone, Vendor/Integrator shall furnish a signed statement providing that it has made all payment due its Subcontractors and suppliers from sums paid Vendor/Integrator by the Authority to date. Authority shall make the final milestone payment referenced on Line D.8.1a of Exhibit C only after Vendor/Integrator furnishes a signed statement providing that Vendor/Integrator has made final payment to all its Subcontractors and suppliers for work performed under this Agreement and that it releases the Authority from any Claims for an increase to the Contract Price other than those for which notice has been given pursuant to Section 16.

6.2.4    Vendor/Integrator shall include in the invoice applicable sales tax associated with any taxable items included within the deliverables associated with each



milestone.  Each invoice/billing statement must be in a form acceptable to the Authority and shall include the following information:

Agreement number

Milestone covered by invoice

Amount of payment requested

Additional information requested by Authority

6.2.5    The Authority will pay approved invoices/billing statements within 30 calendar days of their receipt.  The Authority reserves the right to withhold payment to the Vendor/Integrator if the Authority determines that the quantity or quality of the work performed is unacceptable.  The Authority shall provide written notice to the Vendor/Integrator within 10 business days of the Authority's decision not to pay and the reasons for non-payment.

6.2.6    Two copies of each invoice must be sent as follows:

Original copy to Authority Contract Manager for review and approval prior to processing for payment to:

Southern California Regional Rail Authority
700 S. Flower Street, 26th Floor
Los Angeles, CA. 90017
Attn: Darrell, Maxey, Authority Contract Manager

One copy to:

Southern California Regional Rail Authority
700 S. Flower Street, 26th Floor
Los Angeles, CA 90017
Attn: Accounts Payable

## 7.    ERRORS, INCONSISTENCIES, OMISSIONS

Vendor/Integrator shall promptly notify Authority of all errors, inconsistencies, omissions, and/or non-conformities that it discovers in any Authority specifications or instructions and, in instances where such errors, inconsistencies, omissions and/or non-conformities are discovered, shall obtain specific instructions in writing from Authority before Vendor/Integrator proceeds with any Services so affected.  Any Services so affected which are performed prior to Authority's decision shall be performed at Vendor/Integrator's sole risk.  Vendor/Integrator shall not take advantage of any apparent error, inconsistency, omission, and/or non-conformity.  Authority shall be entitled to make such corrections and interpretations as Authority may deem necessary for the fulfillment of the intent of this Agreement.  Omissions or incorrect descriptions of any Services that are manifestly necessary to carry out the intent of this Agreement, or that are customarily performed, shall not relieve Vendor/Integrator from performing such Services

and Vendor/Integrator shall perform such Services as if fully and correctly set forth in this Agreement.

**8.    RISK OF LOSS**

8.1    Risk of Damage or Loss to the System

Subject to the second paragraph of this section 8.1, at all times until Final Acceptance, including when any Goods are in transit to the Authority, Vendor/Integrator shall bear all risk and expense of damage or loss to the System and all Materials, Goods and property required for the implementation of the System, including any Goods located on property or in facilities other than the Authority's for any reason, and the risk of all non-material damage or loss, except for damage or loss caused by, and to the extent was caused by, the active negligence of the Authority.  To the extent of damage or loss the Authority agrees in its reasonable discretion was caused by the active negligence or willful misconduct of the Authority, Vendor/Integrator must promptly replace the damaged or lost portions of the System at Vendor/Integrator's cost, and submit the amount(s) thus expended to the Authority for reimbursement as a clearly identified, separate item on its next invoice to the Authority.  Any failure by Vendor/Integrator to maintain the insurance required in Section 12 shall not lessen Vendor/Integrator's responsibility for paying any and all amounts that would have been covered by such insurance.  With regard to the cost of any such damage or loss not recovered under Vendor/Integrator's insurance, the cost of rebuilding, repairing, restoring and/or replacing the damaged or lost portions of the System shall be deemed included in the Contract Price, if not caused by Authority.

Notwithstanding the preceding paragraph, once Goods are located on Authority property and under Authority control, Vendor/Integrator shall not bear any risk of loss caused by the acts or omissions of Authority.

8.2    Risk of Loss to Other Property in Performing the Work

Vendor/Integrator shall bear the risk of loss or damage to any property not considered part of the System arising from actions or inactions of Vendor/Integrator.  In addition, Vendor/Integrator shall bear all risk of loss or damage with respect to all Materials acquired for the purpose of implementing the System.  Vendor/Integrator shall protect from damage existing property, belonging to the Authority or any third parties affected by the System design, installation, operation, and maintenance activities and shall provide appropriate protection for all such property during progression of the Services.  Liability arising out of property of third parties is limited to the extent the damage is caused by the negligence of Vendor/Integrator.  Should any of the Authority or third party property be damaged, such property shall be` repaired or replaced at Vendor/Integrator's expense to the satisfaction of the Authority, and if applicable, to the satisfaction of the affected third party.  No extension of time will be allowed for repair or replacement of such damaged items.  Should Vendor/Integrator not repair or replace such damaged items, the Authority shall have the right to take corrective measures itself and deduct the cost from any sums owed to the Vendor/Integrator.

**9.    LIQUIDATED DAMAGES**

9.1   It is agreed by the Parties to this Agreement that TIME IS OF THE ESSENCE, and in the event of a delay in achieving PTC in-service date on SCRRA's six (6) operating subdivisions by the "PTC in Revenue Service" milestone defined in Exhibit A, damage will be sustained by the Authority, and that it is or will be impracticable to determine the actual amount of the damage by reason of such delay. It is, therefore, agreed that liquidated damages in the amount of $10,000 per day for each day Monday through Friday (inclusive) shall be assessed in the event that Vendor/Integrator achieves the PTC in Revenue Service milestone later than as defined in Exhibit A, and shall be payable until the PTC in Revenue Service milestone is achieved. Vendor/Integrator agrees to pay said liquidated damages, and further agrees that the Authority may deduct such amount from any monies due or that may become due the Vendor/Integrator under this Agreement.   If the balance due to Vendor/Integrator upon achieving the PTC in Revenue Service milestone is less than the amount of any liquidated damages assessed pursuant to this Section, Vendor/Integrator shall promptly pay any deficit to Authority upon achieving the PTC in Revenue Service milestone as a condition of receiving any further payment under this Agreement. Assessment of liquidated damages shall be Authority's sole remedy for delay if Vendor/Integrator is late in achieving the PTC in Revenue Service milestone. The total cumulative liquidated damages assessed by the Authority pursuant to this Section shall not exceed a total of $1.5 million.

9.2   The Vendor/Integrator will be granted an extension of time and will not be assessed with liquidated damages for delays caused by those circumstances comprising events of Force Majeure as defined in Section 12 of this Agreement, but including also delays in availability of ITC radios as set forth in Section 9.2.1. Vendor/Integrator must notify the Contract Manager in writing of the causes of delay within five calendar days after it becomes aware or should reasonably have become aware of any such delay.   The Contract Manager shall ascertain the nature of the delay and determine whether an extension of time is warranted. Vendor/Integrator has the burden of proof that the delay was beyond its control. Analysis of all schedule delays will be subject to the Scheduling requirements in Section 8 of Exhibit A.

9.2.1   The ITC radio is an essential part of PTC. Specifications and working models of this device are not available on the Effective Date of this Agreement. Any delay in the availability of pre-production or production models of the ITC radio is hereby deemed as not within the reasonable control of Vendor/Integrator.   The Vendor/Integrator's schedule for meeting the Substantial Completion Milestone is predicated upon the availability of a limited number of pre-production models on or before June 30, 2011 (the "ITC pre-production Availability Date") to allow the start of the ITC radio system testing. The Vendor/Integrator's schedule for meeting the Substantial Completion Milestone is also predicated upon the availability of the final ITC production radios on or before June 30, 2012 (the "ITC Availability Date") in quantities sufficient to meet Vendor/Integrator's schedule. The Authority shall not assess liquidated damages to the extent delay in meeting the Substantial Completion Milestone is due to delays in the ITC pre-production Availability Date or the ITC final production Availability Date. If availability of production models of the ITC radio is delayed beyond the ITC Availability Date, the Parties shall negotiate an equitable adjustment to the schedule and to the Contract Price for documented unavoidable additional cost incurred by Vendor/Integrator resulting from such delay.

9.3   In the event the NCTD Option described in Section 4.2 is exercised by the Authority, liquidated damages shall also apply to the same extent as set forth in Sections 9.1 and 9.2 to delays in reaching NCTD's PTC in-service date (NCTD Substantial Completion

Milestone) beyond December 31, 2013, or authorized extensions to that date.  NCTD liquidated damages shall be $2,500 per business day with a cumulative cap of $375,000.

**10.    FORCE MAJEURE**

Each Party shall be excused from performance of any of its obligations to the other hereunder, where such nonperformance is occasioned by any event of Force Majeure, which is any event or circumstance beyond the non-performing Party's control and which includes without limitation, any order, rule or regulation of any federal, state, or local government body, agent, or instrumentality, acts of God or the public enemy, wars, civil disturbances, fires, floods, earthquakes that disrupt Authority service, epidemics, quarantine restrictions, strikes, labor disputes, freight embargoes, material shortages or accident; provided, however, that the Party excused hereunder shall use all reasonable efforts to minimize its nonperformance and to overcome, remedy, or remove such event in the shortest practical time.  Vendor/Integrator shall use its best commercial efforts to undertake and complete the repair, restoration, or replacement of any property which is necessary for the provision of the Services and the System in accordance with established train schedules and shall resume normal operations and performance of its other obligations hereunder as soon as reasonably possible.

**11.    INDEMNITY**

The respective indemnity obligations of the Parties are as set forth in this Section 11.

11.1    Subject to Section 11.2, Vendor/Integrator shall indemnify the Authority, its Member Agencies, the BNSF Railway Company, the National Railroad Passenger Corporation (Amtrak), the Union Pacific Railroad Company, the North County Transit District, and their officers, directors, employees and agents (collectively the "Authority Indemnitees") from and against any and all Losses based upon and to the extent caused by:

11.1.1    The negligence, willful misconduct or fraudulent act or omission of Vendor/Integrator, its officers, directors, employees, agents, Subcontractors, or suppliers;

11.1.2    An act or omission of Vendor/Integrator affecting the intellectual property rights of a third party, including the publication, translation, reproduction, delivery, use, or disposition of any work furnished under this Agreement or in connection with the ownership, possession, or use of any Vendor/Integrator Software, Materials, equipment, devices, processes, or other materials provided by Vendor/Integrator relating to the System; provided however, that this obligation to indemnify an Authority Indemnitee shall not apply:

-    until Authority has first exhausted all reasonable efforts to obtain Indemnity from any Subcontractor with whom Authority has a direct licensing agreement, or

-    to any infringement to the extent arising out of (1) an Authority Indemnitee's use of the intellectual property furnished under this Agreement contrary to applicable documentation or written instructions timely supplied by the Vendor/Integrator; (2) any alteration, modification or revision of the intellectual property by an Authority Indemnitee not expressly authorized in writing by the Vendor/Integrator (or its Subcontractors or agents); (3) an Authority Indemnitee's



failure to use or implement corrections or enhancements to the intellectual property furnished by the Vendor/Integrator under this Agreement; (4) any distribution, marketing, or use of the intellectual property by an Authority Indemnitee that is not allowed under this Agreement; or (5) the combination by an Authority Indemnitee of the intellectual property with other intellectual property not supplied by Vendor/Integrator (or its Subcontractors or agents). With respect to intellectual property provided by a Subcontractor and subject to a license agreement directly between the Subcontractor and Authority, Vendor/Integrator's obligations under this warranty shall not exceed the obligations of such Subcontractor as provided in the subject license agreement.

11.1.3    The failure by Vendor/Integrator to comply with the provisions, including any successor provisions, of all applicable regulations of the Federal Railroad Administration and other entities with regulatory authority over the rail industry as well as other applicable federal, state and local laws to the extent they apply to the matters that are within the scope of this Agreement; provided however that should any applicable regulations be modified, promulgated, or otherwise altered after the Effective Date such that Vendor/Integrator's performance under this Agreement will be affected, the Parties agree to negotiate an equitable adjustment to the schedule and/or compensation set forth herein as may be reasonable.

11.2    The Authority shall indemnify Vendor/Integrator, its parent company, affiliates and subsidiaries, and their directors, officers, employees and shareholders, (The "VI Indemnitees") from and against any and all Losses arising out of or in connection with a Claim based upon:

11.2.1    The negligence, willful misconduct or fraudulent act of Authority, but only to the extent that such Losses are caused by these actions.

11.2.2    The negligence of Vendor/Integrator (whether active or passive) to the extent that such Losses exceed in the aggregate (a) $10 million in Losses covered by the insurance Vendor/Integrator is required to obtain under Section 12 of this Agreement, and (b) $50 million of such Losses, irrespective of whether such Losses are insured;

11.2.3    Product liability in the absence of the negligence of Vendor/Integrator to the extent that such Losses exceed in the aggregate $5 million, subject to the following: (i) in the event a Claim involves multiple causes of action, Authority shall have no obligation pursuant to this Section 11.2.3 to indemnify Vendor/Integrator for causes of action other than those for product liability; (ii) Authority will have no obligation to indemnify Vendor/Integrator to the extent Vendor/Integrator receives payment by way of indemnity from a Subcontractor; and (iii) Vendor/Integrator shall not be entitled to indemnity from Authority without having first exhausted all reasonable efforts to obtain defense and payment from any Subcontractor whose product gives rise to the product liability Claim; and

11.2.4    Any act or omission whatsoever of Vendor/Integrator arising in connection with its performance under this Agreement, whether such Claim is by Authority or by a third party, resulting in Losses to Vendor/Integrator which, when aggregated with all other Losses incurred by Vendor/Integrator (other than those specifically excluded in the definition of the Overall Liability Cap), exceed the Overall Liability Cap.

11.3   In the case of a negotiated settlement of any Claim, the duty of a Party to Indemnify shall extend only to that portion of any such settlement determined by the agreement of Authority and Vendor/Integrator to have been attributable to the probability that an Indemnifiable Loss would have been incurred by the Party to be Indemnified.

11.4   The obligation of Authority to Indemnify Vendor/Integrator and the VI Indemnitees with respect to Claims arising out of any Services relating to field installation activities specified on the Price/Cost Forms (Exhibit B) shall not include Claims due to the sole negligence of Vendor/Integrator or VI Indemnitees in the performance of such Services.

11.5   The Indemnity rights and obligations set forth in this Section 11 shall survive termination or expiration of the Agreement.

## 12.   INSURANCE

Throughout the duration of this Agreement, Vendor/Integrator shall maintain the following insurance, which shall be full-coverage insurance, including all deductibles, not subject to self-insurance provisions.   Vendor/Integrator shall not of its own initiative cause such insurance to be canceled or materially changed during the course of this Agreement.

12.1   Commercial General Liability to Include Products/Completed Operations, Independent Contractor, Contractual Liability, and Personal Injury Liability; with at least the following limits of liability:

12.1.1   Primary Bodily Injury Liability Limits of $5,000,000 and Primary Property Damage Liability Limits of $5,000,000 per occurrence or Aggregate liability for both bodily injury and property damage liability of $10,000,000.

12.2   Automobile Liability with the following limits:

12.2.1   Primary Bodily Injury with limits of $1,000,000 per occurrence and Primary Property Damage with limits of $1,000,000 per occurrence, or combined single limits of Liability for Primary Bodily and Primary Property Damage of $2,000,000 per occurrence.

12.3   Workers' Compensation Insurance – with the limits established and required by the State of California.

12.4   Employer's Liability – with limits of $1,000,000 per occurrence.

12.5   Environmental Pollution Liability – with limits of $15,000,000 per occurrence.

12.6   Professional Liability with limits of $10,000,000 per claim and aggregate

12.7   Railroad Protective Liability Insurance

12.7.1   Vendor/Integrator shall provide, with respect to the operations Vendor/Integrator or any of its Subcontractors perform on any property of Authority in accordance with criteria shown in "Rules and Requirements for Construction on Railway

Property," Railroad Protective Liability Insurance, AAR, AASHTO (ISO/RIMA) form, in the name of:

> Insured:
>
> Southern California Regional Rail Authority
>
> Additionally Insured:
>
> BNSF Railway Company
>
> Los Angeles County Metropolitan Transportation Authority
>
> Amtrak
>
> Orange County Transportation Authority
>
> Riverside County Transportation Commission
>
> San Bernardino Associated Governments
>
> Union Pacific Railroad Company
>
> Ventura County Transportation Commission
>
> North County Transit District
>
> Others at the request of Authority

12.7.2    The policy shall have limits of liability of not less than $10 million per occurrence, combined single limit, for coverage and for losses arising out of injury to or death of all persons, and for physical loss or damage to or destruction of Property, including the loss of use thereof.  A $20 million annual aggregate shall apply.

12.8    Prior to commencement of any work hereunder, Vendor/Integrator shall furnish to Authority's Contract Manager an endorsement showing the required insurance coverages for Vendor/Integrator and further providing that:

12.8.1    Authority, its officers, directors, employees, Member Agencies and agents are named as an additional insured via endorsement on Vendor/Integrator's Commercial General Liability and Automobile Liability Insurance with respect to Vendor/Integrator's performance hereunder; and

12.8.2    The coverage shall be primary and noncontributory as to any other insurance with respect to liability hereunder; and

12.8.3    Thirty (30) days' prior written notice of cancellation or of material change in coverage be given to Authority by endorsement.

12.9   "Occurrence," as used herein, means any event or related exposure to conditions which result in bodily injury or property damage.

12.10   Any deductibles or self-insured retentions must be declared to and approved by Authority.   At the option of Authority, either (1) the insurer shall reduce or eliminate such deductibles or self-insured retentions as respects Authority, its officials and employees; or (2) Vendor/Integrator shall procure a bond guaranteeing payment of losses and related investigation, claim administration and defense expenses.   In the event that Vendor/Integrator's policy contains a deductible or self-insured retention, and in the event that Authority seeks coverage under such policy as an additional insured, Vendor/Integrator shall satisfy such deductible or self insured retention to the extent of loss covered by such policy for a lawsuit arising from or connected with any alleged act or omission of Vendor/Integrator, its officers, directors, employees, agents, Subcontractors, or suppliers, even if Vendor/Integrator is not a named defendant in the lawsuit.

12.11   Authority shall be responsible to provide all insurance pertaining to Authority-owned vehicles, including but not limited to auto liability and collision coverage naming Vendor/Integrator as additional insured.   Upon mutual agreement between Vendor/Integrator and Authority, if Vendor/Integrator's negligence causes an insurance claim, Vendor/Integrator shall be responsible for a mutually agreed-to deductible amount not to exceed $1,000.00 per occurrence.   Authority's obligation to provide insurance with respect to Authority-owned vehicles does not waive any Vendor/Integrator responsibilities for insurance coverage as required in this Section 12.

## 13.   CONTRACT BONDS

13.1   Performance Guaranty.   The Vendor/Integrator shall provide a Performance Guaranty in an amount of $46,428,312, being an amount equal to forty percent (40 %) of the total Contract Price, including all warranty services.   The Performance Guaranty shall guarantee the Vendor/Integrator's faithful performance of the Contract in compliance with all terms, conditions, and requirements specified in the Contract Documents.   The Performance Guaranty shall remain in full force and effect until completion of the warranty period, and satisfactory resolution of all outstanding warranty claims. Failure to have in place a compliant Performance Guaranty at any time during the term of this Agreement shall constitute a material breach.   The Performance Guaranty shall be in the form either of a Performance Bond or a Letter of Credit. If a Letter of Credit is provided, it must be issued in a form and from a bank satisfactory to the Authority.   In the event that the Authority exercises the NCTD Option described in section 4.2, the Vendor/Integrator shall provide an additional Performance Guaranty in the amount of $13,236,895, being an amount equal to 40% of the price of the NCTD Option. The Performance Guaranty shall meet all the requirements of this section.

13.2   Payment Bond. As a matter of contract, and not as a requirement of law, the Vendor Integrator shall also provide a Payment Bond in the amount of $16,125,473, being an amount equal to the cost of any field installation work specified on the Price/Cost Forms (Exhibit B).   The Payment Bond shall provide the Authority with security for Vendor/Integrator's full payment to all Subcontractors for costs of materials, equipment, supplies, and labor furnished in the course of performing any work that may be required for the above referenced line item.   In the event that the Authority exercises the NCTD Option described in section 4.2, the Vendor/Integrator shall provide an additional Payment Bond in the amount of $5,789,022, being

an amount equal to the cost of any field installation work specified on the Price/Cost Forms (Exhibit B).  The Payment Bond shall meet all the requirements of sub-section 13.3 and 13.4.

13.3   Contract bonds shall be on forms provided by Authority and shall be executed as surety by a corporation or corporations admitted and authorized to issue surety bonds in the State of California, which is acceptable to the Authority.

13.4   All alterations, extensions of time, extra and additional work, and other changes authorized by the Contract Documents may be made without securing the consent of the surety or sureties on the Contract bonds.  Full compensation for furnishing the Contract bonds is included in the prices paid for the various Contract Items of work and no separate payment will be made for the bonds.

## 14.   WARRANTY

14.1   Warranty and Warranty Period

14.1.1   Subject to Section 14.1.4, the Vendor/Integrator shall provide a warranty for two years commencing 120 days after the date upon which the PTC in Revenue Service milestone is achieved as defined in Exhibit A.  In the event the Authority exercises the NCTD Option set forth in Section 4.2, the same warranty as set forth in this Section 14 shall apply to the NCTD Option except that the warranty for the NCTD Option shall commence 120 days after the date upon which the PTC in Revenue Service milestone date for the NCTD Option is achieved as set forth in Section 19.5 of Exhibit A.  Notwithstanding the foregoing, the warranty for the dispatch system component of the System shall commence 61 calendar days after the dispatch system is placed in revenue service as set forth in Section 18.11 of Exhibit A.  The Vendor/Integrator shall provide the following warranties during the two-year warranty period:

14.1.1.1 The System, or as applicable the dispatch system, shall comply in all material respects with the requirements of the Contract Documents;

14.1.1.2 The System, or as applicable the dispatch system,  shall operate at the reliability and availability rates set forth in the Contract Documents;

14.1.1.3 The System, or as applicable the dispatch system, shall be free of defects in design, material, and workmanship.

14.1.1.4 The System, or as applicable the dispatch system,  shall not infringe upon or violate any patent, copyright, trade secret, or proprietary right of any other party.

14.1.2   The Vendor/Integrator shall address and repair or replace under warranty any item falling into one or more of the above categories.  The Vendor Integrator will be responsible (i.e., identify and correct at no additional cost to the Authority) for all software bugs and System design errors identified during the warranty period.

14.1.3   The warranty for any Goods or Materials replaced or repaired under this warranty shall be extended for a period of two years from the time the Authority accepts any

replaced or repaired Goods or Materials.  If corrective work is performed under this warranty, a two year warranty shall apply to the corrected work covering any discrepancies and defects in the corrected work that are discovered after the corrected work is accepted.

14.1.4    If, during the 120 day testing period after PTC in Revenue Service Milestone described in Section 19.5 of Exhibit A,  the System is not completely responsive to the Contract requirements, and in particular fails to meet the requirements of the availability test set forth in Section 19.5 of Exhibit A,  the Authority may determine in the reasonable exercise of its discretion that implementing any necessary corrective action(s) need not delay the conclusion of the 120 day testing period provided that the Authority determines that the complete integrated System is still suitable for revenue service.   If the Authority so determines to certify conclusion of the 120 day testing period even in the event of such failure(s) and the need for corrective action(s), the warranty period described in Section 14.1.1 shall not commence on any System device or component requiring corrective action(s) until such corrective action(s) are accepted by the Authority.

In the event that failures during the 120 day test are so significant that the Authority determines that the System is no longer suitable for revenue service, the warranty period shall not commence for any part of the System until satisfactory completion of the 120 day test, or such earlier date as the Authority determines feasible as set forth in the preceding paragraph. Completion of the 120 day availability test with outstanding corrective action(s) necessary may commence the warranty period with regard to those portions of the System that are free of failure. But Final Acceptance as set forth in Section 19.15 of Exhibit A shall not be achieved, even if the warranty has commenced, until all necessary corrective action(s) are accepted by the Authority.

14.2    Title Warranty

14.2.1    Vendor/Integrator warrants that it owns or will own, and has or will have, good and marketable title to all goods, materials, equipment, tools, supplies, or systems furnished or to be furnished, by it and its Subcontractors that become part of the System or are purchased for the Authority for the operation, maintenance or repair thereof, free and clear of all encumbrances.

14.2.2    The Vendor/Integrator warrants that the title conveyed under the terms of this Contract shall be good and that all goods, materials, equipment, tools, supplies, systems or equipment shall be delivered free from all security interests or other liens or encumbrances.  Vendor/Integrator also agrees to defend the title against all persons claiming the whole or part of any goods, materials, equipment, tools, supplies, or systems.

14.3    Warranty Procedures

14.3.1    The procedures for providing warranty services shall be as set forth in Section 22.13 of Exhibit A. If the Vendor/Integrator fails to proceed promptly with any corrective work as directed by the Authority in accordance with Section 22.13, such corrective work, may be effected at the Vendor/Integrator's expense by such method as the Authority may determine. The Authority may deduct the cost of such corrective work from any amount owed to the Vendor/Integrator or require the Vendor/Integrator to reimburse such costs to the Authority. Nothing herein shall affect Vendor/Integrator's warranties to the Authority.

14.4    THE EXPRESS WARRANTIES IN SECTION 2 AND IN THIS SECTION 14 ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHICH ARE HEREBY EXPRESSLY DISCLAIMED.

## 15.    CHANGES

15.1    Authority may at any time, by a written order, unilateral or bilateral, and without notice to the sureties, make changes within the general scope of the Contract.  If any such change causes an increase or decrease in the cost of, or the time required for, the performance of any part of the Services under this Contract, an equitable adjustment shall be made in the Contract Price or delivery schedule, or both, and the Contract shall be modified by a contract change order accordingly.  In the event that Vendor/Integrator encounters any unanticipated conditions or contingencies that may affect the Services and result in an adjustment in the amount of compensation specified herein, or identifies any Authority conduct (including actions, inaction, and written or oral communications other than a formal contract modification) that the Vendor/Integrator regards as a change to the contract terms and conditions, the Vendor/Integrator shall so advise the Authority immediately upon notice of such condition, contingency or conduct. Failure to provide written notice and receive Authority approval for extra work prior to performing extra work may result in nonpayment of the invoices reflecting such work to the extent Authority is prejudiced by the failure of Vendor/Integrator to provide such notice and receive such approval.

15.2    If additional costs are to be paid to Vendor/Integrator for Contract changes, the amount to be paid to Vendor/Integrator shall be increased in accordance with this Section.  The delivery schedule will be adjusted for Contract changes which directly impact the critical path of the master schedule, as demonstrated by Vendor/Integrator.  In addition, if Vendor/Integrator costs will be decreased due to Contract changes, the decreased amount to be paid to Vendor/Integrator shall be determined in the same manner as a change that will increase Vendor/Integrator's costs.

15.3    The Vendor/Integrator shall submit a Cost and Schedule Proposal (CSP) as specified in this Section including an itemized breakdown indicating all increases or decreases in the cost of the work.

15.4    The CSP must detail all applicable direct costs, including labor and materials, with the unit price and corresponding quantity, Subcontractor(s) or supplier(s) quote or purchase order, and mark up, etc. which makes up the total proposed cost.  The information must be in sufficient detail for Authority to determine if the proposed costs are fair and reasonable.

15.5    The combined profit and overhead of the supplier(s)/subcontractor(s) with the respect to any change order work shall be determined in accordance with the requirements of the Federal Acquisition Regulations.  The Vendor/Integrator shall be entitled to an administrative fee of 10% for any additional Services provided including Services provided by a subcontractor or identified as an allowance in Exhibit B.  The Vendor/Integrator shall include a provision in each subcontract that conforms with the provisions of the preceding sentence.

15.6    The Vendor/Integrator represents that to the best of its knowledge, if suppliers or subcontractors sell comparable equipment or services under similar terms and conditions, including consideration of factors such as quantity, development cost, integration cost, warranty cost and liability risk, rates shall be consistent with rates charged to other transit properties.

15.7    Equipment costs used for the work shall be reimbursable to Vendor/Integrator. All receipts, vouchers and all other supporting documentation required to substantiate the material costs shall be available for Authority's inspection and verification.

15.8    The proposed schedule should include the estimated start date of the work with all major events scheduled and the target date to complete the work.

15.9    The CSP received from Vendor/Integrator will be reviewed by Authority. Authority may request additional information and/or clarification of the proposal. After sufficient information is received, as determined by the reviewer, Vendor/Integrator and Authority will determine the final amount and schedule impact, if any, of the change order.

15.10   The change order document with the agreed upon changes and the corresponding record of negotiations, which will include major points and concessions of the discussions, will be forwarded to Vendor/Integrator for its signature. The Vendor/Integrator shall return these documents to Authority. The Authority's Chief Executive Officer or its authorized representative's signature on the change order document will constitute execution thereof, and a copy of the change order and record of negotiations will be forwarded to Vendor/Integrator for its record.

15.11   A change order must be issued and executed before any work is started on the items covered by the change order. Any extra work done without a written change order signed by the Authority's Chief Executive Officer or its authorized representative will be considered as unauthorized and at the sole expense of Vendor/Integrator. In the event Vendor/Integrator receives direction, instruction, interpretation, or determination from any source which may cause any change in the Services, Vendor/Integrator shall promptly notify Authority. Such written notification shall be given to Authority before Vendor/Integrator acts on said direction, instruction, interpretation, or determination.

16.    CLAIMS

16.1    The Vendor/Integrator shall be solely responsible for providing timely written notice to the Authority of any Claims for additional compensation and/or time in accordance with the provisions of this Agreement. It is the Authority's intent to investigate and attempt to resolve any Vendor/Integrator Claims before the Vendor/Integrator has performed any disputed work. Therefore, Vendor/Integrator's failure to provide timely notice shall constitute a waiver of Vendor/Integrator's Claims for additional compensation and/or time.

16.2    The Vendor/Integrator shall not be entitled to the payment of any additional compensation for any cause, including any act, or failure to act, by the Authority, or the failure or refusal to issue a modification, or the happening of any event, thing, or occurrence, unless it has given the Authority due written notice of potential Claim. The potential Claim shall set forth the reasons for which the Vendor/Integrator believes additional compensation may be due, the nature of the costs involved, and the amount of the potential Claim.

16.3    If based on an act or failure to act by the Authority of which the Vendor/Integrator is aware or should reasonably be or have been aware, such notice shall be given to the Authority prior to the time that the Vendor/Integrator has started performance of the work giving rise to the potential Claim for additional compensation.  In all other cases, notice shall be given by the Vendor/Integrator within 10 days after it becomes aware of the event or occurrence giving rise to the potential Claim.

16.4    During the pendency of any Claim, the Vendor/Integrator shall continue to work in a diligent and timely manner as directed by the Authority, and shall be governed by all applicable provisions of the Contract.  The Vendor/Integrator shall maintain cost records of all work which is the basis of any dispute.

16.5    If an agreement can be reached which resolves the Vendor/Integrator Claim, the Parties will execute a Contract modification to document the resolution of the Claim.  If the Parties cannot reach an agreement with respect to the Vendor/Integrator's claim within 180 days, they may choose to pursue a dispute resolution process as set forth in Section 17.

## 17.   DISPUTE RESOLUTION

17.1    Informal Resolution of Disputes

Vendor/Integrator and Authority shall use good faith efforts to resolve all disputes informally at the project manager level.  In the event such efforts are unsuccessful, either Party may request that the Authority provide a written determination as to the proposed resolution of the dispute.

Within twenty-one (21) calendar days of the request, the Authority's Contract Manager shall provide a written determination as to the dispute, which shall include the basis for its decision.   Upon Vendor/Integrator's written acceptance of the Contract Manager's determination, the contract may be modified and the determination implemented or, failing agreement, Authority may in its sole discretion pay such amounts and/or revise the time for performance in accordance with the Contract Manager's determination.

If the Contract Manager's determination is not accepted by the Vendor/Integrator, the matter shall promptly be referred to senior executives of the parties having designated authority to settle the dispute.  The senior executives will exchange memoranda stating the issues in dispute and their respective positions and then meet for negotiations at a mutually agreed time and place.  If the matter has not been resolved within thirty calendar (30) days of commencement of senior management negotiations, the Parties may mutually agree to try to settle the dispute by means of alternate dispute resolution methodologies.

17.2    Controversies Subject to Alternative Dispute Resolution

Any claim or controversy concerning the interpretation, application, or implementation of this Agreement between Authority and Vendor/Integrator which cannot be resolved through the informal efforts described above, may, by specific agreement of the parties, be submitted to alternative dispute resolution (that is, mediation or arbitration) with the parameters for such dispute resolution being agreed to by the Parties at the time.

### 17.3    Other Remedies

If a dispute is not resolved through discussion or the Parties do not agree to alternative dispute resolution, either party may pursue available legal remedies in a California State or Federal court of competent jurisdiction. Vendor/Integrator must file a government claim pursuant to Government Code section 910 et seq. in order to initiate a civil action.

### 17.4    Pending Resolution

The Vendor/Integrator shall continue to work during the dispute resolution process in a diligent and timely manner as directed by the Authority, and shall be governed by all applicable provisions of the Contract.

### 17.5    Cost of Alternative Dispute Resolution Proceedings

Each party hereto shall bear the costs and expenses incurred by it in connection with such alternative dispute resolution processes.  The cost of any mediator or independent decision maker shall be shared equally between the parties.

### 17.6    Matters Not Covered

Any matter that is subject to the express sole discretion of either party to this Agreement shall not be subject to the dispute resolution process described in this Section.

## 18.    TEMPORARY SUSPENSION OF WORK

18.1    The Authority, in its sole discretion, reserves the right to stop or suspend all or any portion of the work for such period as the Authority may deem necessary.  The suspension may be due to the failure on the part of the Vendor/Integrator to carry out orders given or to perform any provision of the Contract or to factors that are not the responsibility of the Vendor/Integrator. The Vendor/Integrator shall comply immediately with the written order of the Authority to suspend the work wholly or in part. The suspended work shall be resumed when the Vendor/Integrator is provided with written direction from the Authority to resume the work; provided that the parties must mutually agree to a resumption of work, and all terms governing such resumption, in the event of a suspension of longer than one hundred and eighty (180) calendar days that is not caused by failure on the part of the Vendor/Integrator to perform any provision of the Contract.  In the event that the parties are not able to mutually agree on reasonable terms governing such resumption of work after a suspension of longer than one hundred and eighty (180) calendar days that is not caused by failure on the part of the Vendor/Integrator to carry out orders given or to perform any provision of the Contract, Vendor/Integrator may terminate this Agreement and is entitled to reimbursement of its reasonable costs and expenses, as documented in writing and approved by Authority, arising out of such termination.

18.2    If the suspension is due to the Vendor/Integrator's failure to perform work or carry out its responsibilities in accordance with this Agreement, or other action or omission on the part of the Vendor/Integrator, all costs shall be at Vendor/Integrator's expense and no schedule extensions will be provided by the Authority.

18.3 In the event of a suspension of the work, the Vendor/Integrator shall not be relieved of the Vendor/Integrator's responsibilities under this Agreement, except the obligations to perform the work which the Authority has specifically directed Vendor/Integrator to suspend under this section.

## 19. TERMINATION

### 19.1 Termination for Convenience

19.1.1 Authority may terminate this Agreement for Authority's convenience, including for non-appropriation of funds, at any time by giving Vendor/Integrator a minimum of thirty (30) calendar days' written notice of Authority's election to terminate. Upon receipt of such notice, Vendor/Integrator shall immediately take action not to incur any additional obligation, cost or expense, except as may be reasonably necessary to terminate its activities, and shall by the end of that thirty (30) day period comply with its obligations under this Section 19. Authority shall pay Vendor/Integrator its reasonable and allowable costs through the effective date of termination and those reasonable and necessary costs incurred by Vendor/Integrator to effect such termination. Thereafter, Vendor/Integrator shall not be entitled to make any claim against Authority in connection with this Agreement. All finished or unfinished documents (including all drafts and works in progress that would be required to be delivered in final form) and any Goods and Materials procured for or produced pursuant to this Agreement that would otherwise be required to be delivered to the Authority by the terms of this Agreement shall become the property of Authority upon the effective date of such termination for convenience.

19.1.2 In the event of termination for convenience, Vendor/Integrator, and its Subcontractors, will provide reasonable and good faith cooperation in any transition to other vendors or consultants as Authority may determine necessary.

### 19.2 Termination for Default of Agreement

19.2.1 If Vendor/Integrator fails to perform any of the provisions of this Agreement, Authority may find Vendor/Integrator to be in partial or complete default. If Vendor/Integrator does not cure such default within thirty (30) days after receipt of written notification that such failure has occurred, or provide a plan to cure such default which is acceptable to Authority within the time specified by Authority, then Authority may, in its discretion, terminate this Agreement, in whole or in part, on the basis of Vendor/Integrator's default of this Agreement.

19.2.2 The term "default" for purposes of this Section includes, but is not limited to, the performance of the work in violation of the terms of the Contract; abandonment, assignment or subletting of the Contract without approval of the Authority; filing a petition for bankruptcy by or against the Vendor/Integrator or for appointment of a receiver for Vendor/Integrator's property; failure of the Vendor/Integrator to perform its obligations under the Contract Documents (including but not limited to: use of materials, supplies, plant, or equipment of quality or quantity below the requirements in the Contract Documents; failure to use an adequate number of properly skilled workers; failure to provide required Key Personnel; failure to provide proper workmanship); failure to perform its obligations under the Contract Documents within the time specified therein; failure to take effective steps to end a prolonged labor dispute; or the performance of the Contract in bad faith.

Contract No. H1636-10   22   Authorized by Board 10/1/10
2664174.6

Exhibit A
67

19.2.3    If Vendor/Integrator violates Section 29, Compliance with Lobbying Policies, then Authority may immediately terminate this Agreement.

19.2.4    If a federal or state proceeding for relief of debtors is undertaken by or against Vendor/Integrator, or if Vendor/Integrator makes an assignment for the benefit of creditors, then Authority may immediately terminate this Agreement.

19.2.5    Upon the Authority's termination of the Contract or a portion thereof for default, the Authority shall have the right to complete the work or the portion terminated by whatever means and methods it deems expedient, including the hiring of others on such terms as the Authority deems advisable. The expense of completing such work or portion thereof shall be charged to the Vendor/Integrator, who shall be responsible for making payment to the Authority for the amount due. The expense so charged may be deducted by the Authority out of such monies as may be due or become due to the Vendor/Integrator. The Authority may withhold all or any part of any payments otherwise due the Vendor/Integrator until completion and final settlement of the work covered by such notice of default. If the Vendor/Integrator cures the default within the cure period, but subsequently defaults again, the Authority may immediately terminate the Contract or a portion of it without giving the Vendor/Integrator any further notice or a right to cure.

19.2.6    All finished or unfinished documents (including all drafts and works in progress that would be required to be delivered in final form) and any Goods or Materials procured for or produced pursuant to this Agreement that would otherwise be required to be delivered to the Authority by the terms of this Agreement shall become the property of Authority upon the effective date of such termination for default.

19.2.7    If, after notice of termination of this Agreement under the provisions of this Section, it is determined for any reason that Vendor/Integrator was not in default under the provisions of this Section, or that the default was excusable under the terms of this Agreement, the rights and obligations of the Parties shall be the same as if the notice of termination had been issued pursuant to the Section entitled Termination for Convenience.

19.2.8    In the event of termination for breach Vendor/Integrator, and its Subcontractors, will provide reasonable and good faith cooperation in any transition to other vendors or consultants as Authority may determine necessary. Vendor/Integrator shall be liable to Authority for any excess costs as a result of a failure to so cooperate in good faith.

19.2.9    The rights and remedies of Authority provided in this Section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Agreement.

## 20.  OWNERSHIP OF WORK

Any and all copies (whether physical or electronic) of documents and Materials required by this Agreement to be submitted by Vendor/Integrator to Authority, or that are in the process of being prepared for submission by Vendor/Integrator to Authority, as part of the Services shall be and are the property of the Authority. The Authority shall be entitled to access to and copies of any such documents and Materials during the progress of the Services. Any such documents and Materials remaining in the hands of Vendor/Integrator or in the hands of any Subcontractor

upon completion of the Services or termination of this Agreement shall be immediately delivered to the Authority. If any Materials are lost, damaged, or destroyed before final delivery to the Authority, Vendor/Integrator shall replace them at its own expense and Vendor/Integrator assumes all risks of loss, damage, or destruction of or to such Materials. Nothing in this Section shall alter the Vendor/Integrator's sole ownership rights in intellectual property developed and owned by Vendor/Integrator irrespective of whether such developed intellectual property is intended to be used in connection with the Services hereunder.

## 21.   IP PROVISIONS

### 21.1   System

Vendor/Integrator grants to Authority a perpetual, unlimited, royalty-free, non-exclusive and irrevocable license for Authority (including without limitation its officers, directors, employees, and agents) to install, use, copy, modify, and maintain the System (and each and every part of the System), with no limitation on the number of sites or users. For further clarity, and without limitation to the generality of the foregoing, this grant of license includes without limitation:

21.1.1    rights to practice any inventions owned, controlled, or licensed by Vendor/Integrator (or any of its permitted Subcontractors) (or any of its or their parent, subsidiary, sister or otherwise affiliated or related companies) as reasonably desirable or necessary to operate or maintain the System (and each and every part of the System);

21.1.2    rights to use any know-how disclosed or otherwise provided by Vendor/Integrator (or any of its permitted Subcontractors) (or any of its or their parent, subsidiary, sister or otherwise affiliated or related companies) as reasonably desirable or necessary to operate or maintain the System (and each and every part of the System); and

21.1.3    rights to use, copy, and modify (and create derivative works from) Vendor/Integrator Software, with no limitation on the number of sites or users, as reasonably desirable or necessary to operate or maintain the System (and each and every part of the System).

### 21.2   Materials

Vendor/Integrator further grants to Authority a perpetual, unlimited, royalty-free, non-exclusive and irrevocable license for Authority (including without limitation its officers, directors, employees, and agents) to use, copy, distribute, display publicly, perform, and modify (and create derivative works from) any and all Materials.

### 21.3   Third Party Software

In providing the System, Vendor/Integrator will use only that Third Party Software that has been expressly approved in writing by Authority. Vendor/Integrator will procure, maintain, and otherwise be responsible for all licenses for Authority, in Authority's name, for any such Third Party Software reasonably necessary to operate or maintain the System. Authority retains sole, ultimate authority on executing and entering into any such licenses. Vendor/Integrator shall provide to Authority copies of such licenses, along with any related

software or license documentation. To the extent that any other licenses or permissions are reasonably desirable or necessary for Authority to operate or maintain the System, Vendor/Integrator hereby grants to Authority to the maximum extent within its rights—or will procure for Authority, in Authority's name, to the maximum extent reasonably negotiable—any such licenses and permissions.

21.4    Right to Sublicense

21.4.1    Authority may, in its sole discretion and without incurring any further or additional charge, sublicense any of its rights under this Agreement as reasonably necessary to operate or maintain the System, including without limitation: to third-party vendors, contractors, or consultants whom the Authority may retain to assist in operation or maintenance of the System; and to other transportation agencies as reasonably desirable or necessary to implement back-up systems or disaster planning.

21.4.2    Licenses Under Bankruptcy Code

All rights and licenses granted under or pursuant to this Agreement are and shall be deemed to be, for purposes of Section 365(n) of the U.S. Bankruptcy Code, licenses of rights to "intellectual property," as defined under Section 101 of the U.S. Bankruptcy Code. The parties agree that Authority, as a licensee of such rights under this Agreement, shall retain and may fully exercise all of its rights and elections under the U.S. Bankruptcy Code; however, nothing herein shall be deemed to constitute a present exercise of such rights and elections.

21.5    Escrow

Vendor/Integrator agrees that as a condition of final acceptance it will deposit the source code for any Vendor/Integrator Software into escrow (including all updates, versions, releases, and upgrades licensed under this Agreement or any related maintenance agreements between Vendor/Integrator and Authority), with a source code agent capable of providing Level 2 certification/verification. Deposit shall be at reasonable periodic intervals based generally on the pace at which the software is being developed or changed—and shall include any and all subsequent updates, versions, releases, and upgrades licensed under this Agreement or any related maintenance agreements between Vendor/Integrator and Authority. The source code escrow agreement shall remain in place, and source code deposits shall be updated and maintained, for as long as Authority and Vendor/Integrator have entered into a software maintenance or support agreement. The applicable source code will be released to Authority (or any Vendor/Integrator acting on its behalf) in the event of nonperformance or the inability of Vendor/Integrator to execute or maintain the portion of the System controlled by or through its applicable software. Vendor/Integrator agrees that Authority (or any Vendor/Integrator acting on its behalf) may use the source code to maintain, fix, or modify Vendor/Integrator Software as reasonably necessary to operate or maintain any portions of the System. Vendor/Integrator and Authority will separately execute an escrow agreement concurrently with this Agreement. Vendor/Integrator shall be solely responsible for any costs related to the escrow.

21.6    Precedence

In the event of conflict between this Section 21 and any separate software, technology, patent, copyright, or other intellectual-property or proprietary-rights license, escrow, or otherwise related agreement, this Section shall take precedence.

## 22.    CONFLICT OF INTEREST

22.1    General

Depending on the nature of the work performed, a Vendor/Integrator of the Authority is subject to the same conflict of interest prohibitions established by the Federal Transit Administration and California law that govern Authority employees and officials (Cal. Govt. Code Section 1090 et seq. and Cal. Govt. Code Section 87100 et seq.).  During the proposal process or the term of the Agreement, Vendor/Integrator and their employees may be required to disclose financial interests.

The Vendor/Integrator warrants and represents that it presently has no interest and agrees that it will not acquire any interest that would present a conflict of interest under California Government Code §1090 et seq. or §87100 et seq. during the performance of services under this Agreement.  The Vendor/Integrator further covenants that it will not knowingly employ any person having such an interest in the performance of this Agreement. Violation of this provision may result in this Agreement being deemed void and unenforceable.

Depending on the nature of the work performed, Vendor/Integrator may be required to publicly disclose financial interests under the Authority's Conflict of Interest Code. Upon receipt, the Vendor/Integrator agrees to promptly submit a Statement of Economic Interest on the form provided by Authority.

22.2    Organizational Conflicts of Interest

Vendor/Integrator shall take all reasonable measures to preclude the existence or development of an organizational conflict of interest in connection with work performed under this Agreement and other solicitations.  An organizational conflict of interest occurs when, due to other activities, relationships, or contracts, a firm or person is unable, or potentially unable, to render impartial assistance or advice to the Authority; a firm or person's objectivity in performing the contract work is or might be impaired; or a firm or person has an unfair competitive advantage in proposing for award of a contract as a result of information gained in performance of this or some other Agreement.

Vendor/Integrator shall not engage the services of any Subcontractor or independent contractor on any work related to this Agreement if the Subcontractor or independent contractor, or any employee of the Subcontractor or independent contractor, has an actual or apparent organizational conflict of interest related to work or services contemplated under this Agreement.

If at any time during the term of this Agreement Vendor/Integrator becomes aware of an organizational conflict of interest in connection with the work performed hereunder, Vendor/Integrator immediately shall provide the Authority with written notice of the facts and

circumstances giving rise to this organizational conflict of interest. Vendor/Integrator's written notice will also propose alternatives for addressing or eliminating the organizational conflict of interest. If at any time during the term of this Agreement, the Authority becomes aware of an organizational conflict of interest in connection with Vendor/Integrator's performance of the work hereunder, Authority shall similarly notify Vendor/Integrator. In the event a conflict is presented, whether disclosed by Vendor/Integrator or discovered by Authority, the Authority will consider the conflict presented and any alternatives proposed and meet with the Vendor/Integrator to determine an appropriate course of action. The Authority determination as to the manner in which to address the conflict shall be final.

During the term of this Agreement, Vendor/Integrator must maintain lists of its employees, and the Subcontractors and independent contractors used and their employees. Vendor/Integrator must provide this information to the Authority upon request. However, submittal of such lists does not relieve the Vendor/Integrator of its obligation to assure that no organizational conflicts of interest exist. Vendor/Integrator shall retain this record for five (5) years after the Authority makes final payment under this Agreement. Such lists may be published as part of future Authority solicitations.

Vendor/Integrator shall maintain written policies prohibiting organizational conflicts of interest and shall ensure that its employees are fully familiar with these policies. Vendor/Integrator shall monitor and enforce these policies and shall require any Subcontractors and affiliates to maintain, monitor and enforce policies prohibiting organizational conflicts of interest.

Failure to comply with this section may subject the Vendor/Integrator to damages incurred by the Authority in addressing organizational conflicts that arise out of work performed by Vendor/Integrator, or to termination of this Agreement for breach.

22.3   Notification of Employment of Southern California Regional Rail Authority Board Members/Alternates and Employees

To ensure compliance with Authority's Ethics Policy, Vendor/Integrator shall provide written notice to Authority disclosing the identity of any individual who Vendor/Integrator desires to employ or retain under a contract, and who (1) presently serves as a Board Member/Alternate or an employee of Authority, or (2) served as a Board Member/Alternate or an employee of Authority within the previous 12 months of the date of the proposed employment or retention by Vendor/Integrator. Vendor/Integrator's written notice shall indicate whether the individual will be an officer, principal or shareholder of the entity and/or will participate in the performance of this Agreement.

## 23.   CONFIDENTIALITY

23.1   Excluding such documents, information or materials as are made available to Vendor/Integrator by sources other than the Authority, any Authority documents, information, or materials to which the Vendor/Integrator has access, including any third-party information that the Authority is obligated to keep confidential, ("Authority Confidential Information") shall be held in confidence by the Vendor/Integrator who shall exercise all reasonable precautions to prevent the disclosure of Authority Confidential Information to anyone except the officers, employees, Subcontractors, and agents of the Vendor/Integrator as necessary to perform the Services. In

the event that Materials contain Authority Confidential Information, such Materials shall themselves be considered Authority Confidential Information, but only to the extent of the Authority Confidential Information contained therein.  Vendor/Integrator shall not release or disclose any Authority Confidential Information to any person, firm, corporation, or other entity, either by statement, deposition, or as a witness, except with prior written approval of Authority, or as otherwise ordered by a court having jurisdiction of the matter.

23.2    The Parties agree that certain information contained in, or being prepared for inclusion in, Materials may contain information that a reasonable person would conclude is or contains security-sensitive information and/or information that is intended exclusively for the internal use of the Authority, the disclosure of which could cause the Authority harm ("Security Sensitive Information").  At all times, Vendor/Integrator shall treat Security Sensitive Information with the same degree of care and confidentiality as it is obligated to treat Authority Confidential Information as set forth in Section 23.1.  If Vendor/Integrator is at any time in any doubt as to whether information is Security Sensitive Information, it shall consult with the Authority's Contract Manager prior to any disclosure of any information that might be Security Sensitive Information.   The Authority's Contract Manager shall, in the reasonable exercise of his discretion, determine whether information should be deemed Security Sensitive Information.  Without limiting the obligation of Vendor/Integrator to keep Security Sensitive Information confidential absent any affirmative action by Authority, at any time after Materials, in final or draft form, are submitted by Vendor/Integrator to Authority, the Authority may affirmatively designate any specific information contained in Materials as being Security Sensitive Information.  Nothing herein shall prevent Vendor/Integrator from using information, other than Authority Confidential Information or Security Sensitive Information, that is of general application to the development of Positive Train Control, in the pursuit of its business.

## 24.    ASSIGNMENT

This Agreement and any interest herein or claim hereunder may not be assigned by Vendor/Integrator either voluntarily or by operation of law nor may all or any part of this Agreement be subcontracted by Vendor/Integrator, without the prior written consent of Authority, which consent Authority may grant or withhold in the exercise of its sole discretion.  Consent by Authority shall not be deemed to relieve Vendor/Integrator of its obligations to comply fully with all terms and conditions of this Agreement.

## 25.    SUBCONTRACTING

The Vendor/Integrator shall give its personal attention to the fulfillment of the Agreement and shall keep the work under its control.  The Vendor/Integrator shall be held responsible for all subcontracted work.  Vendor/Integrator may not otherwise subcontract any part of the Services without Authority's prior written consent, which consent shall not be unreasonably withheld.  Vendor/Integrator must have a written subcontract agreement with every permitted Subcontractor that binds Subcontractor to, and allows Vendor/Integrator to fulfill, any and all aspects of this Agreement relevant to that Subcontractor's work.

Vendor/Integrator shall include in each subcontract agreement the stipulation that Vendor/Integrator, not Authority, is solely responsible for payment to the Subcontractor for the amounts owing and that the Subcontractor shall have no claim, and shall take no action against



Authority, Member Agencies or officers, directors, employees or sureties of either of them for nonpayment by Vendor/Integrator.

Any such subcontract shall also contain the stipulation that the Subcontractor agrees that the subcontract is subservient to this Agreement and that it will be bound to the applicable terms and conditions of this Agreement. Without limitation to the generality of the foregoing, the Subcontract will repeat and require Subcontractor to agree to terms and conditions echoing the following sections: Section 11, Indemnity; Section 14, Warranty; Section 20, Ownership of Work; Section 21, Intellectual Property; Section 26, Interaction with the Media, Public, and External Regulatory agencies; Section 28, Occupational Safety and Health; Section 30, Limitations on Covenants Not to Compete; and Section 35.24, Whistleblower Protection.

Any such subcontract agreement shall also include a provision that Subcontractor agrees to perform its work in accordance with the standards and obligations established by this Agreement. With respect to any work provided by a Subcontractor, Vendor/Integrator remains primarily liable to Authority for fulfillment of all obligations stated in this Agreement, including the obligations stated in the Section entitled, Indemnity, of this Agreement. Nothing contained herein nor any course of conduct shall be construed to create any contractual relationship between Authority and any Subcontractor. Upon request, Vendor/Integrator shall provide to Authority an executed copy of each subcontract agreement, including any amendments thereto.

Following is a list of approved Subcontractors:

Wabtec Corporation
ARINC Incorporated
Pacific Railway Engineering (PRE)
Convergent Communications Inc. (CCI)
Mass Electric Construction Co. (MEC)
Railway Safety Consultants (RSC)
Mycom International
Westower Communications Inc.
Allpro Consulting Group
Calamp
Tech Prose
Meteorcomm
RSE
Parsons Commercial Technologies Inc.

26.   VENDOR/INTEGRATOR'S INTERACTION WITH THE MEDIA, THE PUBLIC AND EXTERNAL REGULATORY AGENCIES

The Vendor/Integrator, its employees, Subcontractors, and agents shall not refer to the Authority, or use any logos, images, or photographs of the Authority for any commercial purpose, including, but not limited to, advertising, promotion, or public relations, without the Authority's prior written consent. Such written consent shall not be required for the inclusion of the Authority's name on a customer list. Vendor/Integrator shall ensure that all published information is factual and that it does not in any way imply that Authority endorses Vendor/Integrator's firm, service, or product.

26.1   Vendor/Integrator shall cooperate with regulatory agencies including but not limited to the FTA, FRA, the CPUC and other external regulatory agencies to Authority and shall refer all inquiries from regulatory agencies when and where possible, to Authority for handling.

26.2   Vendor/Integrator shall refer all inquiries from any news media organization to Authority, and shall comply with the procedures of Authority's Public Affairs staff regarding statements to the media relating to this Agreement or the work.

26.3   If Vendor/Integrator receives a complaint from any citizen or purported community representative, Vendor/Integrator shall inform the Authority as soon as possible and inform Authority of any action Vendor/Integrator has taken with respect to such complaint.

26.4   The provisions of this Section shall survive the termination or expiration of this Agreement.

## 27.   COMPLIANCE WITH LAW

Vendor/Integrator shall familiarize itself with and perform the work required under this Agreement in conformity with the current and any successor requirements and standards of Authority, municipal and public agencies, public and private utilities, special districts, and railroad agencies whose facilities and services may be affected by the work under this Agreement.   Vendor/Integrator shall also comply with all applicable current and successor federal, California and local laws and ordinances.

## 28.   OCCUPATIONAL SAFETY AND HEALTH

It is a covenant and condition of this Contract, and shall be made a covenant and condition of each subcontract entered into pursuant to this Contract, that the Vendor/Integrator and any Subcontractor shall not require any laborer or mechanic employed in performance of the Contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his or her health as defined by applicable safety and health standards.

All Vendor/Integrator and Subcontractor personnel working on Authority property shall also be required, as a contractual condition, to comply with Authority rules and procedures and any safety directive which may be in effect for that location as deemed necessary by the Authority.   The Vendor/Integrator shall be responsible for the knowledge and behavior of the Vendor/Integrator and Subcontractor personnel in this regard.

## 29.   COMPLIANCE WITH LOBBYING POLICIES

29.1   Vendor/Integrator agrees that if it is a Lobbyist Employer or if it has retained a Lobbying Firm or Lobbyist, as such terms are defined by Authority in its Ethics Policy, it shall comply or ensure that its Lobbying Firm, Lobbyist or both of them, as the case may be, complies with Authority's Ethics Policy.

29.2   If Vendor/Integrator as Lobbyist Employer or its Lobbying Firm or Lobbyist fails to comply, in whole or in part, with Authority's Ethics Policy, such failure shall be considered a

material breach of this Agreement and Authority shall have the right to immediately terminate or suspend this Agreement.

## 30. LIMITATIONS ON COVENANTS NOT TO COMPETE

In the event that Vendor/Integrator, or its Subcontractors, are at any point unable or unwilling to provide services to Authority as necessary to design, install, implement, operate, or maintain the System, Authority shall have the right to hire Vendor/Integrator's personnel, its Subcontractors or Subcontractors' personnel for any reason related to the design, installation, implementation, maintenance, and operation of the System. Vendor/Integrator and its Subcontractors shall release its employees from any non-compete clause that may exist in any employment agreement that would otherwise prevent Authority from hiring personnel as set forth in the preceding sentence. Any such non-compete clause shall be void and unenforceable as regarding Authority's ability to hire any of Vendor/Integrator's or its Subcontractor's employees. Vendor/Integrator shall include this provision in all of its subcontracts. Any violation by Vendor/Integrator of the requirements of this section shall be considered a material breach of this Agreement and shall entitle Authority to (1) take any and all measures and (2) seek any and all remedies provided by this Agreement and as authorized by law and equity.

In the event that any of the release conditions set forth in any source code escrow agreement between the parties are satisfied and the source code is released to the Authority, the Authority shall have the right to hire Vendor/Integrator's personnel, its Subcontractors or Subcontractors' personnel for any reason related to the maintenance and operation of the System. The Vendor/Integrator and its Subcontractors shall not interfere with any such efforts to hire any of Vendor/Integrator's or Subcontractors' personnel. Vendor/Integrator agreements with personnel and/or Subcontractors that restrict employment by the Authority shall be waived under such circumstances. Vendor/Integrator shall include this provision in all of its subcontracts.

## 31. TRACK AND SITEWORK COORDINATION AND ACCESS

Vendor/Integrator shall coordinate, under Authority's direction, and at all times fully cooperate with any other entity or individual performing work on Authority property, including, but not limited to, maintenance of tracks, signals, or structures, or construction of track, signals, structures, stations, or other facilities by any of the Authority's contractors or other third party contractors authorized to work on Authority's property. Vendor/Integrator shall provide access to all facilities including signal and communication shelters and bungalows and other related facilities when directed by the Contract Manager. Vendor/Integrator shall not seek reimbursement from Authority for any costs incurred by Vendor/Integrator to meet the requirements of this section.

Authority shall provide the Vendor/Integrator the necessary access to its property, locomotives, and passenger cars, equipment and machinery necessary for and to be used in provision of the Services. Authority hereby grants the Vendor/Integrator the right to enter upon and utilize the foregoing for the purpose of performance of the Vendor/Integrator's obligations under this Contract.

If the Authority exercises the NCTD Option, as a condition to the obligation of Vendor/Integrator to provide the Services and System required for NCTD, Authority shall obtain

for Vendor/Integrator any required right-of-entry permits to enter upon NCTD's right of way on the same terms and conditions as Vendor/Integrator is granted access to Authority's right of way under this Agreement.

## 32.   HAZARDOUS AND NON-HAZARDOUS CHEMICALS AND WASTES

32.1    The Vendor/Integrator shall bear full and exclusive responsibility for any release of hazardous or non-hazardous chemicals or substances that it brings onto Authority property during the course of performance of this Contract and for any release of hazardous or non-hazardous chemicals or substances caused by Vendor/Integrator's negligence or willful misconduct, regardless of whether the Vendor/Integrator has brought the hazardous materials onto Authority property.  .  The Vendor/Integrator shall immediately report any such release to the Authority.  The Vendor/Integrator shall be solely responsible for all claims and expenses associated with the response to, removal and remediation of the above described release, including, without limit, payment of any fines or penalties levied against Authority by any agency as a result of such release and shall hold harmless, indemnify and defend Authority from any claims arising from such release.  For purposes of this Section only, the term "claims" shall include (i) all notices, orders, directives, administrative or judicial proceedings, fines, penalties, fees or charges imposed by any governmental agency with jurisdiction, and (ii) any claim, cause of action, or administrative or judicial proceeding brought against Authority, its directors, or employees, or for any loss, cost (including reasonable attorney's fees), damage or liability, sustained or suffered by any person or entity, including Authority. This indemnification shall survive the termination of the Contract.

32.2    If the performance of the work outlined by these contract specifications creates any hazardous wastes, those wastes shall be properly disposed of according to federal, state, and local laws, at the expense of Vendor/Integrator.  The Vendor/Integrator shall dispose of the wastes under its own EPA Generator Number.  In no event shall Authority be identified as the generator.  The Vendor/Integrator shall notify the Authority of any such hazardous wastes and Authority reserves the right to a copy of the results of any tests conducted on the wastes and, at its cost, to perform additional tests or examine those wastes, prior to their disposition.

## 33.   POLICIES, PRACTICES, AND PROCEDURES OF AUTHORITY

The Vendor/Integrator when present at Authority's facilities shall observe and obey (and compel its Officers, employees, guests, and those doing business with it, to observe and obey) all Policies, Practices, and Procedures of Authority.

In particular, Vendor/Integrator must comply with Authority procedures concerning network connectivity, safety, and security, including specific IT policies IT-01 Backup, and IT-03 Security.  Vendor/Integrator shall not connect to the Authority's network, nor connect any computer, switch, hub, jumper cable, printer, monitoring device, port sniffer, packet analyzer, or other device to the Authority's network, without the permission of the Authority.  All network activity must be coordinated with the Authority's IT staff.  Any member of the Vendor/Integrator team who requires access to the Authority network must have a valid Authority IT network account established with the Authority's IT division.  The Vendor/Integrator shall be solely responsible for any damage or interruption it causes to the Authority's network and performance standards.

**34.    ADDITIONAL REQUIREMENTS CONCERNING SPECIFIED FIELD INSTALLATION WORK**

The Parties acknowledge that all Subcontractors shall be treated fairly. The Parties agree that while this is a contract for the procurement of specialized rail transit equipment pursuant to section 130238 of the Public Utilities Code, all applicable State and federal prevailing wage requirements shall apply to work performed under this contract. In particular, certain provisions of the California Labor Code may be applicable to those portions of the work pertaining to installation work included under Line 3.2 and 4.2 of Exhibit B. In addition, the parties agree as a matter of contract that additional provisions of the Labor Code and the California Public Contract Code shall also apply to such work. In addition, certain federal requirements also shall apply to this portion of work as indicated below in Sections 34.14, 34.15 and 34.16. References to specific statutory sections below are included for convenience and clarity. Their inclusion does not indicate that a failure to so comply is necessarily a violation of law, although any such failure is a breach of this Agreement. The following shall therefore apply to the above referenced installation work:

34.1    Prohibition Against Contracting with Debarred Subcontractors

Vendor/Integrators are prohibited from performing work with a Subcontractor who is ineligible to perform work on the project pursuant to Section 1777.1 or 1777.7 of the Labor Code.

34.2    Use Of Subcontractors

Vendor/Integrator shall not subcontract any work without the prior written approval of the Authority, such approval not to be unreasonably withheld. Vendor/Integrator shall be solely responsible for reimbursing any Subcontractors and the Authority shall have no obligation to them. Attention is directed to the requirements of Section 4100 to 4113, inclusive of the California Public Contract Code which may be applicable to the work covered by this section of the Contract.

34.3    Assignment of Claims

The Vendor/Integrator and any Subcontractor offers and agrees to assign to the Authority all rights, title, and interest in and to all causes of action it may have under Section 4 of the Clayton Act (15 U.S.C. Sec. 15) or under the Cartwright Act (Chapter 2 (commencing with Section 16700) of Part 2 of Division 7 of the Business and Professions Code), arising from purchases of goods, services, or materials. This assignment shall be made and become effective at the time the awarding body tenders final payment to the Vendor/Integrator, without further acknowledgement by the parties.

34.4    Third-Party Claims

34.4.1    In accordance with to Public Contracts Code Section 9201, the Authority shall have full authority to compromise or otherwise settle any claim relating to the Contract at any time.

34.4.2    The Authority shall provide for timely notification to the Vendor/Integrator of the receipt of any third-party claim, relating to the contract. Notice shall be in writing and will be provided within thirty (30) days.

34.4.3    The Authority shall be entitled to recover its reasonable costs incurred in providing the notification required by subdivision 34.4.2.

34.5    Claims Procedures

Claims up to $375,000 are subject to the provisions of Public Contract Code Sections 20104-20104.6.  For claims of fifty thousand dollars ($50,000) or less, Authority shall respond in writing to any written claim within forty-five (45) days of receipt of the claim, or may request, in writing, within thirty (30) days of receipt of the claim, any additional documentation supporting the claim or relating to defenses or claims Authority may have against the Vendor/Integrator.  For claims of over fifty thousand dollars ($50,000) and less than or equal to three hundred seventy-five thousand dollars ($375,000), Authority shall respond in writing to all written claims within sixty (60) days of receipt of the claim, or may request, in writing, within thirty (30) days of receipt of the claim, any additional documentation supporting the claim or relating to defenses or claims Authority may have against the Vendor/Integrator.

If the Vendor/Integrator disputes Authority's response, or if Authority fails to respond within the time prescribed, the Vendor/Integrator may demand an informal conference to meet and confer for settlement of the issues in dispute within 15 days of Authority's response or failure to respond.  In the event that the meet and confer conference is unsuccessful, Vendor/Integrator must file a government claim pursuant to Government Code section 910 et seq. in order to initiate a civil action.

For claims over $375,000, Authority shall respond in writing within 90 days of receipt of the claim, or request additional documentation supporting the claim within 45 days of receipt of the claim. If additional documentation is requested, Authority will respond in writing to the claim within 30 days of the additional documentation, or within a period of time no greater than that taken by the claimant in providing the additional information, whichever is greater.  If the Vendor/Integrator disputes Authority's response, or if Authority fails to respond within the time prescribed, the Vendor/Integrator may demand an informal conference to meet and confer for settlement of the issues in dispute within 15 days of Authority's response or failure to respond.  In the event that the meet and confer conference is unsuccessful, Vendor/Integrator must file a government claim pursuant to Government Code section 910 et seq. in order to initiate a civil action.

34.6    Utility Relocation

In accordance with to California Government Code Section 4215, if during the course of the work the Vendor/Integrator encounters utility installations which are not shown or indicated in the contract plans or in the specifications or which are found in a location substantially different from that shown, and such utilities are not reasonably apparent from visual examination of the work site, then it shall promptly notify the Authority in writing. Where necessary for the work of the Contract, the Authority will amend the contract to adjust the scope of work and the compensation to allow the Vendor/Integrator to make such adjustment, rearrangement, repair, removal, alteration, or special handling of such utility, including repair of

the damaged utility.   If the Vendor/Integrator fails to give the notice specified above and thereafter acts without instructions from the Authority, then it shall be liable for any or all damage to such utilities or other work of the Contract which arises from its operations subsequent to the discovery, and it shall repair and make good such damage at its own cost.

34.7   Excavation

In accordance with state law (Public Contract Code Section 7104), with respect to any work involving digging trenches or excavations that extend deeper than four feet, the Vendor/Integrator shall notify the Authority promptly in writing of any of the following conditions: (a) material that the Vendor/Integrator believes may be hazardous waste, as defined in California Health and Safety Code Section 25117, that is required to be removed to a Class I, Class II or Class III disposal site in accordance with provisions of existing law; (b) subsurface or latent physical conditions at the site differing from those indicated; (c) unknown physical conditions at the site of any unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the Contract Documents.   Vendor/Integrator shall notify the Authority of such conditions prior to disturbing them, and shall await direction from the Authority as to how to proceed.   The parties agree that discovery of hazardous materials or differing conditions as set forth in this paragraph may require an equitable adjustment to the contract schedule and/or price.

34.8   Trench Safety

Excavation for any trench 5 feet or more in depth shall not begin until the Vendor/Integrator has received approval from the Authority, of the Vendor/Integrator's detailed plan for worker protection from the hazards of caving ground during the excavation of such trench.   Such plan shall be submitted at least 5 days before the Vendor/Integrator intends to begin excavation for the trench and shall show the details of the design of shoring, bracing, sloping or other provisions to be made for worker protection during such excavation.   No such plan shall allow the use of shoring, sloping or a protective system less effective than that required by the Construction Safety Orders of the Division of Industrial Safety; and if such plan varies from the shoring system standards established by the Construction Safety Orders, the plan shall be prepared and signed by an engineer who is registered as a Civil or Structural Engineer in the State of California.   Attention is directed to the provisions of Section 6705 of the Labor Code concerning trench excavation safety plans.

34.9   Vendor/Integrator's License Requirements

Vendor/Integrator and any approved Subcontractor shall hold such current and valid Contractor's Licenses as required by California Law.

34.10   Labor Code Requirements

In the performance of the work subject to this provision, Vendor/Integrator's attention is directed to the following requirements of the Labor Code which shall apply:

34.10.1   Hours of Labor.   Eight hours labor constitutes a legal day's work. Vendor/Integrator shall forfeit, as penalty to the Authority, $25 for each worker employed in the performance of the Contract by Vendor/Integrator or by any Subcontractor under it for each

calendar day during which such worker is required or permitted to work more than eight hours in any one day and 40 hours in any one calendar week in violation of the provisions of the California Labor Code and in particular, Sections 1810 to 1815, inclusive.  Work performed by employees of the Vendor/Integrator in excess of eight hours per day and 40 hours during any one week shall be permitted upon compensation for all hours worked in excess of eight hours per day at not less than one-and-one-half times the basic rate of pay, as provided in Section 1815.

       34.10.2    Prevailing Wages.  Vendor/Integrator shall comply with California Labor Code Sections 1770 to 1780, inclusive.  In accordance with Section 1775, the Vendor/Integrator shall forfeit as a penalty to the Authority an amount as determined by the Labor Commissioner not to exceed $50 for each calendar day or portion thereof for each worker paid less than stipulated prevailing wage rates for such work or craft in which such worker is employed for any work done under the contract by him or by any Subcontractor under it in violation of the revisions of the Labor Code and in particular, Labor Code Sections 1770 to 1780, inclusive.  In addition to said penalty and pursuant to Section 1775, the difference between such stipulated prevailing wage rates and the amount paid to each worker for each calendar day or portion thereof for which each worker was paid less than the stipulated prevailing wage rate shall be paid to each worker by Vendor/Integrator.  Pursuant to the provisions of Section 1773 of the Labor Code, the Authority has obtained the general prevailing rate of per diem wages and the general prevailing rate for holiday and overtime work applicable to the work to be done from the Director of the Department of Industrial Relations.  However, if any work is Federally assisted, Vendor/Integrator must also comply with Federal labor standards, including the requirements of the Davis-Bacon Act, as listed in Section 34.12.  In addition, the Vendor/Integrator must ascertain with the U.S. Department of Labor the prevailing hourly rate.  However, if Federal and State wage rates both are applicable, then the higher of the two will prevail.

       34.10.3    Payroll Records.  The Vendor/Integrator's attention is directed to the following provisions of Labor Code Section 1776.  The Vendor/Integrator shall be responsible for the compliance with these provisions by his Subcontractors

       34.10.4    Each Vendor/Integrator and Subcontractors shall keep an accurate payroll record, showing the name, address, social security number, work classification, straight time and overtime hours worked each day and week, and the actual per diem wages paid to each journeyman, apprentice, worker, or other employee employed by him or her in connection with the public work.

       34.10.5    The payroll records enumerated under subdivision (a) shall be certified and shall be available for inspection at all reasonable hours at the principal office of the Vendor/Integrator on the following basis:

       (1) A certified copy of an employee's payroll record shall be made available for inspection or furnished to such employee or his or her authorized representative on request.

       (2) A certified copy of all payroll records enumerated in subdivision (a) shall be made available for inspection or furnished upon request to the Authority, the



Division of Labor Standards Enforcement and the Division of Apprenticeship Standards of the Department of Industrial Relations.

(3) A certified copy of all payroll records enumerated in subdivision (a) shall be made available upon request to the public for inspection or copies thereof made; provided, however, that a request by the public shall be made through the Authority, the Division of Apprenticeship Standards or the Division of Labor Standards Enforcement. If the requested payroll records have not been provided pursuant to paragraph (2), the requesting party shall, prior to being provided the records, reimburse the costs of preparation by the Vendor/Integrator, Subcontractor and the entity through which the request was made. The public shall not be given access to such records at the principal office of the Vendor/Integrator.

34.10.6    The certified payroll records shall be on forms provided by the Division of Labor Standards Enforcement or shall contain the same information as the forms provided by the Division.

34.10.7    The Vendor/Integrator shall file a certified copy of the records enumerated in subdivision (a) with the entity that requested such records within ten (10) days after receipt of a written request.

34.10.8    Any copy of records made available for inspection as copies and furnished upon request to the public or the Authority, the Division of Apprenticeship Standards or the Division of Labor Standards Enforcement shall be marked or obliterated in such a manner as to prevent disclosure of an individual's name, address and social security number. The name and address of the Vendor/Integrator shall not be marked or obliterated.

34.10.9    The Vendor/Integrator shall inform the Authority of the location of records enumerated under subdivision (a), including the street address, city and county, and shall, within five working days, provide a notice of a change of location and address.

34.10.10    In the event of noncompliance with the requirements of this Section, the Vendor/Integrator shall have ten (10) days in which to comply subsequent to receipt of written notice specifying in what respects such Vendor/Integrator must comply with this Section. Should noncompliance still be evident after such 10-day period, the Vendor/Integrator shall, as a penalty the State or the Authority, forfeit Twenty-five Dollars ($25) for each calendar day, or portion thereof, for each worker, until strict compliance is effectuated. Upon the request of the Division of Apprenticeship Standards or the Division of Labor Standards Enforcement, such penalties shall be withheld from progress payments then due. The penalties specified in subdivision (g) of Labor Code Section 1776 for noncompliance with the provisions of said Section 1776 may be deducted from any monies due or which may become due to the Vendor/Integrator.

34.10.11    The Vendor/Integrator and each Subcontractor shall preserve their payroll records for a period of three (3) years from the date of completion of the Contract.

34.10.12    Labor Non-discrimination.   Attention is directed to Section 1735 of the Labor Code which provides that Vendor/Integrator shall not discriminate against any employee or applicant for employment because of race or color, religion, physical or mental disability, national origin or ancestry, medical condition, marital status or sex of such persons, except as

provided in Section 12940 of the Government Code. Vendor/Integrator further agrees to include a similar provision in all subcontracts, except subcontracts for standard commercial supplies or raw materials.

34.10.13   Apprentices.   The Vendor/Integrator and all Subcontractors shall comply with the requirements of California Labor Code sections 1777.5, 1777.6 and 1777.7 regarding the employment and of apprentices.

34.11   Payment of Workers Compensation

Vendor/Integrator shall sign and file with the Authority the following certification prior to performing the work of the contract:

"I am aware of the provisions of Section 3700 of the Labor Code which requires every employer to be insured against liability for workers' compensation or to undertake self-insurance in accordance with the provisions of that code, and I will comply with such provisions before commencing the performance of the work of this Contract."

34.12   Davis-Bacon and Copeland Anti-Kickback Acts

34.12.1   Minimum wages

34.12.1.1  All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949 in the construction or development of the project), will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Vendor/Integrator and such laborers and mechanics.

Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (1)(iv) of this section; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR Part 5.5(a)(4).  Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: Provided that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classifications and wage rates conformed under paragraph (1)(ii) of this section) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Vendor/Integrator and its Subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

34.12.1.2 (A)    The contracting officer shall require that any class of laborers or mechanics, including helpers, which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The contracting officer shall approve an additional classification and wage rate and fringe benefits therefore only when the following criteria have been met:

(1)    Except with respect to helpers as defined as 29 CFR 5.2(n)(4), the work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2)    The classification is utilized in the area by the construction industry; and

(3)    The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination; and

(4)    With respect to helpers as defined in 29 CFR 5.2(n) (4), such a classification prevails in the area in which the work is performed.

(B)    If the Vendor/Integrator and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the contracting officer agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by the contracting officer to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210. The Administrator, or an authorized representative, will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(C)    In the event the Vendor/Integrator, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the contracting officer shall refer the questions, including the views of all interested parties and the recommendation of the contracting officer, to the Administrator for determination. The Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(D)    The wage rate (including fringe benefits where appropriate) determined pursuant to paragraphs (a)(1)(ii) (B) or (C) of this section, shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

34.12.1.3 Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the Vendor/Integrator shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

Exhibit A
84

34.12.1.4 If the Vendor/Integrator does not make payments to a trustee or other third person, the Vendor/Integrator may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, provided, that the Secretary of Labor has found, upon the written request of the Vendor/Integrator, that the applicable standards·of the Davis-Bacon Act have been met. The Secretary of Labor may require the Vendor/Integrator to set aside in a separate account assets for the meeting of obligations under the plan or program.

34.12.1.5 (A)      The contracting officer shall require that any class of laborers or mechanics which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The contracting officer shall approve an additional classification and wage rate and fringe benefits therefor only when the following criteria have been met:

(1)      The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2)      The classification is utilized in the area by the construction industry; and

(3)      The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(B)    If the Vendor/Integrator and the laborers and mechanics·to·be employed in the·classification (if known), or their representatives, and the contracting·officer agree·on the classification·and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action·taken shall be sent·by the contracting officer to the Administrator of the Wage and Hour Division, Employment Standards Administration, Washington, DC 20210. The Administrator, or an authorized representative, will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(C)      In the event the Vendor/Integrator, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the contracting officer shall refer the questions, including the views of all interested parties and the recommendation of the contracting officer, to the Administrator for determination. The Administrator, or an authorized representative, will issue a determination with 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(D)      The wage rate (including fringe benefits where appropriate) determined pursuant to paragraphs (a)(1)(v) (B) or (C) of this section, shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

Contract No. H1636-10                          40                          Authorized by Board 10/1/10
                                                                                          2684174.6

### 34.12.2   Withholding

The Authority shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Vendor/Integrator under this contract or any other Federal contract with the same prime Vendor/Integrator, or any other federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime Vendor/Integrator, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the Vendor/Integrator or any Subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the project), all or part of the wages required by the contract, the Authority may, after written notice to the Vendor/Integrator, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

### 34.12.3   Payrolls and Basic Records

34.12.3.1 Payrolls and basic records relating thereto shall be maintained by the Vendor/Integrator during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-Bacon Act, the Vendor/Integrator shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

34.12.3.2 (A)      The Vendor/Integrator shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the Authority for transmission to the Federal Transit Administration. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under section 5.5(a)(3)(i) of Regulations, 29 CFR part 5. This information may be submitted in any form desired. Optional Form WH-347 is available for this purpose and may be purchased from the Superintendent of Documents (Federal Stock Number 029-005-00014-1), U.S. Government Printing Office, Washington, DC 20402. The prime Vendor/Integrator is responsible for the submission of copies of payrolls by all Subcontractors.

(B)     Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Vendor/Integrator or Subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify the following:

(1)     That the payroll for the payroll period contains the information required to be maintained under section 5.5(a)(3)(i) of Regulations, 29 CFR part 5 and that such information is correct and complete;

(2)     That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in Regulations, 29 CFR part 3;

(3)     That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(C)     The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by paragraph (a)(3)(ii)(B) of this section.

(D)     The falsification of any of the above certifications may subject the Vendor/Integrator or Subcontractor to civil or criminal prosecution under section 1001 of title 18 and section 231 of title 31 of the United States Code.

34.12.3.3 The Vendor/Integrator or Subcontractor shall make the records required under paragraph (a)(3)(i) of this section available for inspection, copying, or transcription by authorized representatives of the Federal Transit Administration or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the Vendor/Integrator or Subcontractor fails to submit the required records or to make them available, the Federal agency may, after written notice to the Vendor/Integrator, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

34.12.4     Apprentices and Trainees

34.12.4.1 Apprentices - Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training, or with a State Apprenticeship Agency recognized by the Bureau, or if a person is employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been

certified by the Bureau of Apprenticeship and Training or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Vendor/Integrator as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a Vendor/Integrator is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Vendor/Integrator's or Subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator of the Wage and Hour Division of the U.S. Department of Labor determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Bureau of Apprenticeship and Training, or a State Apprenticeship Agency recognized by the Bureau, withdraws approval of an apprenticeship program, the Vendor/Integrator will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

34.12.4.2 Trainees - Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Vendor/Integrator will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

34.12.4.3 Equal employment opportunity - The utilization of apprentices, trainees and journeymen under this part shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR part 30.

34.12.5   Compliance with Copeland Act Requirements

The Vendor/Integrator shall comply with the requirements of 29 CFR part 3, which are incorporated by reference in this contract.

34.12.6   Subcontracts

The Vendor/Integrator or Subcontractor shall insert in any subcontracts the clauses contained in 29 CFR 5.5(a)(1) through (10) and such other clauses as the Federal Transit Administration may by appropriate instructions require, and also a clause requiring the Subcontractors to include these clauses in any lower tier subcontracts. The prime Vendor/Integrator shall be responsible for the compliance by any Subcontractor or lower tier Subcontractor with all the contract clauses in 29 CFR 5.5.

34.12.7   Contract Termination: Debarment

A breach of the contract clauses in 29 CFR 5.5 may be grounds for termination of the contract, and for debarment as a Vendor/Integrator and a Subcontractor as provided in 29 CFR 5.12.

34.12.8   Compliance with Davis-Bacon and Related Act Requirements

All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR parts 1, 3, and 5 are herein incorporated by reference in this contract.

34.12.9   Disputes Concerning Labor Standards

Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Vendor/Integrator (or any of its Subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

34.12.10   Certification of Eligibility

34.12.10.1 By entering into this contract, the Vendor/Integrator certifies that neither it (nor he or she) nor any person or firm who has an interest in the Vendor/Integrator's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

34.12.10.2 No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

34.12.10.3 The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

34.13   Contract Work Hours and Safety Standards Act

Vendor/Integrator agrees to comply with Sections 102 and 107 of the Contract Work Hours and Safety Standards Act, as amended (40 U.S.C. §§327-333) and implementing U.S. DOL regulations at 29 CFR Part 5 and 29 CFR Part 1926.

34.13.1   Overtime Requirements.   Neither Vendor/Integrator nor any Subcontractor contracting for any part of the Services which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any work week in which he or she is employed on such Services to work in excess of 40 hours in such work week unless such laborer, mechanic, watchman or guard receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of 40 hours in such work week.

34.13.2   Violation; Liability for Unpaid Wages; Statutory Penalties.   In the event of any violation of this Section 40.24, Vendor/Integrator and any Subcontractor responsible for any such violation shall be liable for any unpaid wages.  In addition, Vendor/Integrator and such Subcontractor shall be liable to the United Stated for statutory penalties.   Such statutory penalties shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of this Section 40.24, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard work week of forty (40) hours without payment of the overtime wages required by this Section 40.24.

34.13.3   Withholding for Unpaid Wages on Statutory Penalties.   Authority shall upon its own action or upon written request of an Authorized Representative of the Department of Labor withhold or cause to be withheld, from any monies payable on account of Services performed by Vendor/Integrator or any Subcontractor under any such contract or any other federal contract with the same prime Vendor/Integrator, or any other federally-assisted Vendor/Integrator subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime Vendor/Integrator, such sums as may be determined to be necessary to satisfy any liabilities of such Vendor/Integrator or Subcontractor for unpaid wages and statutory penalties as provided in Section 40.24.2 above.

34.13.4   Safety.   No laborer or mechanic shall be required to work in surroundings or under working conditions that are unsanitary, hazardous or dangerous to his or her health or safety.

34.13.5   Subcontracts.   Vendor/Integrator shall insert in any subcontracts the clauses set forth in Sections 1 through 4 of this Section 40.24 in addition to a clause requiring all Subcontractors to include these clauses in any contracts with lower tier subcontractors. Vendor/Integrator shall be responsible for compliance by any Subcontractor or lower tier Subcontractor with the clauses set forth in this Section 40.24.

Exhibit A
90

34.14  Seismic Safety

Vendor/Integrator shall comply with all applicable regulations of U.S. DOT relating to seismic safety at 49 CFR Part 41 and any implementing guidance FTA may issue.

**35.    FEDERAL REQUIREMENTS**

35.1    Applicability of Federal Grant Agreement

This Agreement may be subject to one or more financial assistance agreements between Authority and the U.S. Department of Transportation, which incorporate FTA Master Agreement and Circular 4220.1F, current as of the effective date of any such financial assistance agreement. Vendor/Integrator and its Subcontractors shall comply with all federal laws and regulations identified in FTA Circular 4220.1F or any subsequent version of FTA Circular 4220.1F, and/or the most current version of the FTA Master Agreement. These documents can be found at "http://www.fta.dot.gov/". Vendor/Integrator shall not perform any act, fail to perform any act, or refuse to comply with any Authority requests that would cause the Vendor/Integrator and/or the Authority to be in violation of any such federal laws or regulations and/or any of the terms and conditions of the FTA Master Agreement. Any such federal law or regulation, or term and condition of the FTA Master Agreement, shall be deemed to control in the event of a conflict with any other provision of this Agreement. Vendor/Integrator shall require lower tier Subcontractors to comply with any federal laws and regulations necessary to assure the Vendor/Integrator's and/or the Authority's full compliance with any of the federal laws or regulations identified in FTA Circular 4220.1F and/or any of the terms and conditions of the FTA Master Agreement. Federal laws, regulations, policies and administrative practices may be modified or codified after the Effective Date of this Agreement and may apply to this Agreement. To assure compliance with changing Federal requirements, acceptance of this Agreement indicates that Vendor/Integrator agrees to accept all changed requirements that apply to this Agreement.

35.2    Incorporation of Federal Transit Administration Terms

All contractual provisions required by DOT, as set forth in FTA Circular 4220.1F, the Master Grant Agreement, are hereby incorporated by reference. Anything to the contrary herein notwithstanding, all FTA-mandated terms shall be deemed to control in the event of a conflict with any other provision in this Agreement. Vendor/Integrator shall not perform any act, fail to perform any act, or refuse to comply with any Authority request that would cause Authority to be in violation of the FTA terms and conditions.

35.3    Federal Funding Limitation

Vendor/Integrator understands that a portion of the funds to pay for Vendor/Integrator's performance for work under this Agreement are anticipated to be made available from the United States Department of Transportation through FTA. All funds must be approved and administered by FTA. A portion of Authority's obligation hereunder may be payable from funds that are appropriated and allocated by FTA for the performance of this Agreement. If funds are not allocated, or ultimately are disapproved by FTA, Authority may terminate or suspend Vendor/Integrator's Services without penalty. Authority shall notify Vendor/Integrator promptly in writing of any non-allocation, delay, or disapproval of funding.

35.4    Audit and Inspection of Records

35.4.1    Vendor/Integrator shall maintain a complete set of records relating to this Agreement in accordance with generally accepted accounting procedures. Vendor/Integrator shall permit the Authorized Representatives of Authority, the U.S. Department of Transportation, and the Comptroller General of the United States to inspect and audit all work, materials, payrolls, books, accounts, and other data and records of Vendor/Integrator and all of its Subcontractors, relating to Vendor/Integrator's and any Subcontractors' performance under this Agreement until the expiration of three (3) years after final payment under this Agreement. Such periods of access and examination will continue until all disputes, claims, litigation, appeals and exceptions have been resolved. Authority shall have the right to reproduce any of Vendor/Integrator's or any Subcontractor's books, records or accounts. All such books, records, accounts and documents shall be maintained and be accessible to Authority for three (3) years after completion or termination of this Agreement for any reason; provided, however, that in the event of litigation or settlement of claims arising from the performance of this Agreement, Vendor/Integrator agrees to maintain all records until Authority, the FTA Administrator, the Comptroller General, or any of their duly authorized representatives, have disposed of such litigation, appeals, claims or exceptions related thereto. For purposes of audit, the date of completion of this Agreement shall be the date of Authority's payment for Vendor/Integrator's final billing, as so noted on Vendor/Integrator's invoice, pursuant to this Agreement.

35.4.2    Vendor/Integrator further agrees to include in all of its subcontracts under this Agreement a provision to the effect that the Subcontractor agrees that Authority, the U.S. Department of Transportation, and the Comptroller General of the United States, or any of their duly Authorized Representatives shall, until the expiration of three (3) years after final payment under such subcontract, have access to and the right to examine any directly pertinent books, documents, papers, and other records of the Subcontractor. The term "subcontract" as used in this Section 40.4 excludes (1) purchase orders not exceeding $10,000.00 and (2) subcontracts or purchase orders for public utility services at rates established for uniform applicability to the general public.

35.4.3    The periods of access and examination described above for records that relate to (1) disputes between Authority and Vendor/Integrator; (2) litigation or settlement of claims arising out of the performance of this Agreement; or (3) any payment by Authority shall be subject to a reasonable audit, in accordance with Generally Accepted Accounting Practices, and evaluation of operations, performance, and costs. The scope of such audit and evaluation may be either financial or operational, or both, and may include, in addition to costs and wages reimbursed by Authority, Vendor/Integrator's controls, practices, and procedures and their effect upon the efficiency and quality of performance provided by Vendor/Integrator. Upon completion of the audit, any adjustments required to make any reconciliation required shall be paid or credited, as the case may be, in accordance with the payment provisions of this Agreement.

35.4.4    Costs and expenses of this Agreement as to which exception has been taken by the Comptroller General or any of his or her duly Authorized Representatives, shall continue until all disputes, claims, litigation, appeals, and exceptions have been resolved.

35.5   Workplace Drug and Alcohol Testing Programs

35.5.1   Vendor/Integrator whose employees are performing safety-sensitive functions, as defined by FTA rules applicable to Authority, shall comply with the FTA drug and alcohol testing regulations set forth at 49 CFR Part 655, as such statute may be amended, and U.S. Department of Transportation Procedures for Transportation Workplace Drug and Alcohol Testing Programs set forth at 49 CFR Part 40, as such regulation may be amended. Vendor/Integrator's failure to comply with the requirements of this Section 40.6.1 will entitle Authority to suspend or terminate this Agreement or to withhold payment of all or part of any Vendor/Integrator invoice.

35.5.2   For purposes of this compliance program, safety-sensitive employees are defined as those employees whose job functions are, or whose job descriptions include, the performance of functions related to the safe operation of mass transportation service. Any supervisor who performs or whose job description includes the performance of any function listed below is also considered a safety-sensitive employee. The following are categories of safety-sensitive functions:

35.5.2.1   Operating a revenue service vehicle, including when not in revenue service;

35.5.2.2   Operating a non-revenue service vehicle when required to be operated by a holder of a Commercial Driver's License (CDL);

35.5.2.3   Controlling dispatch or movement of a revenue service vehicle or equipment used in revenue service;

35.5.2.4   Maintaining revenue service vehicles or equipment used in revenue service; and

35.5.2.5   Carrying a firearm for security purposes.

35.6   Preference for Recycled Products, Sustainable Practices

35.6.1   To the extent practicable and economically feasible, Vendor/Integrator agrees to Provide a competitive preference for recycled products to be used in Vendor/Integrator's performance of the Services pursuant to U.S. Environmental Protection Agency Guidelines appearing at 40 CFR Parts 247-253, Implementing Section 6002 of the Resource Conservation and Recovery Act, as amended, 42 USC § 6962.

35.6.2   Vendor/Integrator should use both sides of paper sheets for copying and printing, where practicable.

35.6.3   In performing the Services, Vendor/Integrator shall make all appropriate efforts to foster the use of fly ash (40 CFR Part 249).



35.7    Federal Lobbying Restrictions

35.7.1    Vendor/Integrator certifies that it has not and shall not use federally appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency or any member of Congress in connection with obtaining any federal contract, grant or any other award subject to the requirements of 31 U.S.C. § 1352. Each and every Subcontractor at all tiers shall certify to the Vendor/Integrator at the next tier above that such Subcontractor will not and has not used federal appropriated funds for such purpose. Vendor/Integrator and all Subcontractors at all tiers shall also disclose the name of any registrant under the Lobbying Disclosure Act of 1995 who has made lobbying contacts on Vendor/Integrator's or such Subcontractor's behalf with non-federal funds with respect to that federal contract, grant or award covered by 31 U.S.C. § 1352. Vendor/Integrator shall require that such disclosures shall be forwarded from tier to tier up to Authority.

35.7.2    In addition, if Vendor/Integrator has engaged in any lobbying activities to influence or attempt to influence the awarding of this Agreement, Vendor/Integrator must disclose all such activities. In such a case, Vendor/Integrator shall complete Standard Form SF-LLL, "Disclosure of Lobbying Activities." Vendor/Integrator must provide copies of all disclosure forms to Authority.

35.7.3    Vendor/Integrator and Subcontractors shall file a disclosure form at the end of each calendar quarter in which there has occurred any event that requires disclosure or that materially affects the accuracy of a previously filed disclosure form. An event that materially affects the accuracy of the information reported includes:

35.7.3.1 A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence this federally funded Agreement; or

35.7.3.2 A change in the person(s) influencing or attempting to influence this federally funded Agreement; or

35.7.3.3 A change in the officer(s), employee(s) or member contracted to influence or attempt to influence this federally funded Agreement.

35.8    Requirements of Americans with Disabilities Act

35.8.1    Vendor/Integrator is required to comply with all applicable requirements of the Americans with Disabilities Act of 1990 (ADA), 42 USC §§ 12101, et seq.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 USC § 794; and 49 USC § 5301(d), and the following regulations and any amendments thereto:

1. U.S. Department of Transportation regulations, "Transportation Services for Individuals with Disabilities (ADA)," 49 CFR Part 37.

2. U.S. Department of Transportation regulations, "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting from Federal Financial Assistance," 49 CFR Part 27.

Exhibit A
94

3.  U.S. Department of Justice (DOJ) regulations, "Nondiscrimination on the Basis of Disability in State and Local federal government Services," 28 CFR Part 35.

4.  DOJ regulations, "Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities," 28 CFR Part 36.

5.  U.S. General Services Administration regulations, "Accommodations for the Physically Handicapped," 41 CFR Subpart 101-19.

6.  U.S. Equal Employment Opportunity Commission (EEOC) "Regulations to implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 CFR Part 1630.

7.  U.S. Federal Communications Commission regulations, "Telecommunications Relay Services and Related Customer Premises Equipment for the Hearing and Speech Disabled," 47 CFR Part 64, Subpart F.

8.  FTA regulations, "Transportation for Elderly and Handicapped Persons," 49 CFR Part 609.

9.  Any implementing requirements that the FTA may issue.

35.9    Conformance with ITS National Architecture

Vendor/Integrator shall comply with all applicable ITS standards and interoperability tests that have been officially adopted through rulemaking by the United States Department of Transportation

35.10    Conservation

Vendor/Integrator shall recognize mandatory standards and policies relating to energy efficiency which are contained in the State Energy Conservation Plan issued in compliance with the Energy Policy and Conservation Act (42 USC Section 6321 et seq.).

35.11    Environmental Standards

Vendor/Integrator agrees to comply with all applicable standards, orders or requirements as follows:

35.11.1    Environmental Protection

35.11.1.1 Vendor/Integrator agrees to comply with the applicable requirements of the National Environmental Policy Act of 1969, as amended, 42 USC §§ 4321, et seq., in accordance with Executive Order No. 12898, "Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations," 59 Fed. Reg.

7629, Feb. 16, 1994; FTA statutory requirements on environmental matters at 49 USC § 5324(b); Council on Environmental Quality regulations on compliance with the National Environmental Policy Act of 1969, as amended, 40 CFR Part 15, et seq.; and joint FHWA/FTA regulations, "Environmental Impact and Related Procedures," 23 CFR Part 771 and 49 CFR Part 622.

35.11.1.2   Vendor/Integrator shall not use any facility in the performance of this Agreement that is listed on the EPA List of Violating Facilities, unless and until the EPA eliminates said name of such facility from said listing. Vendor/Integrator shall promptly notify Authority of the receipt of any communication from the Director, Office of Federal Activities, EPA (or any successor agency), indicating that a facility to be used by Vendor/Integrator is under consideration for listing on the EPA List of Violating Facilities. Vendor/Integrator shall also report violations to Authority, to the FTA, and to the EPA Assistant Administrator for Enforcement.

35.11.1.3   Vendor/Integrator shall provide Authority with the name, address and telephone number of any proposed disposal site. Vendor/Integrator shall obtain Authority Contract Manager's written approval before using any disposal site. Such approval shall not relieve Vendor/Integrator of its responsibilities under this Agreement and the law to secure a licensed, safe and secure disposal site.

35.11.2   Clean Air.  Vendor/Integrator agrees to comply with all applicable standards, orders, or regulations issued pursuant to the Clean Air Act, as amended, 42 USC §§ 7401, et seq., all applicable standards of the State of California and all clarifications, mitigation measures, and any other requirements approved by Authority in accordance with State and federal laws.

35.11.2.1   Vendor/Integrator shall comply with all rules, regulations, and ordinances of the South Coast Air Quality Management District ("SCAQMD") and statutes of the State that apply to any Services performed pursuant to this Agreement, including any air quality rules, regulations, ordinances and statutes specified in Section 11017 of the California Government Code. Vendor/Integrator, Subcontractors and all suppliers shall submit evidence to Authority that the governing air criteria are being met; such evidence will be retained by Authority.

35.11.2.2   In the absence of applicable air quality rules, regulations, ordinances or statutes governing solvents, including but not limited to the solvent portions of paints, thinners, curing compounds and liquid asphalt used on this Agreement, Vendor/Integrator shall comply with the applicable requirements of SCAQMD. Containers of paints, thinner, curing compound or liquid asphalt shall be labeled to indicate that the contents fully comply with said requirements.

35.11.2.3   Vendor/Integrator shall comply with California State law regarding pollution controls in operating or purchasing vehicles for use under this Agreement.

35.11.2.4   Material to be disposed of shall not be burned, unless otherwise allowed pursuant to the laws referenced herein.

35.11.2.5 Vendor/Integrator agrees to report each violation to Authority and understands and agrees that Authority will, in turn, report each violation as required to assure notification to FTA and the appropriate EPA Regional Office.

35.11.3   Clean Water.  Vendor/Integrator agrees as follows:

35.11.3.1 Vendor/Integrator agrees to comply with all applicable standards, orders, or regulations issued pursuant to the Federal Water Pollution Control Act, as amended, 33 USC §§ 1251, et seq., all applicable water standards of the State of California; and all clarifications, mitigation measures, and any other requirements approved by Authority in accordance with State and federal laws.

35.11.3.2 Vendor/Integrator agrees to report any violation of these requirements resulting from any Project Implementation activity to Authority and the appropriate U.S. EPA Regional Office.

35.11.4   Material Storage

In compliance with all applicable federal, State or local laws, Vendor/Integrator shall take all necessary precautions and steps to store flammable or combustible liquids, gases or other Material and all Hazardous Materials in a safe manner.

35.11.5   Use of Public Lands

Vendor/Integrator agrees that no publicly owned land from a park, recreation area, or wildlife or waterfowl refuge of national, State, or local significance as determined by the federal, State or local officials having jurisdiction thereof, or any land from a historic site of national, State, or local significance may be used for the Project unless the FTA makes the specific findings required by 49 USC § 303.

35.11.6   Historic Preservation

35.11.6.1 Vendor/Integrator shall assist the federal government in complying with Section 106 of the National Historic Preservation Act, 16 USC § 470f, involving historic and archaeological preservation and shall consult with the California State Historic Preservation Officer about investigations to identify properties and resources listed in or eligible for inclusion in the National Register of Historic Places that may be affected by the Services, in accordance with Advisory Council on Historic Preservation regulations, "Protection of Historic and Cultural Properties," at 36 CFR Part 800.  Vendor/Integrator shall notify FTA of any properties so affected.

35.11.6.2 All things of historical, archaeological, paleontological or scientific interest encountered by Vendor/Integrator during Vendor/Integrator's performance of the Services shall be reported immediately to Authority.  Construction in the vicinity of any discovery shall be halted in order to preserve and protect such discovery until its significance can be determined by Authority.  Authority will issue instructions to Vendor/Integrator with respect to the disposition of any discovery.



### 35.11.7   Mitigation of Adverse Environmental Effects

Vendor/Integrator agrees that if performance of the Services should cause adverse environmental effects, Vendor/Integrator will take all reasonable steps to minimize those effects in accordance with 49 USC § 5324(b), and all other applicable federal laws and regulations, specifically, the procedures of 23 CFR Part 771 and 49 CFR Part 622. Vendor/Integrator agrees to comply with all federal requirements to avoid or mitigate adverse effects on any properties as described in Section 40.12.7.

### 35.12   Privacy

35.12.1   Should Vendor/Integrator, any of its Subcontractors, or any employee of either of them administer any system of records on behalf of the federal government, the Privacy Act of 1974, 5 USC § 552a, imposes information restrictions on the party administering such system of records.

35.12.2   For purposes of the Privacy Act, when this Agreement involves the operation of a system of records on individuals to accomplish a government function, Authority, Vendor/Integrator, any Subcontractor, any Third Party Vendor/Integrator, and their respective employees involved in operating such system of records are considered to be government employees with respect to such government function.  The requirements of the Privacy Act, including any civil and criminal penalties for violations of the Privacy Act, apply to those individuals described in this Section and any applicable regulation.   Any failure by Vendor/Integrator or any Subcontractor to comply with the applicable terms of the Privacy Act or this Section will constitute a breach of this Agreement and Authority may seek any and all remedies set forth herein.

35.12.3   Vendor/Integrator agrees to include a clause substantially similar to this Section 40.13 in all subcontracts awarded pursuant to this Agreement that require the design, development, or operation of a system of records on individuals subject to the Privacy Act.

### 35.13   Changes in Governmental Regulations

35.13.1   In the event any local, State or Federal law or regulation affecting Vendor/Integrator's performance of the Services is enacted or amended before the issuance of a Notice to Proceed that (1) make any such standards more stringent or (2) make compliance more costly, Vendor/Integrator shall notify Authority in writing of such changes to applicable laws or regulations and the effects of such changes on the cost of providing the Services promptly after Vendor/Integrator first becomes aware of such new or amended laws or regulations.  Authority will determine whether it will reimburse Vendor/Integrator for any expenses relating to such new or amended laws or regulations.  Vendor/Integrator shall be deemed to have had notice of any Federal law or regulation announced or enacted as of the Effective Date, even though such law or regulation may not have taken effect or become operative until some date after the Effective Date.

35.13.2   If Vendor/Integrator fails to promptly notify Authority when Vendor/Integrator becomes aware of any changed requirements as described in this Section, Vendor/Integrator shall be deemed to have waived all rights under this Section.  In the event any

Exhibit A
98

governmental requirements are removed, relaxed or changed in any way after the Effective Date so as to make Vendor/Integrator's performance less expensive, or less difficult, then Authority shall have the option either (1) to require Vendor/Integrator to perform pursuant to the more rigorous requirements or (2) to receive a reduction in the cost of Services for all savings in Direct Costs which Vendor/Integrator may realize by reason of such change, including such deductions for overhead and profit made so as to reflect actual savings realized by Vendor/Integrator. Authority shall give Vendor/Integrator notice of Authority's determination, and anticipated savings.

### 35.14   Civil Rights Requirements

The following civil rights requirements apply to this Agreement:

35.14.1   Nondiscrimination. In accordance with Title VI of the Civil Rights Act, as amended, 42 U.S.C. § 2000d, Section 303 of the Age Discrimination Act of 1975, as amended, 42 U.S.C. § 6102, Section 202 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132, and federal transit law at 49 U.S.C. § 5332, Vendor/Integrator agrees that it will not discriminate against any employee or applicant for employment because of race, color, creed, national origin, sex, age, or disability. In addition, Vendor/Integrator agrees to comply with applicable Federal implementing regulations and any other implementing requirements FTA may issue.

35.14.2   Equal Employment Opportunity:

35.14.2.1 Race, Color, Creed, National Origin, Sex. In accordance with Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, and Federal transit laws at 49 U.S.C. § 5332, Vendor/Integrator agrees to comply with all applicable equal opportunity requirements of the U.S. Department of Labor regulations, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor, 41 CFR Parts 60 et seq. (which implement Executive Order No. 11246, "Equal Employment Opportunity," as amended by Executive Order No. 11375, "Amending Executive Order 11246 Relating to Equal Employment Opportunity," 42 U.S.C. § 2000e note), and with any applicable federal statutes, executive orders, regulations, and federal policies that may in the future affect activities undertaken in the course of this Agreement. Vendor/Integrator agrees to take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, creed, national origin, sex or age. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination; rates of pay; other forms of compensation; and selection for training, including apprenticeship. In addition, Vendor/Integrator agrees to comply with any implementing requirements FTA may issue.

35.14.2.2 Age.   In accordance with Section 4 of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623 and federal transit law at 49 U.S.C. § 5332, Vendor/Integrator agrees to refrain from discrimination against present and prospective employees for reasons of age. In addition, Vendor/Integrator agrees to comply with any implementing requirements FTA may issue.

35.14.2.3 Disabilities.   In accordance with Section 102 of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112, Vendor/Integrator agrees that

It will comply with the requirements of the U.S. Equal Employment Opportunity Commission, "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 CFR Part 1630, pertaining to employment of persons with disabilities. In addition, Vendor/Integrator agrees to comply with any implementing requirements FTA may issue.

        35.14.2.4 <u>Sanctions for Noncompliance</u>. In the event of Vendor/Integrator's noncompliance with the nondiscrimination provisions of this Agreement, Authority shall impose such contract sanctions as it or the FTA may determine to be appropriate, including, but not limited to (1) withholding of payments to Vendor/Integrator under this Agreement until Vendor/Integrator complies; and/or (2) cancellation, termination or suspension of this Agreement, in whole or in part.

        35.14.3   <u>Incorporation of Provisions</u>. Vendor/Integrator agrees to include and require these requirements set forth in this Section 33.15 in every subcontract financed at any time in whole or in part with Federal funds.

    35.15   Interest of Members of, or Delegates to, Congress

        No member of, or delegate to, the Congress of the United States shall be admitted to a share or part of this Agreement or to any benefit arising therefrom.

    35.16   Exclusionary or Discriminatory Specifications

        Apart from inconsistent requirements imposed by Federal statute or regulations, Vendor/Integrator agrees that it will comply with the requirement of 49 U.S.C. § 5323(h)(2) by refraining from using any Federal assistance awarded by FTA to support procurements using exclusionary or discriminatory specifications.

    35.17   No Federal Government Obligation to Third Parties

        Vendor/Integrator agrees that, absent the Federal Government's express written consent, the Federal Government shall not be subject to any obligations or liabilities to any subrecipient, any Third Party Vendor/Integrator, or any other person not a party to any Grant Agreement to which Vendor/Integrator's performance of the Services may be subject. Notwithstanding any concurrence provided by the Federal Government in or approval of any solicitation, subagreement, or third party contract, the Federal Government continues to have no obligation or liability to any party, including a subrecipient or Third Party Vendor/Integrator.

    35.18   False or Fraudulent Statements and Claims

        35.18.1   Vendor/Integrator recognizes that the requirements of the Program Fraud Civil Remedies Act of 1986, as amended, 49 U.S.C. §§ 3801 et seq. and U.S. DOT regulations, "Program Fraud Civil Remedies," 49 CFR Part 31, apply to its actions pertaining to Vendor/Integrator's performance of the Services. Accordingly, by signing this Agreement, Vendor/Integrator certifies or affirms the truthfulness and accuracy of any statement Vendor/Integrator has made, now makes, or may make pertaining to any applicable Grant Agreement, cooperative agreement, contract or project. In addition to other penalties that may be applicable, Vendor/Integrator acknowledges that if it makes a false, fictitious, or fraudulent claim, statement, submission, or certification, the Federal Government reserves the right to

impose the penalties of the Program Fraud Civil Remedies Act of 1986, as amended, on Vendor/Integrator, to the extent the Federal Government deems appropriate.

35.18.2  Vendor/Integrator also acknowledges that if it makes a false, fictitious, or fraudulent claim, statement, submission, or certification to the Federal Government in connection with an urbanized area formula project financed with Federal assistance authorized by 49 U.S.C. § 5307, the Government reserves the right to impose on Vendor/Integrator the penalties of 18 U.S.C. § 1001 and 49 U.S.C. § 5307(n)(1), to the extent the Federal Government deems appropriate.

35.19  Buy America Requirements

The Vendor/Integrator agrees to comply with 49 U.S.C. § 5323(j) and 49 CFR Part 661.11, which provide that Federal funds may not be obligated unless the cost of components of train control equipment produced in the United States is more than 60 percent of the cost of all components and final assembly takes place in the United States.

35.20  Fly America

The Federal government shall not participate in the cost of international air transportation of any persons involved in or property acquired in connection with Vendor/Integrator's performance of the Services unless such air transportation is provided by U.S. flag air carriers, to the extent service by these carriers is available, and is required by the International Air Transportation Fair Competitive Practices Act of 1974, as amended, 49 USC Section 40018, in accordance with U.S. GAO regulations, "Uniform Standards and Procedures for Transportation Transactions", 4 CFR Part 52, and U.S. GAO Guidelines for Implementation of the "Fly America Act," B-138942, 1981 US Comp. Gen LEXIS 2116, March 31, 1981.

35.21  Coordination with California Law

When a conflict exists between California law and Federal law, the law establishing the higher standard applies.  Vendor/Integrator and any Subcontractors shall insert this clause in any lower tier contract.

35.22  Disadvantaged Business Enterprise (DBE) Requirements

In accordance with federal financial assistance agreements with the U.S. Department of Transportation (U.S. DOT), Authority has adopted a Disadvantaged Business Enterprise (DBE) Program, in conformance with 49 CFR Part 26, "Participation by Disadvantaged Business Enterprises in Department of Transportation Programs."  This DOT-assisted project is subject to these stipulated regulations, which are hereby incorporated in their entirety by this reference.  Vendor/Integrator shall not discriminate on the basis of race, color, national origin, or sex in the award and performance of subcontracts.

***In the event of any conflicts or inconsistencies between the Regulations and Authority's DBE Program with respect to DOT-assisted contracts, the Regulations shall prevail.***

### 35.22.1   Current Race Neutral DBE Policy Implementation

35.22.1.1  Pursuant to Race-Neutral DBE policy directives issued by the U.S. DOT in response to the Ninth Circuit U.S. Court of Appeals' decision in Western States Paving Co. v. Washington State Department of Transportation and applicable FTA Guidance (Docket No. FTA-2006-24063; dated March 23, 2006) stipulating a Notice of New Policy implementation to Western States Public Transportation Providers, Authority has implemented a wholly race-neutral DBE Program.

35.22.1.2  Race-neutral DBE Program is one that, while benefiting DBEs, is not solely focused on DBE firms.  Therefore, under a race-neutral DBE Program, Authority does not establish numeric race-conscious DBE participation goals on its DOT-assisted contracts.  Vendor/Integrator shall not be required to achieve a specific level of DBE participation as a condition of contract compliance in the performance of this DOT-assisted Agreement.  However, Vendor/Integrator shall adhere to any and all race-neutral DBE participation commitment(s) made at the time of contract award.

### 35.22.2   Race-Neutral DBE Participation Commitment

As of the Effective Date of this Agreement, Vendor/Integrator has committed to utilize DBEs in the performance of this DOT-assisted Agreement, and further agrees to ensure that DBE Subcontractors listed on the "DBE Race Neutral Participation Listing" form (Attachment 1) perform work and/or supply materials as listed in accordance with original commitments, unless otherwise directed and/or approved by Authority prior to Vendor/Integrator's effectuating any changes to its race-neutral DBE participation commitment(s) (Refer to Subsection 35.22.7: "Performance of DBE Subcontractors").

### 35.22.3   Vendor/Integrator's Race-Neutral DBE Reporting Requirements

35.22.3.1  Vendor/Integrator shall complete and submit the following DBE reporting forms at the times specified:

35.22.3.1.1 "DBE Race-Neutral Participation Listing" – Attachment 1.  If Vendor/Integrator is a DBE, intends to utilize DBE Subcontractors or purchases goods or services from DBE vendors or DBE suppliers during the performance of this Agreement, Vendor/Integrator shall complete and submit the "DBE Race-Neutral Participation Listing" Attachment 1 to document any race-neutral DBE participation under this Agreement.  Vendor/Integrator must provide the following information for each DBE that Vendor/Integrator engages in connection with this Agreement:

The complete name and address of each DBE;

A description of the work that each DBE will perform or goods or services such DBE will provide;

The dollar amount of the work that each DBE will perform or goods or services such DBE will provide; and,

Valid DBE Certification eligibility status, in conformance with 49 CFR, Part 26.

35.22.3.1.2 Vendor/Integrator shall also submit, for each DBE engaged under this Agreement, a written confirmation from the DBE acknowledging that it is participating in the work set forth in this Agreement for a specified value, including the corresponding scope of work. Authority will accept a subcontract agreement in lieu of such written confirmation.

35.22.3.2 In the event that Vendor/Integrator does not intend to utilize DBEs in the performance of this Agreement, Vendor/Integrator shall indicate "None" on the form.

35.22.3.3 Vendor/Integrator shall submit a signed and completed "DBE Race-Neutral Participation Listing" form with the executed contract documents.

35.22.4    Authority Form 103 -- "Monthly Race-Neutral DBE Subcontractors Paid Report Summary and Payment Verification" (Form 103)

35.22.4.1 If Vendor/Integrator is a DBE firm and/or has proposed to utilize DBE firms, Vendor/Integrator will be required to complete and submit Form 103 (Attachment 2) to Authority by the 15th of each month until completion of this Agreement to facilitate reporting of race-neutral DBE participation, following the first month of contract activity. Vendor/Integrator shall show the total dollar figure paid to DBEs engaged in connection with this Agreement through the applicable reporting period, including the scope of work or services performed or provided and the corresponding subcontract dollar value of such DBE's work. Vendor/Integrator is advised not to credit the participation of DBEs on the respective reporting form until the amount being credited has been paid to the DBE firm.

35.22.4.2 Upon completion of the term of this Agreement, Vendor/Integrator will be required to prepare and submit to Authority a "Race-Neutral DBE Subcontractors Paid Report Summary and Payment Verification" (Form 103) Attachment 3 clearly marked "Final" to facilitate reporting and capturing actual DBE utilization. Vendor/Integrator shall complete and submit a Final Form 103 whether or not DBEs were utilized in the performance of this Agreement.

35.22.5    DBE Eligibility and Commercially Useful Function Standards

35.22.5.1 DBE must be a small business concern as defined pursuant to Section 3 of the U.S. Small Business Act and relevant regulations promulgated pursuant thereto.

35.22.5.2 DBE may participate as a prime Vendor/Integrator, Subcontractor, joint venture partner with a prime or Subcontractor, vendor of material or supplies, or as a trucking company.

35.22.5.3 DBE joint venture partner must be responsible for specific contract items of work, or clearly defined portions thereof. Responsibility means actually performing, managing and supervising the work with its own forces. The DBE joint venture

partner must share in the capital contribution, control, management, risks and profits of the joint venture commensurate with its ownership interest.

35.22.5.4 DBE must perform a commercially useful function in accordance with 49 CFR 26.55 (i.e., must be responsible for the execution of a distinct element of the work and must carry out its responsibility by actually performing, managing and supervising the work). A DBE should perform at least thirty percent (30%) of the total cost of its contract with its own workforce to presume it is performing a commercially useful function.

35.22.5.5 DBEs must be certified by the California Unified Certification Program. Listings of DBEs certified by the California Unified Certification Program are available from the following sources:

a.   The Caltrans "Civil Rights" web site, which can be accessed at http://www.dot.ca.gov/hq/bep .

b.   The Caltrans DBE Directory, which may be obtained from the Department of Transportation, Material Operations Branch, Publication Distribution Unit, 1900 Royal Oaks Drive, Sacramento, California 95815; Telephone: (916) 445-3520.

35.22.6   DBE Crediting Provisions

35.22.6.1 When a DBE is proposed to participate in the work set forth in this Agreement, either as a prime Vendor/Integrator or Subcontractor, only the value of the work proposed to be performed by the DBE with its own forces may be counted towards race-neutral DBE participation. If Vendor/Integrator is a DBE joint venture participant, only the DBE proportionate interest in the joint venture shall be counted.

35.22.6.2 If a DBE intends to subcontract part of the work of its subcontract to a lower tier Subcontractor, the value of the subcontracted work may be counted toward race-neutral DBE participation only if the DBE Subcontractor is a certified DBE and actually performs the work with its own forces. Services subcontracted to a non-DBE firm may not be credited toward the prime Vendor/Integrator's race-neutral DBE attainment.

35.22.6.3 Vendor/Integrator must calculate and credit participation by eligible DBE vendors of equipment, materials, and suppliers toward race-neutral DBE attainment, as follows:

a.   Sixty percent (60%) of expenditure(s) for equipment, materials and supplies required under this Agreement, obtained from a regular dealer; or

b.   One hundred percent (100%) of expenditure(s) for equipment, materials and supplies required under this Agreement, obtained from a DBE manufacturer.

35.22.6.4 The following types of fees or commissions paid to DBE Subcontractors, brokers, and packagers may be credited toward the prime Vendor/Integrator's

race-neutral DBE attainment, provided that the fee or commission is reasonable, and not excessive, as compared with fees or commissions customarily allowed for similar work, including:

    a.    Fees and commissions charged for providing bona fide professional or technical services, or procurement of essential personnel, facilities, equipment, materials, or supplies required in the performance of this Agreement;

    b.    Fees charged for delivery of material and supplies (excluding the cost of materials or supplies themselves) when the licensed hauler, trucker, or delivery service is not also the manufacturer of, or a regular dealer in, the material and supplies;

    c.    Fees and commissions charged for providing any insurance specifically required in the performance of this Agreement.

35.22.6.5 Vendor/Integrator may count the participation of DBE trucking companies toward race-neutral DBE attainment, as follows:

    a.    The DBE must be responsible for the management and supervision of the entire trucking operation for which it is responsible on a particular contract.

    b.    The DBE must itself own and operate at least one fully licensed, insured, and operational truck used on this Agreement.

    c.    The DBE receives credit for the total value of the transportation services it provides on this Agreement using trucks it owns, insures, and operates using drivers it employs.

    d.    The DBE may lease trucks from another DBE firm, including an owner-operator who is certified as a DBE. The DBE who leases trucks from another DBE receives credit for the total value of the transportation services the lessee DBE provides on this Agreement.

    e.    The DBE may also lease trucks from a non-DBE firm, including an owner-operator. The DBE who leases trucks from a non-DBE is entitled to credit only for the fee or commission it receives as a result of the lease arrangement. The DBE does not receive credit for the total value of the transportation services provided by the lessee, since these services are not provided by a DBE.

    f.    For purposes of this Section 25.6, a lease must indicate that the DBE has exclusive use of and control over the truck. This

does not preclude the leased truck from working for others during the term of the lease with the consent of the DBE, so long as the lease gives the DBE absolute priority for use of the leased truck. Leased trucks must display the name and identification number of the DBE.

35.22.6.6 If Vendor/Integrator listed a non-certified DBE 1st tier Subcontractor to perform work in connection with this Agreement, and the non-certified DBE Subcontractor subcontracts a part of its work or purchases materials and/or supplies from a lower tier DBE certified Subcontractor or Vendor, the value of work performed by the lower tier DBE firm's own forces can be counted toward race-neutral DBE participation in connection with this Agreement.

35.22.6.7 Vendor/Integrator is advised not to count the participation of DBE Subcontractors toward Vendor/Integrator's race-neutral DBE attainment until the amount being counted has been paid to the DBE.

35.22.7    Performance of DBE Subcontractors

35.22.7.1 DBE Subcontractors listed by Vendor/Integrator in its "DBE Race-Neutral Participation Listing" (SCRRA Form Attachment 1) submitted with the executed contract documents shall perform the work and supply the materials for which they are listed, unless Vendor/Integrator has received prior written authorization from Authority to perform the work with other forces or to obtain the materials from other sources.

35.22.7.2 Vendor/Integrator shall provide written notification to Authority in a timely manner of any changes to its anticipated race-neutral DBE participation. This notice should be provided prior to the commencement of that portion of the work.

35.22.8    Additional DBE Subcontractors

In the event Vendor/Integrator identifies additional DBE Subcontractors or suppliers not previously identified by Vendor/Integrator for race-neutral DBE participation under the contract, Vendor/Integrator shall notify Authority by submitting Attachment 4 "Request for Additional DBE Firm" to enable Vendor/Integrator to capture all race-neutral DBE participation. Vendor/Integrator shall also submit, for each DBE identified after contract execution, a written confirmation from the DBE acknowledging that it is participating in this Agreement for a specified value, including the corresponding scope of work. Authority will accept a subcontract agreement in lieu of such written confirmation.

35.22.9    Prompt Payment to Subcontractors

The Vendor/Integrator shall pay any subcontractors approved by the Authority for work that has been satisfactorily performed no later than ten (10) days from the date of Vendor/Integrator's receipt of payments by the Authority. Within thirty (30) days of satisfactory completion of all work required of the subcontractor, Vendor/Integrator shall release any retainage payments withheld to the subcontractor. In the event Vendor/Integrator does not make payments or release retentions to the Subcontractors in accordance with the time period

specific herein, Vendor/Integrator may be subject to a charge of two percent (2%) per month on the untimely or improperly withheld payment.

### 35.22.10   DBE Certification Status

If a listed DBE Subcontractor is decertified during the life of the project, Vendor/Integrator must require the decertified Subcontractor to notify Vendor/Integrator in writing with the date of decertification.  If a non-DBE Subcontractor becomes a certified DBE during the life of the project, Vendor/Integrator must require such DBE Subcontractor to notify Vendor/Integrator in writing with the date of certification.  Vendor/Integrator shall furnish any such documentation to Authority in a timely manner.

### 35.23   Central Vendor/Integrator Registration Requirement DUNS Number

This Agreement is funded in part with American Recovery and Reinvestment Act (ARRA) funds.   Under ARRA, the Vendor/Integrator must have a DUNS number. Vendor/Integrator must cooperate with Authority in meeting all its reporting requirements under ARRA and shall provide all information required to meet such reporting requirements in a timely fashion, but in any event no later than the fifth calendar day following the end of each calendar month or quarter, as applicable.

### 35.24   Whistleblower Provision

Vendor/Integrator shall not  discharge, demote, or otherwise discriminate against an employee as a reprisal for disclosing, including a disclosure made in the ordinary course of an employee's duties, to the Recovery Accountability and Transparency Board, an Inspector general, the Comptroller General, a member of Congress, a State or Federal regulatory or law enforcement agency, a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct), a court or grand jury, the head of a Federal agency, or their representatives, information that the employee reasonably believes is evidence of-

35.24.1.1 gross mismanagement of an agency contract or grant relating to covered funds;

35.24.1.2 a gross waste of covered funds;

35.24.1.3 a substantial and specific danger to public health or safety related to the implementation or use of covered funds;

35.24.1.4 an abuse of authority related to the implementation or use of covered funds; or

35.24.1.5 a violation of law, rule, or regulation related to an agency contract (including the competition for or negotiation of a contract) or grant, awarded or issued relating to covered funds.

The Vendor/Integrator shall post notice of employees' rights and remedies for whistleblower protections as required by the American Recovery and Reinvestment Act of 2009.

35.24.2    The Vendor/Integrator shall include the substance of this clause in all subcontracts.

**36.    NOTIFICATION**

All notices hereunder concerning this Agreement shall be physically transmitted by courier, overnight, registered or certified mail, return receipt requested, postage prepaid and addressed as follows:

To Authority:   Southern California Regional Rail Authority
700 South Flower Street, Suite 2755
Los Angeles, CA  90017-4101
Attn:  POSITIVE TRAIN CONTROL Contract Manager

To Vendor/Integrator:  Parsons Transportation Group
100 M Street SE
Washington DC 20003
Attn:    Thomas E Barron, President

**37.    EQUAL OPPORTUNITY**

Vendor/Integrator shall not discriminate, or grant preferential treatment to, any individual or group, or any employee or applicant for employment because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age or sexual orientation.  Vendor/Integrator shall take action to insure that applicants are employed, and that employees are treated during employment without regard to their status with respect to race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age or sexual orientation.  Such action shall include, but not be limited to, the following: employment upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, and selection for training, including apprenticeship.

**38.    WAIVER/INVALIDITY**

No waiver of a breach of any provision of this Agreement by either party shall constitute a waiver of any other breach of the provision, or of any other breach of the provisions of this Agreement.  Failure of either party to enforce any provision of this Agreement at any time shall not be construed as a waiver of that provision.  The invalidity in whole or in part of any provision of this Agreement shall not void or affect the validity of any other provision.

**39.    INDEPENDENT CONTRACTOR**

Vendor/Integrator's relationship to Authority in the performance of this Agreement is that of an independent contractor.  Vendor/Integrator's personnel shall at all times be under Vendor/Integrator's exclusive direction and control and shall be employees of Vendor/Integrator's and not employees of Authority.  Vendor/Integrator shall pay all wages, salaries and other amounts due its employees in connection with this Agreement and shall be responsible for all reports and obligations respecting them, such as Social Security, income tax withholding, unemployment compensation, workers' compensation and similar matters.

Exhibit A
108

**40.    APPROVALS BY AUTHORITY CONTRACT MANAGER: NO LIABILITY**

Approval by the Contract Manager of any modification sample, schedule document, substitution, drawing or other matter shall not impose any liability upon Authority, nor shall any such approval change any of the requirements of the Contract Documents or relieve Vendor/Integrator of any responsibilities under the Contract, including without limitation, the accuracy of drawing or any obligation under any warranty provision.

**41.    SUGGESTIONS TO VENDOR/INTEGRATOR**

Any plan or method of work suggested by Authority, but not specified or required in the Contract, if adopted or followed by Vendor/Integrator in whole or part shall be adopted at the risk and responsibility of Vendor/Integrator, and Authority shall assume no responsibility therefore. There are no verbal modifications to the Contract.

**42.    EFFECT OF FAILURE TO COMMENT OR APPROVE**

With respect to any time period specified in the Contract Document for Authority to comment or grant approval of any submission by Vendor/Integrator, any failure on the part of Authority to return comments or grant approval as set forth hereunder shall not be deemed or interpreted to be approval by Authority.

**43.    LABOR RELATIONS**

43.1    Should a labor dispute directed primarily or secondarily at Vendor/Integrator occur, Vendor/Integrator shall take all necessary steps to ensure that such labor dispute does not disrupt, interfere with, hamper, interrupt and/or delay the progress of the Services. Such steps shall include, but not be limited to, seeking and obtaining legal relief from any and all appropriate Federal, State and/or local agencies, and from any and all appropriate Federal and/or State courts.

43.2    The Vendor/Integrator shall be responsible for complying with any and all of the foregoing relief at its sole cost and expense, without any increase in compensation or time for performance of the Services on account of such compliance and regardless of whether such compliance would require additional labor, equipment and/or materials not expressly provided for in the Contract Documents.

43.3    For purposes of this provision, a "labor dispute" is defined as any concerted or non-concerted activity that does or could potentially disrupt, interfere with, hamper, interrupt and/or delay the progress of the Services. Such term includes but is not limited to a refusal to work; strike; inter- or intra-union jurisdictional dispute; sympathy strike; slowdown; work stoppage; withholding of labor; honoring of picket line; picketing; handbilling or other notice to the public that a labor dispute exists; interference with the progress of the Services of any kind for any labor-related reason; and/or boycotts for any purpose and/or reason, including a dispute between an employer and a labor organization.

**44.   PERSONAL NON-LIABILITY**

Neither the Directors of Authority nor any Officer, agent or employee thereof, shall be charged personally by Vendor/Integrator with any liability, or held personally liable to Vendor/Integrator under any term or provision of this Contract, or because of its execution or attempted execution, or because of any breach, or attempted or alleged breach, thereof.

**45.   NO ESTOPPEL**

No certification, notice, inspection, acceptance or statement (collectively "Certification") made or given by Authority, or any officer, agent or representative of Authority shall estop, preclude or bar Authority in any manner, or at any time, from asserting facts, or taking a position, contrary to the Certification. Without limiting the generality of the foregoing, Authority shall not be estopped, for example, from showing that any Certification given by Authority was inaccurate or improperly made in any way or that the Services or System or any part thereof do not conform to the requirements of the Contract Documents. Nor shall Authority be estopped or precluded, notwithstanding any such Certification (including any payment in accordance therewith), from showing the true and correct classification, amount, and quality of the Services done, or from deducting from future payments, or recovering from Vendor/Integrator such amounts or damages as Authority may sustain by reason of Vendor/Integrator's failure to comply with the Contract.

**46.   AUTHORITY   AND   VENDOR/INTEGRATOR'S   REPRESENTATIVES,   KEY PERSONNEL**

46.1   Authority's Contract Manager under this Agreement shall be Darrell Maxey. Vendor/Integrator's point of contact/Project Manager shall be Don Bullock.

46.2   Authority awarded this Agreement to Vendor/Integrator based on Authority's confidence and reliance on the expertise of Vendor/Integrator's Key Personnel, listed below. Unless otherwise approved by the Authority, all Key Personnel shall dedicate such amount of their time to the Services and shall provide said Services at such places as set forth in Exhibit B. Vendor/Integrator shall not reassign any Key Personnel or assign other personnel to Key Personnel roles until and unless Authority, in its sole discretion, approves a replacement in writing. The Authority reserves the right to direct the removal of any personnel, including but not limited to Key personnel, when in the Authority's opinion the individual's performance is unsatisfactory.   Replacement of Key Personnel shall not excuse Vendor/Integrator from compliance with any or the requirements of the Contract Documents, including any schedule.

| Key Personnel | Title |
|---|---|
| Don Bullock | Project Manager |
| Ted Woods | Chief Project Engineer/ Deputy PM |
| Ken Seraji | Systems Integrator |
| Stephen Chicano | Communications Systems Engineer |
| Upon award | On-Board Systems Engineer |
| Darrin Brown | Signal Engineer |
| Upon award | Senior Network Engineer |
| Upon award | Database Administrator |

| | |
|---|---|
| Robin Anawalt | Manager of Document Production and Editing |
| Dave Schlesinger | Manager of Training |
| Upon award | Safety Manager |
| Amy Strand | Project Scheduler |
| Guy Dixon | Project Controller |
| Joanne Pantanelo | Document Control Manager |
| Rich Enriquez | Risk Manager |
| Buck Thomas | Quality Manager |

**47.    RIGHTS AND REMEDIES OF THE AUTHORITY**

The rights and remedies of the Parties provided herein shall not be exclusive and are in addition to any other rights and remedies provided by law or under the Agreement.

**48.    BINDING ON SUCCESSORS**

All of the terms, provisions, and conditions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, assigns and legal representatives.

**49.    GOVERNING LAW**

The validity of this Agreement and of any of its terms or provisions, as well as the rights and duties of the Parties hereunder, shall be governed by the laws of the State of California. By entering into this Agreement, Vendor/Integrator consents and submits to the jurisdiction of courts in the State of California over any action at law, suit in equity, and/or other proceeding that may arise out of this Agreement. Venue shall be in Los Angeles County.

**50.    SURVIVAL**

The following provisions of this agreement shall survive expiration or termination of this Agreement: Sections 2, 11, 20, 21, 23, 26, 30, 32, 48, 49, and 51.

**51.    LIMITATIONS ON LIABILITY**

51.1    The total liability of Vendor/Integrator for all Losses arising out of, connected with, or resulting from its performance of this Agreement shall not in any event exceed the Overall Liability Cap of $70 million.

51.2    In no event will either Party or its directors, officers, shareholders, employees, attorneys, agents, assigns or successors-in-interest be liable to the other Party for any indirect, special, incidental, punitive, aggravated, exemplary or consequential damage, loss, cost or expense of any kind whatsoever (including, without limitation, lost profits and opportunity costs) whether arising in contract, tort or otherwise, even if advised of the possibility of such damage.

**52.     AUTHORITY WARRANTIES**

The Authority makes no warranties, representations, or agreements, either expressed or implied, beyond such as are explicitly stated in this Agreement.

**53.     ENTIRE AGREEMENT**

This Agreement, and any attachments or documents incorporated herein by inclusion or by reference, constitutes the complete and entire agreement between Authority and Vendor/Integrator and supersedes any prior representations, understandings, communications, commitments, agreements or proposals, oral or written. Each Party has been duly authorized to execute this Agreement and to undertake all the obligations set forth herein, including, but not limited to its respective indemnity obligations, and each Party agrees that, except as otherwise provided in this Agreement, it will not defend any Claim for Indemnity made by the other Party on the basis that such obligations are void, illegal or otherwise limited by law.

**54.     MODIFICATIONS TO AGREEMENT**

Unless specified otherwise in this Agreement, this Agreement may only be modified by written mutual consent evidenced by signatures of representatives of Authority and Vendor/Integrator duly authorized to enter into and modify this Agreement.  In order to be effective, amendments may require prior approval by Authority's Board of Directors, and in all instances will require prior signature of a duly authorized representative of Authority.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their authorized representatives on the dates shown below, and effective on the date first hereinabove written.

**VENDOR/INTEGRATOR**
Parsons Transportation Group, Inc.

**SOUTHERN   CALIFORNIA   REGIONAL RAIL AUTHORITY**

Name    Thomas E. Barron
Title    President

John Fenton
Chief Executive Officer

Date

**APPROVED AS TO FORM:**

Name
Title

Andrea Sheridan Ordin
County Counsel,
County of Los Angeles
SCRRA General Counsel

Date

Deputy

Tax I.D. No. 36 - 098 - 2270

Joan L. Cassman
Hanson Bridgett, LLP
SCRRA Special Counsel

* If the Vendor/Integrator is a corporation, this Agreement must be executed by two corporate officers, consisting of: (1) the president, vice president or chair of the board; and (2) the secretary, assistant secretary, chief financial officer or assistant treasurer. In the alternative, this Agreement may be executed by a single officer or a person other than an officer provided that evidence satisfactory to the Authority is provided demonstrating that such individual is authorized to bind the corporation (e.g. a copy of a certified resolution from the corporation's board or a copy of the corporation's bylaws).

Contract No. H1636-10                     68                     Authorized by Board 10/1/10
                                                                2664174.8

# PARSONS

Parsons Transportation Group Inc.
100 M Street, Southeast, Suite 1200, Washington, District of Columbia 20003, U.S.A • (202) 775-3300 • Fax: (202) 775-3422

## Certificate of Secretary

The undersigned, Clyde E. Ellis, Jr., being Secretary of Parsons Transportation Group Inc., an Illinois corporation (the "Company"), does hereby certify that:

a) Thomas E. Barron was duly and unanimously appointed as President by the Board of Directors of the Company in accordance with its Bylaws, effective as of October 1, 2009;

b) The appointment of Mr. Barron as President has not been rescinded and remains in full force and effect as of the date of this Certificate;

c) Set forth below is a full, true and correct copy of Board resolutions appointing Mr. Barron as President and granting him execution authority:

"RESOLVED that effective October 1, 2009, Thomas E. Barron is appointed President of the Company;

"RESOLVED that the President of the Company be, and he hereby is, authorized to enter into, execute, and deliver contracts, documents, or instruments relating to the performance of services by the Company, in the name, and on the behalf of, the Company; and

"FURTHER RESOLVED that the President of the Company shall have the authority to delegate his authority to execute and deliver contracts, documents, or instruments relating to the performance of services by the Company to officers and employees of the Company, provided that such a delegation is in writing."

Exhibit A
114

# PARSONS

Parsons Transportation Group Inc.
100 M Street, Southeast, Suite 1200, Washington, District of Columbia 20003, U.S.A • (202) 775-3300 • Fax: (202) 775-3422

IN WITNESS WHEREOF, the undersigned has executed this Certificate and caused the seal of the Company to be affixed hereto as of October 13, 2010.

Clyde E. Ellis, Jr.
Secretary

( S E A L )

**ATTACHMENT 1**

**DBE RACE-NEUTRAL
PARTICIPATION LISTING**

Sample Agreement RFP No. H1636-10                                    Authorized by Board: 10/1/10

VENDOR/INTEGRATOR: _____

## DBE RACE-NEUTRAL PARTICIPATION LISTING

*INSTRUCTIONS TO PROPOSER:*

1. *THE PROPOSER MUST EXECUTE AND SUBMIT THIS FORM ENTITLED "DBE RACE-NEUTRAL PARTICIPATION LISTING" TO THE AUTHORITY, EVEN IF NO DBE PARTICIPATION WILL BE REPORTED. IN THE EVENT OF NO DBE PARTICIPATION, CONTRACTOR SHALL MARK "NONE" UNDER DBE FIRM NAME.*

2. *REFER TO PAGE 5 FOR IMPORTANT PROVISIONS CONCERNING DBE RACE-NEUTRAL PARTICIPATION CREDITING.*

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: | |
|---|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: | |
| Contact Person: | | Subcontractor (100%) | Supplier (60%) |
| Telephone: | Fax: | Regular Dealer (60%) | Broker |
| License No., Classification and Expiration: | | Manufacturer (100%) | Trucker |
| Subcontract Amount: | | | |

*DBE certification letter must be attached for each proposed DBE firm.  DBEs must be certified on the date bids are opened.

CONTRACT No. H1636-10                    AT–1–1                    AUTHORIZED BY BOARD: 10/1/10

VENDOR/INTEGRATOR: _____

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: |
|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: |
| Contact Person: | | Subcontractor (100%) / Supplier (60%) |
| Telephone: | Fax: | Regular Dealer (60%) / Broker |
| License No., Classification and Expiration: | | Manufacturer (100%) / Trucker |
| Subcontract Amount: | | |

*DBE certification letter must be attached for each proposed DBE firm. DBEs must be certified on the date bids are opened.

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: |
|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: |
| Contact Person: | | Subcontractor (100%) / Supplier (60%) |
| Telephone: | Fax: | Regular Dealer (60%) / Broker |
| License No., Classification and Expiration: | | Manufacturer (100%) / Trucker |
| Subcontract Amount: | | |

*DBE certification letter must be attached for each proposed DBE firm. DBEs must be certified on the date bids are opened.

AT-1-2

CONTRACT No. H1636-10                          AUTHORIZED BY BOARD: 10/1/10

VENDOR/INTEGRATOR: _____

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: _____ _____ _____ | | |
|---|---|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: | | |
| Contact Person: | | Subcontractor (100%) | Supplier (60%) | |
| Telephone: | Fax: | Regular Dealer (60%) | Broker | |
| License No., Classification and Expiration: | | Manufacturer (100%) | Trucker | |
| Subcontract Amount: | | | | |

*DBE certification letter must be attached for each proposed DBE firm. DBEs must be certified on the date bids are opened.

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: _____ _____ _____ | | |
|---|---|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: | | |
| Contact Person: | | Subcontractor (100%) | Supplier (60%) | |
| Telephone: | Fax: | Regular Dealer (60%) | Broker | |
| License No., Classification and Expiration: | | Manufacturer (100%) | Trucker | |
| Subcontract Amount: | | | | |

*DBE certification letter must be attached for each proposed DBE firm. DBEs must be certified on the date bids are opened.

AT–1–3

CONTRACT No. H1636-10                        AUTHORIZED BY BOARD:  10/1/10

VENDOR/INTEGRATOR: _____

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: <br> _____ <br> _____ <br> _____ <br> _____ |
|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: |
| Contact Person: | | Subcontractor (100%) / Supplier (60%) |
| Telephone: | Fax: | Regular Dealer (60%) / Broker |
| License No., Classification and Expiration: | | Manufacturer (100%) / Trucker |
| Subcontract Amount: | | |

*DBE certification letter must be attached for each proposed DBE firm. DBEs must be certified on the date bids are opened.

| DBE Firm Name*: | DBE Certification No. and Expiration Date: | Item of Work and Description or Services to be Subcontracted or Materials to be Provided: <br> _____ <br> _____ <br> _____ <br> _____ |
|---|---|---|
| Street Address: | | Check Appropriate Box Describing Subcontractor/Supplier Activity: |
| Contact Person: | | Subcontractor (100%) / Supplier (60%) |
| Telephone: | Fax: | Regular Dealer (60%) / Broker |
| License No., Classification and Expiration: | | Manufacturer (100%) / Trucker |
| Subcontract Amount: | | |

*DBE certification letter must be attached for each proposed DBE firm. DBEs must be certified on the date bids are opened.

AT–1–4

CONTRACT No. H1636-10                        AUTHORIZED BY BOARD: 10/1/10

VENDOR/INTEGRATOR: _____

| Contractor | | Contract No. | |
|---|---|---|---|
| Contract Name | | Total Contract Amount | $ |
| Tier | | DBE Availability Advisory Percentage (%) | |
| Address | | DBE Race - Neutral Participation Value (% of total Contract Value) | |
| City/State/Zip | | | |
| Phone | | | |
| Fax | | | |

### DBE RACE-NEUTRAL PARTICIPATION CREDITING PROVISIONS:

Identify all DBE firms participating in the contract, regardless of tier. Names of the DBE Subcontractors and their respective item(s) of work listed above should be consistent, where applicable, with the names and items of work for subcontractors listed in your bid. Provide copies of DBE subcontract agreements, and if applicable, copies of joint venture agreements. This listing shall be pursuant to the Subcontractors Listing Law and the other Special Contract Provisions, if applicable.

1. Enter DBE prime and subcontractors' certification numbers. Prime contractors shall indicate all work to be performed by DBEs, including work performed by its own forces.
2. If 100% of a work item is not to be performed or furnished by a DBE, describe the exact portion of the item to be performed or furnished by the DBE.
3. Refer to Contract Sections entitled "DBE Eligibility and Commercially Useful Function Standards" and "DBE Crediting Provisions" and 49 CFR 26.55: "Counting DBE Participation" for DBE calculating and crediting provisions.

_____     _____
Signature of Authorized Representative     A.     Printed Name

_____     _____
Date     Title

CONTRACT No. H1636-10                              AT-1-5                    AUTHORIZED BY BOARD: 10/1/10

Exhibit A
121

**ATTACHMENT 2**

**MONTHLY RACE-NEUTRAL DBE
SUBCONTRACTORS PAID REPORT
SUMMARY
AND
PAYMENT VERIFICATION
(Form 103)**

CONTRACT No. H1638-10                    AUTHORIZED BY BOARD: 10/1/10

**MONTHLY RACE-NEUTRAL DBE SUBCONTRACTORS PAID REPORT SUMMARY AND PAYMENT VERIFICATION (Form 103)**

Reporting Period (month): _____, 200 ____

| | | |
|---|---|---|
| Contract Number: _____ | Form 103 Report No.: _____ | Report prepared by: _____ |
| Contract Award Date: _____ | Original Contract Award Amount: _____ | Title: _____ |
| Prime Name: _____ | Current Contract Value: _____ [B] | Report reviewed by: _____ |
| Address: _____ | % of Project Complete: [A] divided by [B]  #VALUE! | Signature: _____  Title: _____ |
| Telephone No.: _____ | Total Dollars Paid to DBEs this Reporting Period: _____  Total Dollars Paid to DBEs to Date: _____  Total Dollars Paid to Prime to Date: _____ [A] | Prime's Race-Neutral DBE Attainment to Date:  #DIV/0!  (Total Dollars Paid to DBEs divided by Total Dollars Paid to Prime) |

| DBE SUBCONTRACTORS | Dollars Paid This Month | Dollars Paid to Date [C] | Type of Work Performed (Scope) | Amount Committed to DBE at Contract Award | Amount Committed Current Change Order Activity | Total Amount Subcontract Value [D] | % of Work Completed [C] divided by [D] | FOR SCRRA USE ONLY |
|---|---|---|---|---|---|---|---|---|
| Name: _____  Address: _____  City, State, Zip Code: _____  Telephone Number: ( )  Prime ⌐ Subconsultant ⌐ Broker ⌐  Supplier: Regular Dealer ⌐ or Manufacturer ⌐  Attach Verification of Payment: YES __ NO __ | | | | | | | #DIV/0! | |
| Name: _____  Address: _____  City, State, Zip Code: _____  Telephone Number: ( )  Prime ⌐ Subconsultant ⌐ Broker ⌐  Supplier: Regular Dealer ⌐ or Manufacturer ⌐  Attach Verification of Payment: YES __ NO __ | | | | | | | #DIV/0! | |
| Name: _____  Address: _____  City, State, Zip Code: _____  Telephone Number: ( )  Prime ⌐ Subconsultant ⌐ Broker ⌐  Supplier: Regular Dealer ⌐ or Manufacturer ⌐  Attach Verification of Payment: YES __ NO __ | | | | | | | #DIV/0! | |

COMMENTS/ISSUES:

If necessary, this form can be duplicated to list all DBE subcontractors paid in this reporting period.
CONTRACT No. H1636-10                AT-2-1                SCRRA Form 103 (Rev. 06/06/06)  AUTHORIZED BY BOARD: 10/1/10

Exhibit A
123

**ATTACHMENT 3**

**FINAL RACE-NEUTRAL DBE
SUBCONTRACTORS PAID REPORT
SUMMARY
AND
PAYMENT VERIFICATION
(Form 103)**

CONTRACT No. H1836-10                                AUTHORIZED BY BOARD: 10/1/10

## FINAL RACE-NEUTRAL DBE SUBCONTRACTORS PAID REPORT SUMMARY AND PAYMENT VERIFICATION (Form 103)

Reporting Period (month): _____, 200__

| | | |
|---|---|---|
| Contract Number: _____ | Form 103 Report No.: _____ | Report prepared by: _____ |
| Contract Award Date: _____ | Original Contract Award Amount: _____ | Title: _____ |
| Prime Name: _____ | Current Contract Value: _____ [B] | Report reviewed by: _____ |
| | % of Project Complete: _____ | Signature: _____ |
| Address: _____ | [A] divided by [B]   #VALUE! | Title: _____ |
| Telephone No.: _____ | Total Dollars Paid to DBEs this Reporting Period: _____ | Prime's Race-Neutral DBE Attainment to Date:   #DIV/0! |
| | Total Dollars Paid to DBEs to Date: _____ | (Total Dollars Paid to DBEs divided by Total Dollars Paid to Prime) |
| | Total Dollars Paid to Prime to Date: _____ [A] | |

| DBE SUBCONTRACTORS | Total Amount Paid This Month | Total Amount Paid to Date | Type of Work Performed (scope) | Committed to DBE at Contract Award | Extra Work/ Change Order Activity | Adjusted Subcontract Value [D] | % Work Completed [G] divided by [D] | FOR SCRRA USE ONLY |
|---|---|---|---|---|---|---|---|---|
| Name: | | | | | | | | |
| Address: | | | | | | | | |
| City, State, Zip Code: | | | | | | | | |
| Telephone Number: ( ) | | | | | | | | |
| Prime ☐ Subconsultant ☐ Broker ☐ | | | | | | | #DIV/0! | |
| Supplier: Regular Dealer ☐ or Manufacturer ☐ | | | | | | | | |
| Attach Verification of Payment: ☐ YES ☐ NO | | | | | | | | |
| Name: | | | | | | | | |
| Address: | | | | | | | | |
| City, State, Zip Code: | | | | | | | | |
| Telephone Number: ( ) | | | | | | | | |
| Prime ☐ Subconsultant ☐ Broker ☐ | | | | | | | #DIV/0! | |
| Supplier: Regular Dealer ☐ or Manufacturer ☐ | | | | | | | | |
| Attach Verification of Payment: ☐ YES ☐ NO | | | | | | | | |
| Name: | | | | | | | | |
| Address: | | | | | | | | |
| City, State, Zip Code: | | | | | | | | |
| Telephone Number: ( ) | | | | | | | | |
| Prime ☐ Subconsultant ☐ Broker ☐ | | | | | | | #DIV/0! | |
| Supplier: Regular Dealer ☐ or Manufacturer ☐ | | | | | | | | |
| Attach Verification of Payment: ☐ YES ☐ NO | | | | | | | | |

COMMENTS/ISSUES:

If necessary, this form can be duplicated to list all DBE subcontractors paid in this reporting period.

SCRRA Form 103 (Rev. 06/06/06)

## ATTACHMENT 4

## REQUEST FOR ADDITIONAL DBE
## FIRM

CONTRACT No. H1636-10                                    AUTHORIZED BY BOARD:  10/1/10



## REQUEST FOR ADDITIONAL DBE FIRM

REQUEST FOR ADDITIONAL DBE(S) SHALL BE IN ACCORDANCE WITH THE CONTRACT SPECIFICATIONS AND IS SUBJECT TO APPROVAL BY THE AUTHORITY. THE PRIME CONTRACTOR SHALL PROVIDE AUTHORITY WITH THE INFORMATION REQUESTED BELOW UPON IDENTIFICATION OF ANY DBE FIRM NOT PREVIOUSLY LISTED TO PERFORM UNDER THE CONTRACT. THE PRIME CONTRACTOR SHALL ALSO PROVIDE A WRITTEN CONFIRMATION FROM THE DBE THAT IT IS PARTICIPATING IN THE CONTRACT FOR A SPECIFIED VALUE, INCLUDING THE CORRESPONDING SCOPE OF WORK (A SUBCONTRACT AGREEMENT CAN SERVE IN LIEU OF THE WRITTEN CONFIRMATION).

| Contract No.: | JOC/CTO No. (if applicable): |
|---|---|

Contract Name:

Prime Contractor:

Business Address:

### Please Provide the Following Information for the Proposed Additional DBE:

| DBE Firm Name: | DBE Certification No.: |
|---|---|

Address:

| Contact Person: | Phone and Email: |
|---|---|

Description of Work (Scope):

| Contract Item Number(s): | Proposed DBE Subcontract Amount: |
|---|---|

☐  Copy of DBE Certification Letter attached (*Required*)?     Yes          No

Prime Contractor Representative Signature                    Title

Business Phone Number                              Date

### FOR AUTHORITY USE ONLY:

Date Request Received: _____

Approve Request for Additional DBE?              Yes          No

If no, please state reason: _____

Reviewed by: _____        Title: _____

Signature: _____        Date: _____

CONTRACT No. H1838-10                              AUTHORIZED BY BOARD: 10/1/10