O

# United States District Court
# Central District of California

| | |
|---|---|
| JOHN BUSKER, on behalf of himself, and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>WABTEC CORPORATION, MICHAEL MARTIN, and DOES 1 through 100,<br><br>  Defendants. | Case No. 2:15-cv-08194-ODW-AFM<br><br>**ORDER DENYING MOTION TO REMAND [27]** |

## I.   INTRODUCTION

On September 11, 2015, Plaintiff John Busker filed this putative class action in Los Angeles Superior Court against Wabtec Corporation ("Wabtec") and Mark Martin ("Martin") (collectively "Defendants"). (Not. of Removal, Ex. A ("Compl."), ECF No. 1-1.) Then, on October 15, 2015, Plaintiff filed an amended Complaint in state court. (First Amend. Compl. ("FAC"), ECF No. 28-1.) On October 19, 2015, Defendants removed the action to federal court, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d). (Not. of Removal ("NOR"), ¶ 4, ECF No. 1.)

Plaintiff now moves to remand this action back to Los Angeles Superior Court for lack of subject matter jurisdiction. (Mot. for Remand ("Mot."), ECF No. 27.) Plaintiff argues that Defendants failed to prove that the amount in controversy exceeds

$5 million and that Defendants failed to establish, that in the aggregate, the plaintiff class is made up of more than 100 putative class members. (Mot. 3–15.) In the alternative, Plaintiff argues that the Court must decline to exercise jurisdiction over this lawsuit because of the "local controversy" exception. (*Id*. 15–24.)

For the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Remand.[1]

## II. FACTUAL BACKGROUND

This is a class action lawsuit arising out of Plaintiff's and other putative class members' work on a public works project, under the employment of Wabtec. On October 13, 2010, the Southern California Regional Rail Authority (also known as "Metrolink") entered into a public works contract (contract No. H1636-10) with Parsons Transportation Group, Inc. ("Parsons") to provide a Positive Train Control system on the Metrolink railway system. (FAC ¶¶ 6–7.) The contract between Metrolink and Parsons named Wabtec as one of the approved subcontractors that would perform work in accordance with the standards and obligations in the agreement. (*Id*. ¶ 8.) Wabtec, as a subcontractor, was responsible for a number of components of the Metrolink Positive Train Control system, including the installation of the On-Board System, the Back Office System, the Employee-In-Charge Equipment, and the Computer-Aided Dispatching System. (*Id*. ¶ 9.)

On September 11, 2015, Plaintiff filed his original class action complaint in Los Angeles Superior Court. (Compl.) Then, on October 15, 2015, Plaintiff filed an amended complaint in state court alleging causes of action for: (1) failure to pay minimum and overtime wages, (2) failure to pay prevailing wages on a public works project, (3) failure to provide accurate wage statements, (4) waiting time penalties under Cal. Lab. Code § 203, (5) unfair business competition, (6) declaratory relief, and (7) penalties pursuant to Cal. Lab. Code § 2699. (FAC ¶¶ 34–91.) These claims

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, this Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

involve only state law. Plaintiff defines the putative class members as "[a]ll workers engaged in the execution of the scope of work of WABTEC…under Contract No. H1636-10." (*Id.* ¶ 2.)

Defendants removed this action on October 19, 2015 on the basis of diversity jurisdiction under CAFA. (NOR ¶ 1.) On January 8, 2016, Plaintiff moved to remand. (Mot.) Plaintiff's Motion is now before the Court for decision.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). But courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Under the Class Action Fairness Act of 2005 ("CAFA"), federal courts have original jurisdiction over a class action if (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the aggregated amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see also Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554–55 (2014). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

However, even where the removing defendant demonstrates that the threshold requirements of CAFA are met, certain CAFA exceptions may still prevent removal. The local controversy exception provides that a federal district court "shall decline to exercise jurisdiction…over a class action in which -

  (I)  greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

  (II)  At least 1 defendant is a defendant –

    (aa) from whom significant relief is sought by members of the plaintiff class;

    (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

    (cc) who is a citizen of the State in which the action was originally filed; and

  (III)  principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons…" 28 U.S.C. § 1332(d)(4)(A). Once the removing party meets the burden of establishing CAFA jurisdiction, the non-removing party invoking an exception bears the burden to proving an exception's application. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).

## IV. DISCUSSION

As the removing party, Defendants bear the burden of proving federal subject matter jurisdiction under CAFA by a preponderance of the evidence. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). Defendants argue that this Court has original jurisdiction pursuant to CAFA because (1) Plaintiffs and Defendants are citizens of different states, (2) the class action is filed on behalf of more than 100 putative class members, and (3) the amount in controversy exceeds $5 million. (NOR ¶¶ 5–17.) Plaintiff does not contest that diversity exists between the parties. Instead, Plaintiff argues that the Court should remand this matter because

Defendants failed to establish that the plaintiff class is composed of more than 100 putative class members and inadequately demonstrated that the amount in controversy exceeds $5 million. (Mot. 3–15.) Alternatively, Plaintiff asserts that this Court must remand this matter based on the local controversy exception to CAFA jurisdiction. (*Id*. 15–24.)

### A. Numerosity Requirement

A district court shall not have original jurisdiction pursuant to CAFA if the number of members of all proposed plaintiff classes in the aggregate is less than 100. 28 U.S.C. § 1332(d)(5)(B). First, Plaintiff argues that Defendants' Notice of Removal does not satisfy the CAFA's numerosity requirement because Defendants failed to "state the exact number of members in the putative class." (Mot. 3.) Thus, Plaintiff asserts that Defendants' statement that the class is "over 100 individuals who performed work in relation to the contract" is vague and does not meet the preponderance of the evidence standard. (*Id*.)

"A defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart*, 135 S. Ct. at 553; 28 U.S.C. § 1446(a). Courts are to apply the same liberal rules to removal allegations that are applied to other matters of pleading of Federal Rule of Civil Procedure 8(a). *See id*. (By design, 28 U.S.C. § 1446(a) "tracks the general pleading requirement stated in Rule 8(a)"). It is only when a plaintiff contests the defendant's allegations that both sides submit proof and the Court then decides, by a preponderance of the evidence, whether the CAFA elements are satisfied. *Id*. at 554.

Here, the Court finds that Defendants' Notice of Removal sets forth a plausible allegation that the plaintiff class is composed of over 100 individuals.[2] Since Plaintiff contests Defendants' removal action with the present Motion, the Court will now

---

[2] With its Notice of Removal, Defendants presented proof by declaration from Wabtec's Human Resources Manager that, based on her review of payroll and personnel information, "over 100 individuals performed work for Wabtec in relation to this contract." (Wolfe Decl. 2, ECF No. 4.)

review proof submitted from both parties and decide, by a preponderance of the evidence, whether removal was proper.

Plaintiff asserts that Defendants have inflated the number of putative class members in its Notice of Removal by including members who are not represented by this class action. (See Mot. 4–9.) Plaintiff argues that this class action is brought on behalf of all "workers," as defined by Cal. Lab. Code § 1723 as "laborer[s], worker[s], and mechanic[s]," performing field installation electrical work. (*Id.* 5.) Therefore, Plaintiff argues that Defendants improperly included workers who performed "procurement" work and "rolling stock" work because "while 'rolling stock' work may or may not refer to 'field electrical installers,' 'procurement' certainly does not." (*Id.* 4–6.) Plaintiff also asserts that Defendants improperly included the following individuals in its definition of "worker": a manager, a deceased supervisor, four engineers, and seven inspectors. (*Id.* 6–9.) Thus, Plaintiff argues that after excluding 14 duplicate names and the names not based on the pleaded class of "workers," only 76 actual workers remained. (*Id.* 9.)

The Court does not find Plaintiff's arguments persuasive. Paragraph 2 of Plaintiff's FAC defines the class as: "All workers engaged in the execution of the scope of work of WABTEC, a subcontractor of PARSONS, under Contract No. H1636-10." (FAC ¶ 2.) Accordingly, Defendants have provided names and occupations of 114 individuals who "performed Wabtec's scope of work on the Metrolink Project." (Wolfe Decl. ¶¶ 7–8, ECF No. 40; Wolfe Decl. Ex. A, EFC No. 40-1.) Furthermore, the evidence Defendants provided does not include duplicate names. (Wolfe Decl. Ex. A.) While Plaintiff argues that he intended to define "workers" as defined by Labor Code § 1723 and construed narrowly to include only individuals subject to California's Prevailing Wage Law, they themselves submitted declarations from supervisors, a manager, engineers, and inspectors, claiming potential class member status. (ECF No. 29-1.) Moreover, Defendants provide proof that managers, supervisors, and engineers performed installation work on the

6

Metrolink project. (Martin Decl. ¶ 4, ECF No. 40.) Accordingly, even discounting Defendant Martin and the deceased supervisor from the list of 114 putative class members, Defendants have met their burden to show that the class is over the required threshold of 100 putative class members.

### B. Amount in Controversy

Defendants demonstrate that the amount in controversy exceeds $5 million. Since Plaintiff does not specify the amount of damages sought, Defendants, as the removing party, must prove by a preponderance of the evidence that the amount in controversy has been met. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Under this standard, "the defendant must provide evidence that it is 'more likely than not' that the amount in controversy satisfies the federal diversity jurisdictional requirement." *Id*. In its discretion, a district court may accept certain post-removal admissions as determinative of the amount in controversy and must look beyond the four corners of the complaint. *Id*. at 690–91; *see also Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222-JSC, 2014 WL 2199645, at *3–4 (N.D. Cal. May 27, 2014) (holding that a defendant may rely upon allegations of a prior action when assessing the amount in controversy). When discussing the amount in controversy, a removing party cannot speculate, but must provide the underlying facts supporting its calculations. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also Gaus*, 980 F.2d at 567. A court's ultimate inquiry is the amount put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *Korn*, 536 F. Supp. 2d at 1205.

Defendants argue that the amount in controversy for Plaintiff's claims of prevailing wages, liquidated damages, waiting time penalties, and attorneys' fees alone exceed $5 million. Plaintiff contests Defendants' calculations for prevailing wages damages as speculative because it lacks underlying evidence. This Court finds that Defendants have satisfied their burden by proving that Plaintiff's damages under its Second Cause of Action alone exceeds the jurisdictional minimum.

First, Defendants calculate possible penalties for Plaintiff's Second Cause of Action, failure to pay prevailing wages. (NOR ¶ 8; Opp'n 6.) Plaintiff seeks the difference between the required prevailing wage rate for each hour worked and the amount actually paid. (FAC ¶ 49.) Defendants assert that the straight time hourly rate for Transportation Systems Electricians ranged from $62.31 to $66.77 between 2012 and 2015. (NOR ¶ 8.) Such straight time hourly rates are taken from a previously filed class action lawsuit, *Hernandez v. Fidelity & Deposit Co. of Maryland*, Case No. 2:15-cv-05996-ODW-AFM, filed by Plaintiff's counsel against defendants "Fidelity and Deposit Company" and "DOES 1 through 100" on behalf of the same class represented in this case. (Madden Decl. Ex. A, ECF No. 39-1.) The *Hernandez* case was voluntarily dismissed by the plaintiffs on August 13, 2015. (*Id*. Ex. B, ECF No. 39-3.)

Defendants provide evidence of the total hours worked and total gross pay received by 23 individuals of the putative class. (Wolfe Decl., Ex. H, ECF No. 40-8.) These 23 individuals worked as employees under Wabtec for a combined 67,830.65 hours on the Metrolink project from 2011 to 2015, earning a combined total of $1,456,166 in gross wages. (*Id*.) Defendants assert that the potential prevailing wage damages for these 23 individuals alone could amount to $2,770,361.80. (Opp'n 6.) Defendants arrive at this conclusion by multiplying the minimum prevailing wage rate ($62.31) by the total combined hours these 23 individual putative class members worked from 2011 to 2015 (67,830.65 hours), and then subtracting their actual combined earnings ($1,456,166) from that product. (*Id*.)

Second, Defendants calculate liquidated damages. Plaintiff seeks liquidated damages for failure to pay minimum wage, pursuant to Cal. Lab. Code § 1194.2. (FAC ¶ 49.) "In any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest

thereon." Cal. Lab. Code § 1194.2(a). Here, Defendants assert that liquidated damages for the 23 individual putative class members alone could equal another $2,770,361.80. (Opp'n 7.) Since the potential damages for prevailing wages and liquidated damages for merely 23 members of the putative class alone exceeds the $5 million, the Court finds that it is more likely than not that prevailing wages damages and liquidated damages for the for the entire class well exceeds the jurisdictional minimum.

Third, Plaintiff also seeks waiting time penalties pursuant to Cal. Lab. Code § 203 for the alleged failure to pay all wages at the time of termination. (FAC ¶¶ 69–74.) Where an employer "willfully fails to pay…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days." Cal Lab. Code § 203(a). Such penalties are calculated by multiplying the daily wage rate by the number of days of nonpayment, up to 30 days. *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018–19 (N.D. Cal. 2010). Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 (9th Cir. 2000). Here, 92 putative class members no longer work for Wabtec as of September 19, 2015. (Wolfe Decl. ¶ 12, ECF No. 40.) Defendants calculate that the potential waiting time penalty for each terminated employee is equal to $14,954.40. (Opp'n 7.) Defendants reach this number by multiplying the minimum prevailing wage rage ($62.31) by 8 (an 8-hour work day), and then by multiplying that number by 30 (30 work days in a month). (*Id*.) Therefore, multiplying the waiting time penalty that each terminated employee is entitled to ($14,954.40) by 92, Defendants assert that the potential waiting time penalty for the entire plaintiff class is $1,375,804.80. (*Id*.)

Finally, Plaintiffs seek statutory attorneys' fees. So long as the underlying statute authorizes a fee award for a successful litigant, attorneys' fees can be taken into consideration when determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). According to Cal. Lab. Code § 1194.3, "an employee may recover attorney's fees and costs incurred to enforce a court judgment for unpaid wages due pursuant to this code." Thus, attorneys' fees may be taken into consideration in determining the amount in controversy in this case. The Ninth Circuit "has established that 25% of the common fund as a benchmark award for attorney fees" is an appropriate award in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Defendants assert that, accordingly, $3.19 million in attorneys' fees can be added to the amount in controversy. (Opp'n 7.) However, the Court does not agree with Defendants' assessments; instead, the appropriate attorneys' fees to consider based on the Defendants' calculations of prevailing wages damages for the 23 putative class members, liquidated damages, and waiting time penalties for purposes of establishing the amount in controversy should be $1,729,130.10. The Court reached this amount by aggregating Defendants' calculations of prevailing wages ($2,770,361.80), liquidated damages ($2,770,361.80), and waiting time penalties ($1,375,804.80), and then multiplying the sum by 0.25 (25%). However, even without these fees, the potential damages available for prevailing wages, liquidated damages, and waiting time penalties exceeds the jurisdictional minimum and therefore federal jurisdiction is proper.

### C. The Local Controversy Exception

Plaintiff argues that the local controversy exception in 28 U.S.C. § 1332(d)(4)(A) applies. "The local controversy exception is 'narrow' and 'a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy–a controversy that uniquely affects a particular locality to the exclusion of all others.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1152 (C.D. Cal. 2010), citing *Evans v. Walter Indus.*, 449 F.3d 1159, 1163–64 (11th

1 Cir. 2006). The plaintiff bears the burden of showing that the local controversy
2 exception applies to the facts of a given case. *Benko v. Quality Loan Serv. Corp.*, 789
3 F.3d 1111, 1116 (9th Cir. 2015).

### 1. Citizenship Requirement

In order for the local controversy exception to apply, more than two-thirds of the putative class members are required to be California citizens at the time of removal. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I); *see also Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 885 (2013). For diversity jurisdiction purposes, a natural person is a citizen of a state if he or she is a citizen of the United States and the state is her state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. *Id*. "The intention to remain may be established by factors such as: current residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes." *Kyung Park v. Holder*, 572 F.3d 619, 624–25 (9th Cir. 2009). "[T]here must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception." *Mondragon*, 736 F.3d at 884. "The burden of proof placed upon a plaintiff should not be exceptionally difficult to bear," and "district courts are permitted to make reasonable inferences from facts in evidence…" *Id*. at 886. In addition, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile," under which a person's state of domicile, once established, is presumed to continue until rebutted by evidence of change. *Id*. at 885.

Plaintiff has met its burden. Plaintiff produced 70 individual declarations of putative class members testifying that, as of the date of removal (October 19, 2015),

they were citizens of the United States and California, and had the intent to remain as residents of California during that time and into the future. (ECF No. 29-1.) The Court disagrees with Defendants' argument that such evidence should be stricken because Plaintiff's letter "sent to the declarants did not inform them what 'citizenship' meant or what facts." (Opp'n 9.) Each of the individually signed declarations read: "nothing has changed regarding my domicile, in that my permanent home is still in California and I still intend to remain here." (ECF No. 29-1.) Such a declaration is consistent with the meaning of "citizenship" relevant to establishing diversity. *See Kanter*, 265 F.3d at 857 (a natural person is a citizen of a state if she is a citizen of the United States and the state is her state of domicile). In addition, Defendants' arguments that the declarations should be stricken because two declarations are not signed and three others are dated before the event to which they attest are also properly rebutted by Plaintiff when it provided supplemental declarations by the putative class members clarifying their mistakes in filling out their declarations. (ECF No. 45.)

Furthermore, Plaintiff has provided California driver's license records for 19 individuals of the putative class–12 of whom did not provide a signed declaration. (Salazar Decl., Ex. 1–19, ECF No. 37.) Thus, combined with the 70 individual declarations of putative class members declaring that they were citizens of California at the time of removal, Plaintiffs have produced evidence that 82 putative class members (72% of the putative class) were citizens of California at the time of removal. Moreover, the only relevant place of employment for the Metrolink project is located in California. In the absence of any contrary evidence, it is reasonable to infer that most of the employees under contract live and intended to remain in this state. While Defendants challenge the authenticity of Plaintiff's evidence of the 19 California driver's license records, the records were accompanied by a declaration by Stephen Salazar, a private investigator and the owner of S.A.S Legal & Investigative Services, who testified to having personal knowledge of such records. Accordingly,

Plaintiff has satisfied its burden of establishing that two-thirds of the plaintiff class were California citizens at the time of removal.

### 2. *Substantial Local Defendant*

Plaintiff, however, fails to prove that Defendant Mark Martin is a defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted. In order for the local controversy exception to apply, at least one defendant must be: "a citizen of the State in which the action was originally filed," "from whom significant relief is sought by members of the plaintiff class," and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II). The parties do not dispute that Defendant Wabtec is a Pennsylvania Corporation. (See FAC ¶ 5.) The parties also do not dispute that Defendant Mark Martin is a citizen of California. (See Opp'n 10–15.) Thus, the Court next considers whether Martin's conduct constitutes "a significant basis" for Plaintiff's claims and whether the Plaintiff seeks "significant relief" from him. 28 U.S.C. § 1332(d)(4)(A)(i)(II).

To determine whether Martin's conduct can form a substantial basis for Plaintiff's claims, the alleged conduct must be compared to the "conduct of all defendants." *Benko*, 789 F.3d at 1118. For Martin to fulfill the local defendant requirement of the exception, he must be the primary focus of the claims. *Christmas v. Union Pacific R.R.*, No. CV15-02612-AB-(PLAX), 2015 WL 5233983, at *4 (C.D. Cal. Sept. 8, 2015); *see also Woods v. Standards Ins. Co.*, 771 F.3d 1257, 1256–66 (10th Cir. 2014) ("the [Senate Judiciary] Committee intends that the local defendant must be a primary focus of the plaintiffs' claims–not just a peripheral defendant"). Here, Plaintiff asserts that Martin "was an employee, agent, and/or representative of" Wabtec. (FAC ¶ 6.) Plaintiffs also allege that as "project manager" of Wabtec, Martin, "on behalf of his employer violated, or caused to be violated certain provisions of the Labor Code including but not limited to minimum wage requirements under Labor Code §§ 510, 1194, 1771 and 1774." (*Id*.) However,

Plaintiff does not make any specific allegations regarding Martin's role in the conduct that is the basis of the Complaint.

The lack of specificity with respect to Martin is analogous to the Tenth Circuit's decision in *Woods v. Standard Ins. Co.*, 771 F.3d 1257 (10th Cir. 2014). In *Woods*, the plaintiff class sued their employer, Standard Insurance Company, and a Standard employee that the plaintiffs alleged was responsible for plaintiffs' accounts and administering benefits in accordance with the company's policy. *Id*. at 1260. The Tenth Circuit held that the Standard employee was an "isolated role player" in the insurance company's scheme and as a result her conduct did not form a substantial basis that could trigger the local controversy exception. *Id*. at 1266. Similarly here, Plaintiff is suing Wabtec (his former employer) and Martin, Wabtec's employee "acting pursuant to the agreement on behalf of his employer." In both cases, the would-be local defendants were not alleged to have had the authority to act on their own, but were simply "local agents" of the larger, out-of-state company. *Id*. at 1267.

Furthermore, while Plaintiff asserts that Martin had control over wages and working schedules of the employees on the project, Martin was hired by Wabtec in 2014, four years after contract No. H1636-10 was signed. (Martin Decl. ¶ 2.) Since the Metrolink project started long before he was hired, Martin was not involved in its negotiation or the determination whether prevailing wage requirements applied to the project. (*Id*.) Accordingly, the conduct of Martin cannot form a "significant basis" for the claims of the putative class because Martin's conduct only reflects the real target at issue–Wabtec. While the Court finds that the local controversy exception does not apply on this basis, a review of the Complaint further reveals that Plaintiff does not seek "significant relief" from Martin.

"Relief sought against the local defendant is significant if it is a significant portion of the entire relief sought by the class." *Christmas*, 2015 WL 5233983, *6. The Ninth Circuit has suggested that when one defendant is liable to all members of the class and other defendants are only liable to some of the class, "the great bulk of

any damages award is sought from" the defendant that would be liable to all members of the class. *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1018 (9th Cir. 2011). Here, as previously discussed, Martin was not the project manager for all of the class members because he was hired by Wabtec in 2014. (Martin Decl. ¶ 2.) Therefore, "the great bulk of any damage award" is sought from Wabtec, who would be liable to all members of the class for the entire duration of the Metrolink project. Accordingly, Plaintiff fails to establish that they seek significant relief from Martin.

### 3. *Other Class Actions Filed Within the Last Three Years*

The local controversy exception requires that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations *against any of the defendants* on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added). Defendants contend that the local controversy exception does not apply because a similar class action was filed less than three months prior, on behalf of the same class, in *Hernandez v. Fidelity & Deposit Co. of Maryland*, Case No. 2:15-cv-05996-ODW-AFM. (Opp'n 15–17.) The plaintiffs voluntarily dismissed the Hernandez case on August 13, 2015. However, neither Martin nor Wabtec were named as defendants in that previously filed case. Furthermore, while the plaintiffs in the previous *Hernandez* similarly represented "all workers engaged in the execution of the scope of work of WABTEC…under Contract No. H1636-10," the action was brought against a defendant corporation in its capacity as a business issuing payment bonds on public work projects. (Madden Decl. Ex. A.) Nonetheless, because Martin is neither a local defendant from whom significant relief is sought nor whose alleged conduct forms a significant basis for the claims Plaintiff asserts, the local controversy exception to CAFA does not apply.

## V. CONCLUSION

For the reasons discussed above, the Court finds subject matter jurisdiction over this action under 28 U.S.C. § 1332. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

March 14, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**