**O**

# United States District Court
# Central District of California

| | |
|---|---|
| JOHN BUSKER, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>     v.<br><br>WABTEC CORPORATION; MARK MARTIN; and DOES 1 through 100,<br><br>      Defendants. | Case No. 2:15-cv-08194-ODW-AFM<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [65]** |

## I. INTRODUCTION

On September 11, 2015, Plaintiff John Busker filed this putative class action in the Los Angeles Superior Court against Wabtec Corporation ("Wabtec") and Mark Martin ("Martin") (collectively, "Defendants"). (Not. of Removal, Ex. A ("Compl."), ECF No. 1-1.) Then, on October 15, 2015, Plaintiff filed an amended complaint in state court alleging causes of action for: (1) failure to pay minimum and overtime wages, (2) failure to pay prevailing wages on a public works project, (3) failure to provide accurate wage statements, (4) waiting time penalties under California Labor Code section 203, (5) unfair business competition, (6) declaratory relief, and (7) penalties pursuant to California Labor Code section 2699. On October 19, 2015, Defendants removed the action to federal court. (Not. of Removal ¶ 4, ECF No. 1.)

Defendants now move for summary judgment, arguing that Busker's claims fail as a matter of law because prevailing wage requirements are not applicable to his work for Defendants. (ECF No. 65.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment.[1]

## II. FACTUAL BACKGROUND

This is a putative class action lawsuit arising out of Busker's and other putative class members' work on a public works project under the employment of Wabtec. On October 13, 2010, the Southern California Regional Rail Authority (also known as "Metrolink") entered into a public works contract with Parsons Transportation Group, Inc. ("Parsons") to design, furnish, and install a Positive Train Control ("PTC") system on the Metrolink railway system. (Statement of Uncontroverted Facts ("SUF") ¶ 2.) This contract involved two types of work: "On-Board Work," involving procuring and installing PTC systems on Metrolink's trains; and "Field Installation Work," such as installing PTC in the field and along the wayside of the train tracks. (*Id.* ¶ 3.) The Metrolink-Parsons contract contained a prevailing wage requirement, but it explicitly pertained only to Field Installation Work and not to On-Board Work. (*Id.* ¶ 7.)

In November 2010, Parsons entered into a subcontract with Wabtec, under which Wabtec took responsibility for designing, furnishing, installing, testing, and certifying the on-board PTC components, equipment, and system on the trains. (*Id.* ¶ 4.) Under the subcontract, Wabtec did not take responsibility for and did not perform any Field Installation Work, such as working on buildings, realty, railroad tracks, or the wayside of the tracks. (*Id.* ¶ 6.)

Busker worked for Wabtec as a vendor employee through Visron Technical LLC. (*Id.* ¶ 11.) He worked as a PTC technician for Wabtec from April 22, 2013, through March 18, 2015. (*Id.*) During this time, Busker worked exclusively on

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, this Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Metrolink trains installing and testing PTC systems. (*Id.* ¶ 12.) He did not do any Field Installation Work. (*Id.* ¶ 13.)

After learning that a co-worker wanted to pursue prevailing wage claims against Wabtec, Busker filed a prevailing wage complaint with the California Department of Industrial Relations ("DIR"). (*Id.* ¶ 16.) DIR opened an investigation in June 2015 and solicited responses from Wabtec, Metrolink, and Wabtec workers. (*Id.* ¶ 17.) On December 22, 2015, the DIR investigator issued a Civil Wage and Penalty Assessment ("CWAPA") for prevailing wages in the amount of $5,786,349, and related penalties of $682,215. (*Id.* ¶ 18.) Thereafter, Wabtec and Parsons filed requests for review of the CWAPA and submitted supporting documents. (*Id.* ¶ 19.) The Assistant Chief of DIR then ordered the release of the assessment, meaning that Wabtec no longer owed the amount described in the CWAPA. (*See id.* ¶¶ 19, 20.)

While the DIR investigation was ongoing and before the issuance of the CWAPA, Busker initiated this civil suit. (*See* Compl.) Busker asserts that he and a class of workers were not paid the minimum hourly wage rate required by California's Prevailing Wage Law.

### III.  LEGAL STANDARD

Summary judgment shall be entered in favor of the moving party when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party initially bears the burden of showing the non-existence of a material factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Rule 56(e)). To carry this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A dispute about a material fact is genuine if a reasonable jury

could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For the purposes of summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255; *see also Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104 (9th Cir. 1991). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## IV. DISCUSSION

All of Busker's claims asserted in this action are dependent on his prevailing wage claims. (*See* SUF ¶ 15; Compl. ¶¶ 34–86.) Moreover, Busker has admitted that he has no additional complaint or claims if he is not entitled to prevailing wages. (SUF ¶ 15; Busker Dep. at 14:24–15:23, Ex. B, ECF No. 65-3; Compl. ¶¶ 34–86.) The Court finds that as a matter of law Busker's work for Wabtec does not entitle him to prevailing wages, and as such, there is no need for discussion of his additional claims.

### A. Meaning of "Public Works"

California Labor Code section 1771 provides that the general prevailing wage shall be paid to "all workers employed on public works." Public works are further defined as work paid for in whole or part with public funds consisting of "construction, alteration, demolition, installation, or repair work," "irrigation, utility, reclamation, and improvement," "street, sewer, or other improvement work," "the laying of carpet," and "public transportation demonstration projects." Cal. Lab. Code § 1720.

Beyond the text of the statute itself, public works can be understood as involving only fixed works and/or realty. Prior to 2000, the definition of public works was more limited, including only work done as part of physically constructing a

1 building. *See City of Long Beach v. Dep't of Indus. Relations*, 34 Cal. 4th 942, 948
2 (2004). In 2000, the definition was expanded to include "such activities as the design
3 and preconstruction phases of construction," but the focus of the statute remained on
4 physical improvements to land. *See id.* at 946 (internal quotations omitted). An
5 opinion letter from the California Attorney General supports this interpretation:

> Thus, public works contracts generally feature construction projects of substantial dimension-including such undertakings as the erection, alteration, improvements, repair, and demolition of structures. The operation of a system, on the other hand, embraces more routine activities; it connotes the day-to-day business of running the system. Accordingly, we conclude that public works contracts are distinguishable from contracts associated with the procurement of goods and services that are used for the regular operational needs of the Authority or its enterprises.

Attorney General Opinion 11-304, 95 Ops. Cal. Atty. Gen. 102 (Dec. 24, 2012) (internal quotations omitted).

Thus, sections § 1771 and § 1720 have been interpreted to mean that in order for workers to be entitled to prevailing wages, they must have been employed on project involving fixed works or realty on land.

**B. Defendants Have Met Their Burden in Showing Non-Existence of a Material Factual Dispute**

Because the prevailing wage requirement applies only to public works involving fixed works or realty, all that is needed in order for Defendants to prevail on summary judgment is to show that Busker was not involved in a public works project of that kind. Here, Busker's work for Wabtec was part of a contract Wabtec entered into with Parsons to design, furnish, install, and test PTC equipment on Metrolink trains. (SUF ¶¶ 4, 5, 11.) In that job, Busker worked exclusively as a technician installing and testing PTC systems on board the trains. (*Id.* ¶ 12.) While the larger Parsons contract did involve some work on the fixed areas of the Metrolink system

such as the wayside of the train tracks, the subcontract with Wabtec under which Busker was employed did not include any of that work. (*Id.* ¶¶ 3, 6.) The contract between Parsons and Wabtec for the on-board work did not include a prevailing wage requirement, and neither are those wages required by law. (*See id.* ¶¶ 7–8); Cal. Lab. Code §§ 1771, 1720.

## C. Busker Has Failed to Designate Specific Facts Showing that There is a Genuine Issue for Trial

Busker opposes Defendants' motion and unsuccessfully attempts to assert the existence of genuine issues of material fact. For example, Busker asserts that section 1720 applies to his work for Wabtec because the statute does not create an exception disclaiming coverage for work on locomotives and "rolling stock." (Opp'n 3–4, ECF No. 68.) The question, however, is not whether an exception exists relevant to work done on trains, but whether the statute would otherwise cover trains in the first place. Based on the text of the statute and its subsequent interpretation, it does not. No exception is necessary where the statute does not pertain to work done on trains to begin with.

Additionally, Busker asserts that Wabtec disputes whether it ever employed Busker. (*Id.* at 10.) This is unsupported, as Defendants have acknowledged that Busker worked as a PTC installer technician for Wabtec (SUF ¶ 11) and provided further confirmation that this fact is undisputed in their Reply. (Reply 1, ECF No. 79.)

Finally, Busker attempts to argue that California Labor Code section 1772 entitles him to a prevailing wage. Section 1772 states, "Workers employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work." The plain text of this section does not broaden the meaning of public work; rather, it ensures that workers who are involved in a project on a contract for public work are covered by the prevailing wage requirement. The requirement that the underlying contract be one for public work

remains, and as discussed, the Parsons-Wabtec contract for the on-board installation of PTC does not meet that requirement.

Because Defendants have shown an absence of a genuine dispute of material fact, and Busker has failed to rebut that showing, summary judgment is appropriate. Without entitlement to prevailing wages, none of Busker's claims can survive, and thus summary judgment is granted as to all of Busker's claims in this action.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Summary Judgment. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

January 10, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**